No. 23-15499
_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
_____

YUROK TRIBE; et al.,

    Plaintiffs - Appellees,

        v.

U.S. BUREAU OF RECLAMATION,

    Defendant-counter-claimant-cross-claimant - Appellee,

NATIONAL MARINE FISHERIES SERVICE,

    Defendant - Appellee,

        v.

KLAMATH WATER USERS ASSOCIATION,

    Defendant-counter-claimant-cross-claimant - Appellant,

KLAMATH TRIBES; KLAMATH IRRIGATION DISTRICT,

    Intervenor-Defendants - Appellees,

        v.

OREGON WATER RESOURCES DEPARTMENT,

    Cross-claim-defendant - Appellee.

_____

## APPELLEE'S BRIEF OF OREGON WATER RESOURCES DEPARTMENT
_____

Appeal from the United States District Court for the District of Oregon
_____

ELLEN F. ROSENBLUM, Attorney General
BENJAMIN GUTMAN, Solicitor General
CARSON L. WHITEHEAD, Assistant Attorney General
1162 Court St. NE, Salem, Oregon 97301-4096
Telephone: (503) 378-4402
carson.l.whitehead@doj.state.or.us
Attorneys for Appellee

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................1

STATEMENT OF JURISDICTION ........................................................2

    I.     Background Principles of Oregon Water Law ................................2

         A.    Prior Appropriation .............................................................. 2

         B.    Establishing Water Rights .................................................... 3

         C.    Types of Use ........................................................................ 5

         D.    Regulation Orders ............................................................... 6

    II.    The Reclamation Act and State Water Law ....................................7

    III.   Factual Background ........................................................................7

         A.    Klamath Basin Project ........................................................ 7

         B.    Klamath Basin Adjudication ............................................. 10

         C.    Reclamation releases stored water in Upper Klamath Lake from Link River Dam both for irrigation in the Klamath Project and to comply with its ESA obligations ......................................................................... 11

ARGUMENT ......................................................................................18

         A.    Oregon law governs the appropriation and distribution of water in Upper Klamath Lake absent a direct conflict with federal law. .....................................................................20

         B.    Under Oregon law, Reclamation has the right to store water in Upper Klamath Lake but it is not obligated to do so; nor is it required to use water that has been stored for irrigation. ..........22

         C.    The ACCFOD does not address the contractual relationship between Reclamation and project irrigators. ..................................24

CONCLUSION ....................................................................................25

# TABLE OF AUTHORITIES

## Cases Cited

*Bennett v. City of Salem,*
192 Or. 531, 235 P2d 772 (1951)............................................................23

*Benz v. Water Res. Comm'n,*
94 Or. App. 73, 764 P.2d 594 (1988)....................................................2, 6

*California v. United States,*
438 U.S. 645 (1978) ................................................................... 7, 20, 21

*Columbia Basin Land Protection Ass'n v. Schlesinger,*
643 F.2d 585 (9th Cir. 1981)...................................................................7

*Dry Gulch Ditch Co. v. Hutton,*
170 Or. 656, 133 P.2d 601 (1943)...........................................................6

*Jones v. Warm Springs Irrigation Dist.,*
162 Or. 186, 91 P.2d 542 (1939)...........................................................23

*Klamath Irr. Dist. v. U.S.,*
635 F.3d 505 (Fed. Cir. 2011) ................................................................8

*Klamath Irrigation Dist. v. Oregon Water Res. Dept.,*
321 Or. App. 581, 518 P.3d 970 (2022),
*rev. den.,* 371 Or. 21 (2023) ................................................................15

*Klamath Irrigation Dist. v. U.S. Bureau of Rec.,*
489 F. Supp. 3d 1168 (D. Or. 2020)....................................................8, 9

*Klamath Irrigation Dist. v. U.S.,*
348 Or. 15, 227 P3d 1145 (2010)..........................................................24

*Klamath Water Users Association v. Patterson,*
204 F.3d 1206 (9th Cir. 2000)
*cert. den.,* 531 U.S. 812 (2000) ............................................................25

*McCall v. Porter,*
42 Or. 49, 71 P. 976 (1902),
*reh'g denied* 42 Or. 49 (1903)................................................................2

*Pacific Coast Fed. v. U.S. Bureau of Reclamation,*
138 F. Supp. 3d 1228 (N. D. Cal. 2001) .................................................9

*Teel Irrigation Dist. v. Water Res. Dep't,*
323 Or. 663, 919 P2d 1172 (1996)................................................. 2, 3, 6

ii

*Tudor v. Jaca*,
 178 Or. 126, 164 P.2d 680,
 *reh'g den* 178 Or. 126 (1945)....................................................6

*United States v. Cal. State Water Res. Control Bd.*,
 694 F.2d 1171 (9th Cir. 1982)....................................................21

*United States v. Oregon*,
 44 F.3d 758 (9th Cir. 1994)....................................................10

*Yurok Tribe v. U.S. Bureau of Reclamation*,
 231 F. Supp. 3d 450 (N. D. Cal. 2017)....................................................8

*Yurok Tribe v. U.S. Bureau of Reclamation*,
 319 F. Supp. 3d 1168 (ND Cal 2018)....................................................11

## Constitutional and Statutory Provisions

43 U.S.C. § 383....................................................7, 20

Or. Rev. Stat. § 183.484....................................................6

Or. Rev. Stat. § 536.075....................................................6

Or. Rev. Stat. § 537.110....................................................2

Or. Rev. Stat. § 537.120....................................................2

Or. Rev. Stat. § 537.130....................................................3

Or. Rev. Stat. § 537.250....................................................3

Or. Rev. Stat. § 537.332(3)....................................................5

Or. Rev. Stat. § 539.130....................................................4

Or. Rev. Stat. § 539.140....................................................3

Or. Rev. Stat. § 539.150....................................................4, 10

Or. Rev. Stat. § 539.170....................................................4, 10

Or. Rev. Stat. § 539.200....................................................4

Or. Rev. Stat. § 540.045....................................................3

Or. Rev. Stat. § 540.045(1)....................................................4

Or. Rev. Stat. § 540.045(3)....................................................23

Or. Rev. Stat. § 540.045(4)....................................................5

Or. Rev. Stat. § 540.145 ............................................................22

Or. Rev. Stat. § 540.210(2) ........................................................12

Or. Rev. Stat. § 540.520(1) ..........................................................5

Or. Rev. Stat. § 540.610(1) ........................................................24

Or. Rev. Stat. § 540.610(2)(k) ...................................................24

Or. Rev. Stat. § 540.740 ...................................................... 14, 15

Or. Rev. Stat. §§ 536.075(1) and (8) ...........................................6

Or. Rev. Stat. §§ 537.400–.409 ................................................5, 22

Or. Rev. Stat. §§ 539.021–.120 ....................................................4

Or. Rev. Stat. §§ 539.120–.150 ....................................................3

Or. Rev. Stat. Chapter 539 .......................................................3, 4

Or. Rev. Stat. Chapter 543 ..........................................................5

# APPELLEE'S BRIEF OF OREGON WATER RESOURCES DEPARTMENT

_____

# INTRODUCTION

The Oregon Water Resources Department (OWRD) provides the following brief to explain the core principles of Oregon water law and how those principles relate to this appeal. OWRD does not dispute that federal law controls when there is a direct conflict with state law. For that reason, the district court correctly concluded that OWRD's order purporting to prohibit the Bureau of Reclamation (Reclamation) from releasing water from Link River Dam was preempted to the extent the order conflicted with Reclamation's duties under the Endangered Species Act (ESA).

When there is no conflict with federal law, however, the Reclamation Act requires the bureau to comply with Oregon water law. Here, Reclamation has the right to store water in Upper Klamath Lake for the benefit of project irrigators, who hold secondary rights to use stored water for irrigation. Contrary to appellants' arguments, Reclamation's right to store water does not impose an obligation to do so. Accordingly, it is not a violation of Oregon law for Reclamation to release stored water from Upper Klamath Lake. To the extent that appellants may have contractual rights to use water stored by Reclamation, those contractual rights are not governed by Oregon water law

and are not addressed in Reclamation's or appellants' water rights, as established in the Klamath Basin Adjudication.

## STATEMENT OF JURISDICTION

OWRD agrees with appellant KWUA's statement of jurisdiction.

## I.      Background Principles of Oregon Water Law

### A.      Prior Appropriation

All water within Oregon belongs to the public and may be appropriated for beneficial use. Or. Rev. Stat. § 537.110; Or. Rev. Stat. § 537.120. The distribution of water in Oregon is governed by a system of priority in which "first in time is first in right;" the first person to apply water to a beneficial use acquires the "right" to use the water. *Teel Irrigation Dist. v. Water Res. Dep't*, 323 Or. 663, 667, 919 P.2d 1172 (1996). Regulation of water depends on the date on which a water right holder acquired the right, known as the priority date. *See McCall v. Porter*, 42 Or. 49, 57–58, 71 P. 976 (1902), *reh'g denied* 42 Or. 49 (1903). In times of shortage, a water right holder with the most senior date (*i.e.*, the "first in time") is entitled to receive the full amount of its water right before the next-in-time user receives any. *See Benz v. Water Res. Comm'n*, 94 Or. App. 73, 81, 764 P.2d 594 (1988). Accordingly, a "junior appropriator's water right cannot be exercised until the senior appropriator's right has been satisfied." *Id.* OWRD enforces this "first in time" system

through its watermasters. *See* Or. Rev. Stat. § 540.045 (describing duties of a watermaster).

### B.    Establishing Water Rights

In 1909, Oregon adopted a statutorily defined process for verifying and establishing water rights. Surface water right claims that pre-date 1909, such as Reclamation's storage right and the rights of the Klamath Tribes, are subject to the adjudication process set forth in Or. Rev. Stat. Chapter 539.[1]  Adjudication is a two-stage process that begins with an administrative phase, which considers competing claims to use a particular water body.  The administrative phase results in an order that determines the validity and priority dates of the competing claims. The order is then submitted to the circuit court, which will issue a decree after resolving challenges to the order.  *See* Or. Rev. Stat. §§ 539.120–.150 (describing adjudication procedures). Upon final determination of a decreed water right, OWRD issues a water right certificate describing the priority date, the extent and purpose of the right, and other relevant information.  Or. Rev. Stat. § 539.140.

---

[1]    After adoption of the Water Code in 1909, anyone seeking to appropriate and use water must first obtain a permit from OWRD. *See Teel*, 323 Or. at 667 (citing Or. Rev. Stat. § 537.130). As with a decreed water right, once the department finds that the permittee has appropriated the water for a beneficial use, the department issues a water right certificate to the user. Or. Rev. Stat. § 537.250.

The administrative phase starts with a claim for recognition of a water right by a claimant; the claim may be challenged by contestants.  *See* Or. Rev. Stat. §§ 539.021–.120 (describing process).  Following a hearing on any contests, the adjudicator will issue a decision, the "findings of fact and an order of determination," that resolves the claims and contests and will file the order with the circuit court. Or. Rev. Stat. § 539.130.  A water-right claim set out in the findings of fact and order of determination is referred to as a "determined claim." Any interested party may file written exceptions with the circuit court to the findings of fact and order of determination.  Or. Rev. Stat. § 539.150. While exceptions are pending in the circuit court, the department is required by statute to regulate water in accordance with the findings of fact and order of determination.  Or. Rev. Stat. § 539.170.  The findings of fact and order of determination, as confirmed or modified by the process set out in Chapter 539, is conclusive as to all prior rights and the rights of all existing claimants.  Or. Rev. Stat. § 539.200.

In addition to regulating water in accordance with determined claims, the watermaster is required to regulate distribution of water in accordance with water users' existing water rights of record. Or. Rev. Stat. § 540.045(1). "Existing water rights of record" includes all completed permits, certificates,

licenses and ground water registration statements, and related court decrees. Or. Rev. Stat. § 540.045(4).

### C. Types of Use

The beneficial uses of water are set out in Oregon statutes and case law. When a water right is established via a permit or a determined claim, the right will set out the authorized use of water. Some beneficial uses are consumptive in nature, including domestic use, manufacturing, and irrigation. *See* Or. Rev. Stat. § 540.520(1). There are also non-consumptive uses, including use of water for hydroelectric power generation, Or. Rev. Stat. Ch 543, and instream rights. Instream rights protect water flow for public uses, such as navigation, conservation, or recreation. Or. Rev. Stat. § 537.332(3). Water rights are also available to store water. A storage right consists of a primary right to store water coupled with a secondary right to put the stored water to beneficial use. Or. Rev. Stat. §§ 537.400–.409. Under those statutes, the right to store water is not an obligation or requirement to do so.

At issue in this case are Reclamation's primary right to store water in Upper Klamath Lake and appellants' secondary right to use that stored water for irrigation.

### D. Regulation Orders

Once a water right is established, the holder of the right is vested in a quantity of water, a type of use, a description of the appurtenant lands to which water may be applied, and a priority date. The priority date establishes, in times of shortage, the right to take water ahead of those appropriators who hold a water right with a priority date that is more recent in time or "junior" to the relative rights of a "senior" water right holder. *See Tudor v. Jaca*, 178 Or. 126, 143–44, 164 P.2d 680, *reh'g den* 178 Or. 126 (1945). Thus, where water is not sufficient to satisfy all users, the senior user may make a "call" for water and the watermaster may regulate a junior appropriator off to allow appropriation by the senior appropriator. *See Benz v. Water Res. Comm'n*, 94 Or. App. at 81 (A junior appropriator's water right "cannot be exercised until the senior appropriator's right has been satisfied."); *Dry Gulch Ditch Co. v. Hutton*, 170 Or. 656, 679, 133 P.2d 601 (1943) (the rights of prior appropriators may not be impaired by subsequent appropriations of water). A regulation order is subject to judicial review under Or. Rev. Stat. § 536.075 of the water rights statutes and Or. Rev. Stat. § 183.484 of the Oregon Administrative Procedures Act. Or. Rev. Stat. §§ 536.075(1) and (8); *Teel Irrigation District*, 323 Or. at 677.

## II. The Reclamation Act and State Water Law

Section 8 of the Reclamation Act of 1902 requires the Secretary of the Interior to comply with state laws "relating to the control, appropriation, use, or distribution of water used in irrigation," except where the state law directly conflicts with federal law. 43 U.S.C. § 383; *California v. United States*, 438 U.S. 645 (1978); *see also Columbia Basin Land Protection Ass'n v. Schlesinger*, 643 F.2d 585, 605 (9th Cir. 1981) (explaining that in *California v. United States*, the Reclamation Act required Reclamation to obtain and comply with a state water appropriation permit, based on "the very clear and specific language" of Section 8, which "leaves no room for doubt" that Congress intended Reclamation to submit to state requirements). Section 8 provides:

> Nothing in this Act shall be construed as affecting or intended to affect or to in any way interfere with the laws of any State or Territory relating to the control, appropriation, use, or distribution of water used in irrigation, or any vested right acquired thereunder, and the Secretary of the Interior, in carrying out the provisions of this Act, shall proceed in conformity with such laws, and nothing herein shall in any way affect any right of any State or of the Federal Government or of any landowner, appropriator, or user of water in, to, or from any interstate stream or the waters thereof.

43 U.S.C. § 383.

## III. Factual Background

### A. Klamath Basin Project

The Klamath basin is located in southern Oregon and northern California, and is the drainage basin for the Klamath River and other smaller rivers and

tributaries. Water flow from Upper Klamath Lake into the Klamath River is controlled by the Link River Dam. Upper Klamath Lake is shallow and has a limited water capacity, and hence is sensitive to droughts. *See Klamath Irr. Dist. v. U.S.,* 635 F.3d 505, 508 (Fed. Cir. 2011). The Klamath Project is an irrigation project that provides water to approximately 240,000 acres of crop lands, and several wildlife refuges, including the Lower Klamath and Tulelake National Wildlife Refuges in northern California. *Id.* There are significant competing interests in the available water supply, and repeated droughts in recent years have exacerbated water supply shortages.

The Link River Dam is owned by Reclamation. The Klamath River begins downstream of the dam and flows south and west for 240 miles before it reaches the ocean. *Klamath Irrigation Dist. v. U.S. Bureau of Rec.,* 489 F. Supp. 3d 1168, 1173 (D. Or. 2020). The Klamath Tribes and the Hoopa Valley Tribe have, since time immemorial, relied on water and fish resources of the Klamath Basin. *Id.* Both claim treaty fishing rights and federal reserved water rights. *Id.* at 1174. Similarly, the Yurok Tribe in northern California claims treaty and federally reserved water rights. *See Yurok Tribe v. U.S. Bureau of Reclamation,* 231 F. Supp. 3d 450 (N. D. Cal. 2017).

Although Reclamation owns the Link River Dam, it and other dams on the river currently are operated and maintained by PacifiCorp.[2] The dam furthest downstream is the Iron Gate Dam in California. *Pacific Coast Fed. v. U.S. Bureau of Reclamation,* 138 F. Supp. 3d 1228, 1230 (N. D. Cal. 2001) Below the Iron Gate Dam, the river is home to numerous fish species, including a threatened species of coho salmon and a species of chinook salmon that in turn provides food for an endangered orca population. *Id.* In the lake and tributaries above Link River Dam, the system provides habitat for two endangered species of suckers. *Klamath Irrigation Dist. v. U.S. Bureau of Rec.,* 489 F. Supp. 3d 1168, 1173 (D. Or. 2020).

The main point of diversion for Klamath Project water in Upper Klamath Lake is known as the "A-Canal," which is located upstream from the Link River Dam. The A-Canal is operated by appellant Klamath Irrigation District (KID) pursuant to a water delivery contract between KID and Reclamation. Members of appellant Klamath Water Users Association (KWUA) also have contracts with Reclamation for the delivery of irrigation water.

---

[2]     PacifiCorp is transferring operation of Link River dam, and both operation and ownership of Keno dam (the next dam downstream of Link River dam) to Reclamation in 2024 under an agreement between the two entities.

### B.    Klamath Basin Adjudication

Since 1975, Oregon has been in proceedings to adjudicate water right claims in the Klamath Basin (the "KBA").  Pursuant the McCarran Amendment, which waived sovereign immunity for state water rights adjudications, the United States is a participant in the KBA. *United States v. Oregon*, 44 F.3d 758, 770 (9th Cir. 1994).

In the KBA, the final administrative order is known as the Amended and Corrected Findings of Fact and Order of Determination ("ACFFOD").  In 2013, the OWRD served the final administrative order on the parties and initiated proceedings in Klamath County Circuit Court, as required by Or. Rev. Stat. § 539.150.  Judicial review of the ACFFOD is ongoing.  *See In re Waters of the Klamath River Basin*, Klamath County Circuit Court Case No. WA1300001.  As noted, the determined claims described in the ACFFOD are enforceable; while the ACFFOD is pending before the circuit court, "the division of water from the stream involved * * * shall be made in accordance with the order." Or. Rev. Stat. § 539.170.

Two determined claims are at issue in this appeal.  The first, KA 294, grants a storage right to Reclamation to impound water in Upper Klamath Lake via the Link River Dam.  The second, KA 1000, grants irrigators—including KID and members of KWUA—and the United States the right to use stored

water in Upper Klamath Lake, as well as live flow both from the lake and from

the Klamath River downstream of Link River Dam.  The ACFFOD did not

determine the relative rights between Reclamation and project irrigators:

> A determination of the relative rights of the [Klamath Project
> Water User] entities and the United States to control or operate
> diversion and distribution works, including headgates, pumps,
> canals and other structures is not within the scope of the
> Adjudication, and must take place in another forum. The
> Adjudication is concerned only with establishing the points of
> diversion that are, in fact, used to convey water to the claimed
> place of use. These points of diversion have been adequately
> established based on the record of this proceeding. The description
> and recognition of these points of diversion in this Partial Order of
> Determination is not intended to and does not alter in any way the
> relative rights of the United States and the irrigation entities to
> control or operate the irrigation works.

7-KWUA_ER-1636–37.

### C. Reclamation releases stored water in Upper Klamath Lake from Link River Dam both for irrigation in the Klamath Project and to comply with its ESA obligations.

As ordered by the district court and consistent with its ESA obligations,

Reclamation must augment flows in the Klamath River to benefit endangered

species.  *See Yurok Tribe v. U.S. Bureau of Reclamation*, 319 F. Supp. 3d 1168,

1178–1179 (N.D. Cal. 2018) (denying motion by KID and other intervenors to

lift an injunction ordering Reclamation to require certain types of water flows

as part of their operation of the Project in order to prevent irreparable harm to

the Southern Oregon Northern California Coastal Coho salmon, an endangered

species). In times of shortage, which are increasingly common, Reclamation has declined to provide water to irrigators, and has released water to comply with its ESA obligations.

In April 2020, KID filed a notice of dispute against Reclamation with OWRD, challenging Reclamation's release of stored water for Endangered Species Act and federal tribal trust responsibilities rather than irrigation. 1-KWUA_ER-18. KID requested that the watermaster take charge of Upper Klamath Lake to prevent Reclamation from releasing stored water through the Link River Dam "except to meet the needs of state-recognized water rights calling on that source." 1-KWUA_ER-18.

On April 16, 2020, OWRD took charge of Upper Klamath Lake and issued a notice of dispute and investigation to Reclamation, PacifiCorp, and KID. 7-KWUA_ER-18. The following day, KID filed a mandamus petition in the Marion County Circuit Court, *Klamath Irrigation District v. Oregon Water Resources Department* (20CV15606), asking the court to command OWRD to take exclusive charge of Upper Klamath Lake and divide or distribute the reservoir water in accordance with the relative rights of the water users under Or. Rev. Stat. § 540.210(2). 1-KWUA_ER-18. The court issued the writ.

OWRD then issued an Interim Order on April 23, 2020, ordering Reclamation to "cease releasing stored water from [Upper Klamath Lake]

reservoir except in accordance with the relative and respective state law rights calling upon the stored water." 18-KID_ER-4266.The Interim Order provided further that, for releases of stored water "for a purpose other than to satisfy state law rights," Reclamation could justify its releases by "provid[ing] the Department the following information in writing: [among others, rate, volume, and legal authority]." 18-KID_ER-4266.

Reclamation responded to the Interim Order that same day, explaining that it was "accomplishing the release of water from Upper Klamath Lake in compliance with applicable federal law, including but not limited to the Endangered Species Act, and also consistent with a stipulated stay of litigation entered" in the underlying litigation in this case. 18-KID_ER-4264. Five days later, Reclamation supplemented that response with further explanation and data. 18-KID_ER-4266–73. That data included the flow rates of Endangered Species Act releases by day for the latter half of April 2020. 18-KID_ER-4273. Reclamation explained that it "may provide additional relevant data and information as it is generated and becomes available, understanding that OWRD may make more specific requests in conjunction with its investigation." 18-KID_ER-4273

Dissatisfied with OWRD's response to the writ of mandamus, KID filed a complaint against OWRD in Marion County Circuit Court in May 2020. 1-

KWUA_ER-18–19. KID sought an injunction under Or. Rev. Stat. § 540.740, which allows injunctive relief where "the watermaster has failed to carry into effect the order of the Water Resources Commission or decrees of the court determining the existing rights to the use of water." 19-KID_ER-4566. KID moved for summary judgment, which OWRD opposed on several state-law grounds. 19-KID_ER-4566.

At the end of September, the circuit court issued an opinion finding in KID's favor. 19-KID_ER-4568. The court found that, despite taking exclusive charge of Upper Klamath Lake and having a statutory duty to divide or distribute the water according to the relative rights of the water users, OWRD improperly allowed Reclamation to use stored water from Upper Klamath Lake without first "determining whether the Bureau had a right, permit, or license to appropriate the Stored Water in the [lake]." 19-KID_ER-4571. The court explained that it had "reviewed the entirety of the Oregon Water Rights Act and [was] unable to identify any opt-out provision that would allow [OWRD] to allow the distribution or use of water to any party, including the Federal Government, without an established right, permit or license to use Oregon Water." 19-KID_ER-4572. The court further found that the OWRD watermaster had knowingly allowed Reclamation to release water illegally, at the expense of Oregon water users. 19-KID_ER-4572.

In accordance with its Amended Opinion, the court issued an order granting KID's motion for summary judgment. 19-KID_ER-4567. The order also contained a mandatory injunction that required OWRD to immediately stop Reclamation from releasing stored water from Upper Klamath Lake except to satisfy state water rights:

> Accordingly, pursuant to Or. Rev. Stat. § 540.740, [the OWRD watermaster] is ordered to immediately stop the distribution, use and/or release of Stored Water from [Upper Klamath Lake] without determining that the distribution, use and/or release is for a permitted purpose by users with existing water rights of record or determined claims to use the Stored Water in [Upper Klamath Lake].

19-KID_ER-4567.

In June 2021, the Marion County Circuit Court entered a judgment finalizing its injunction, which OWRD promptly appealed to the Oregon Court of Appeals. [3] 19-KID_ER-4572. At OWRD's request, the court issued a stay while OWRD's appeal was pending. 1-KWUA_ER-18.

Also in June 2021, Reclamation submitted a petition for reconsideration of the April 6 Order to OWRD. 19-KID_ER-4559–62. Reclamation interpreted

---

[3] On September 8, 2022, the Oregon Court of Appeals reversed the Marion County Circuit Court's order. *Klamath Irrigation Dist. v. Oregon Water Res. Dept.*, 321 Or. App. 581, 593, 518 P.3d 970, 978 (2022), *rev. den.*, 371 Or. 21 (2023). The court agreed with OWRD's argument that Reclamation was an indispensable party to the state court litigation but could not be joined owing to sovereign immunity. *Id.* OWRD subsequently withdrew the enforcement orders directed at Reclamation. 1-KWUA ER-5.

OWRD's order to preclude it from releasing water to meet federal ESA requirements or fulfill downstream reserved water rights. 19-KID_ER-4559–61. Based on that reading, Reclamation asserted that "OWRD [had] overstepped its jurisdiction" and that the order was therefore *ultra vires* and facially invalid. 19-KID_ER-4560.

On July 2, 2021, OWRD issued a Notice of Violation based on Reclamation's stored water releases from Link River Dam on June 28, 2021. 19-KID_ER-4577. In that notice, OWRD acknowledged that Reclamation "operates the Project pursuant to the Reclamation Act of 1902 * * * as well as other federal laws and regulations, including but not limited to the [ESA]," but it made no findings regarding whether the June 28 releases were for ESA or other federal-law purposes. 19-KID_ER-4579. Thus, "according to the best information available to it, the Department conclud[ed] that legally stored water was passing through the Link River Dam [on June 28] in violation of the ORDER dated April 6, 2021." 19-KID_ER-4583. The notice further provided that if the "violation [was] not corrected within one (1) day from the date of [the] notice the Bureau may be subject to further agency action or any other lawful remedy." 19-KID_ER-4584. Reclamation submitted a letter response the following day, reiterating its position that OWRD did not have authority to issue the Order or the notice of violation. 19-KID_ER-4586–87.

On July 28, 2021, OWRD issued another notice to Reclamation finding two more violations of the April 6 Order. 19-KID_ER-4588. Specifically, OWRD determined that, on June 29 and July 2, 2021, Reclamation had released 10 cubic feet per second (cfs) of water "in excess of permitted purposes by users with existing water rights of record or determined claims to use the stored water in [Upper Klamath Lake]." 19-KID_ER-4596. The notice did not impose any sanction, and instead provided that OWRD would "continue to monitor conditions." 19-KID_ER-4596.

In October 2021, the United States filed its crossclaim in the district court, seeking declaratory and injunctive relief against OWRD on the ground that OWRD does not have authority to issue orders to Reclamation that might interfere with Reclamation's federal-law obligations. 8-KWUA_ER-1725. OWRD then filed a counterclaim against the United States, asserting that Section 8 of the Reclamation Act of 1902 requires Reclamation to comply with state law in its operation of the Klamath Project. 7-KWUA_ER-1658. OWRD requested a permanent injunction requiring Reclamation to provide sufficiently detailed information to establish that the quantity of particular releases through Link River Dam is required by the Endangered Species Act or other federal law, so that OWRD can identify which releases are preempted by federal law and beyond the scope of OWRD's regulatory authority. 7-KWUA_ER-1668.

KWUA also filed a counterclaim, seeking a declaration that the ESA does not authorize or require Reclamation to release water stored for irrigation to benefit endangered species. 1-KWUA_ER-4.

On cross-motions for summary judgment, the district court ruled in Reclamation's favor, holding that the ESA preempted OWRD's order and that the order is invalid under the Supremacy Clause. The court rejected OWRD's request for injunctive relief; OWRD did not appeal that ruling. 1-KWUA_ER-10–11.

In granting Reclamation's cross-claim, the district court first concluded Reclamation was subject to the requirements of the ESA. Contrary to the position advanced by KWUA and KID, the court adhered to Ninth Circuit precedent and concluded that Reclamation's decision whether to release stored water was a discretionary decision subject to the ESA. 1-KWUA ER 31–37. The court then concluded that OWRD's order stood as an obstacle to Reclamation's compliance with the ESA because the order prohibited the release of stored water that was required by Reclamation's ESA obligations. 1-KWUA ER 37–39.

## ARGUMENT

OWRD acknowledges, as it must, that federal law controls when there is a direct conflict with state law. For that reason, OWRD does not dispute the

district court's conclusion that OWRD's orders are invalid to the extent that they conflict with Reclamation's ESA obligations.

Outside of situations in which federal law imposes obligations on Reclamation's operations, however, the Reclamation Act requires Reclamation to comply with Oregon water law. As explained below, Oregon law establishes Reclamation's right to store water in Upper Klamath Lake; KID and other members of KWUA have secondary rights to use that stored water for irrigation. Under Oregon law, Reclamation's right to store water pursuant to determined claim KA 294 does not prohibit Reclamation from releasing water from Upper Klamath Lake. To the extent that appellants' construe Oregon water law as imposing such a prohibition, appellants' arguments fail.

Whether Reclamation elects to release water stored under KA 294 to meet its obligations under the federal ESA, or instead release water to satisfy contractual obligations to deliver water to irrigators is a matter controlled by the federal ESA and the contracts between Reclamation and irrigators, including appellants. Oregon law authorizes but does not *require* Reclamation to use stored water for irrigation. Reclamation's disposition of stored water is a matter of the contractual relationship between Reclamation and the project irrigators and the federal ESA. The ACFFOD did not determine the relative rights to control project infrastructure or to distribute project water between Reclamation

and irrigators.  Accordingly, whether those contracts or the ESA control Reclamation's duty to provide project water to appellants does not involve Oregon water law.

## A. Oregon law governs the appropriation and distribution of water in Upper Klamath Lake absent a direct conflict with federal law.

As noted, Section 8 of the Reclamation Act of 1902 requires the Secretary of the Interior to comply with state laws "relating to the control, appropriation, use, or distribution of water used in irrigation," except where the state law directly conflicts with federal law. 43 U.S.C. § 383; *California v. United States*, 438 U.S. 645 (1978).

In *California v. United States*, the Supreme Court examined the extent to which Section 8 allowed California to condition Reclamation's impoundment and distribution of surface water on compliance with various state law requirements. The Court broadly construed Section 8 and upheld California's imposition of twenty-five separate conditions on Reclamation's permit, including one that precluded Reclamation's impoundment of any water at all until it submitted certain documentation to the state's water board. *Id.* at 652, 674–75. In finding that Reclamation was subject to California law, the Court noted that Section 8 followed the "well-established precedent in national legislation of recognizing local and State laws relative to the appropriation and distribution of water." The Court found that Section 8's legislative history

"makes it abundantly clear that Congress intended to defer to the substance, as well as the form, of state water law." *Id.* at 674–75. In addition, the Court emphasized "the legal confusion that would arise if federal water law and state water law reigned side by side in the same locality." *Id.* at 668–69.

At the same time, the Court also concluded that "Congress did not intend to relinquish total control of the actual distribution of the reclamation water to the states." *Id.* at 668 n. 21. Rather, the Court found that "state water law does not control in the distribution of reclamation water *if* inconsistent with other congressional directives to the Secretary." *Id.* (emphasis in original). On remand, the Ninth Circuit held that "inconsistent with congressional directives" means a preempting federal statute that displaces state law. *United States v. Cal. State Water Res. Control Bd.*, 694 F.2d 1171, 1176 (9th Cir. 1982) (quotation marks omitted).

Here, the United States agrees that Reclamation must generally comply with state law, conceding that "state law shall govern the appropriation, distribution, and use of water under federal reclamation projects" unless the state law is "'inconsistent with other congressional directives.'" (Crosscl. ¶ 105, *quoting California v. United States,* 438 U.S. at 668 n.21.)

As the holder of provisionally determined water rights under the ACFFOD, Reclamation is subject to OWRD's regulatory authority. The Oregon

Water Code and related administrative rules are intended "to secure the equal and fair distribution of water in accordance with the rights of the various users." Or. Rev. Stat. § 540.145. Those laws apply to all established water-rights holders, including water users with provisionally determined rights, such as Reclamation. *Id.* Absent a direct conflict with federal law, OWRD can exercise that authority over Reclamation.

**B.    Under Oregon law, Reclamation has the right to store water in Upper Klamath Lake but it is not obligated to do so; nor is it required to use water that has been stored for irrigation.**

Although Reclamation has the right to store water in Upper Klamath Lake under KA 294, nothing in Oregon law prevents the bureau from either deciding not to store water or to release water that has already been stored. As noted, a storage right consists of a primary right to store water coupled with a secondary right to put the stored water to beneficial use.  Or. Rev. Stat. §§ 537.400–.409.  Those statutes do not prohibit the holder of a storage right from releasing stored water, and federal entities operating reservoirs routinely do so for flood control as well as to meet other federal requirements, including the federal ESA.

Nevertheless, KID asserts that "Reclamation's diversion of stored water for instream use without a water right to do so impairs KID's water rights and violates Oregon water law."  KID Br 65.  OWRD disagrees.  First, the release

of stored water through Link River Dam is not a "diversion" of water under Oregon law. Diversion refers to removing or shunting water away from the main channel of the river. *See Bennett v. City of Salem,* 192 Or. 531, 537–38, 235 P2d 772 (1951). When an entity that is entitled to store water instead allows it to flow past the impounding structure without the intent to deliver it to a secondary use, that water is natural flow and it becomes public water rather than water protected for the purpose for which it was initially impounded. Or. Rev. Stat. § 540.045(3);[4] *Jones v. Warm Springs Irrigation Dist.*, 162 Or. 186, 195, 91 P.2d 542 (1939). Second, the release of stored water by Reclamation with the express intent to not deliver it to project irrigators does not convert its storage right to an unlawful instream use. Under KA 294, Reclamation does not possess an instream right. When stored water is released as natural flow, that water becomes public waters subject to diversion and use by downstream rights holders, in accordance with Oregon law.[5] Oregon law treats that water as live flow, not as water protected by an instream right.

---

[4] Or. Rev. Stat. § 540.045(3) provides, "For purposes of regulating the distribution or use of water, any stored water released in excess of the needs of water rights calling on that stored water shall be considered natural flow, unless the release is part of a water exchange under the control of, and approved by, the watermaster."

[5] Under Oregon law, the failure to put water to the beneficial use identified by the water right can result in forfeiture of the right. *See* Or. Rev.

*Footnote continued...*

**C.**    **The ACCFOD does not address the contractual relationship between Reclamation and project irrigators.**

As noted, KID and other water users have contracts with Reclamation that govern the delivery of water within the Klamath Project. *See Klamath Irrigation Dist. v. U.S.,* 348 Or. 15, 50, 227 P.3d 1145 (2010) (explaining that those contracts may clarify, redefine, or alter the relationship between KID and Reclamation). Although KID and other water users have a determined claim to use water for irrigation—to be supplied from UKL live flow, the Klamath River, and water stored by Reclamation in UKL—the contracts between water users and Reclamation govern whether the bureau is required to supply water. Reclamation and the contracting parties dispute whether the ESA or the contracts govern the distribution of water from Upper Klamath Lake. *See* KWUA Br at 51–53 (arguing that the contracts impose a non-discretionary duty on Reclamation to supply water to project irrigators); 7-KWUA_ER-1632–36 (United States argument on summary judgment that the contracts did not divest Reclamation of discretion).

---

Stat. § 540.610(1) (establishing a rebuttable presumption of forfeiture following 5 years of nonuse). The presumption of forfeiture can be rebutted on numerous bases, including that "the holder of a water right is prohibited by law from using the water." Or. Rev. Stat. § 540.610(2)(k).

The ACFFOD states that it does not determine "the relative rights of the KPWU entities and the United States to control or operate diversion and distribution works, including headgates, pumps, canals and other structures * * * and does not alter in any way the relative rights of the United States and the irrigation entities to control or operate the irrigation works." 7-KWUA_ER-1636–37. In other words, the ACFFOD does not construe the contracts between Reclamation and the project irrigators and does not purport to govern the relationship between them.

Under Ninth Circuit precedent, as discussed by the district court, Reclamation has an obligation under the ESA to avoid jeopardizing listed species, notwithstanding the bureau's contractual obligations. *Klamath Water Users Association v. Patterson*, 204 F.3d 1206, 1214 (9th Cir. 2000) *cert. den.*, 531 U.S. 812 (2000). Whether *Patterson* remains good law or whether its reasoning applies on these facts does not turn on any question of Oregon water law.

## CONCLUSION

OWRD does not dispute that its order purporting to prohibit Reclamation from releasing water from Link River Dam was preempted to the extent the order conflicted with Reclamation's duties under the ESA. Accordingly, this court should affirm the district court's judgment. However, when there is no

conflict federal law, Oregon water law applies to Reclamation's operation of

the Klamath Project pursuant to Section 8 of the Reclamation Act.

Respectfully submitted,

ELLEN F. ROSENBLUM
Attorney General
BENJAMIN GUTMAN
Solicitor General


/s/  Carson L. Whitehead

CARSON L. WHITEHEAD  #105404
Assistant Attorney General
carson.l.whitehead@doj.state.or.us

Attorneys for Defendant-Appellee
Oregon Water Resources Department

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7), Federal Rules of Appellate Procedure, I certify that the Appellee's Brief is proportionately spaced, has a typeface of 14 points or more and contains 5,709 words.

DATED:  January 16, 2024

/s/  Carson L. Whitehead
_____
CARSON L. WHITEHEAD  #105404
Assistant Attorney General
carson.l.whitehead@doj.state.or.us

Attorney for Defendant-Appellee
Oregon Water Resources Department

ELLEN F. ROSENBLUM
Attorney General
BENJAMIN GUTMAN
Solicitor General
CARSON L. WHITEHEAD
Assistant Attorney General
1162 Court St.
Salem, Oregon 97301
Telephone: (503) 378-4402

Counsel for Appellee

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| YUROK TRIBE; et al., | |
| Plaintiffs - Appellees, | U.S.C.A. No. 23-15499 |
| v. | |
| U.S. BUREAU OF RECLAMATION, | STATEMENT OF RELATED CASES |
| Defendant-counter-claimant-cross-claimant - Appellee, | |
| NATIONAL MARINE FISHERIES SERVICE, | |
| Defendant - Appellee, | |
| v. | |
| KLAMATH WATER USERS ASSOCIATION, | |
| Defendant-counter-claimant-cross-claimant - Appellant, | |
| KLAMATH TRIBES; et al., | |
| Intervenor-Defendants - Appellees, | |
| v. | |
| OREGON WATER RESOURCES DEPARTMENT, | |
| Cross-claim-defendant - Appellee. | |

Pursuant to Rule 28-2.6, Circuit Rules of the United States Court of

Appeals for the Ninth Circuit, the undersigned, counsel of record for Appellee,

certifies that he has no knowledge of any related cases pending in this court.

Respectfully submitted,

ELLEN F. ROSENBLUM
Attorney General
BENJAMIN GUTMAN
Solicitor General

/s/ Carson L. Whitehead
CARSON L. WHITEHEAD #105404
Assistant Attorney General
carson.l.whitehead@doj.state.or.us

Attorneys for Defendant-Appellee
Oregon Water Resources Department

# CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2024, I directed the Appellee's Brief to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/  Carson L. Whitehead
_____
CARSON L. WHITEHEAD  #105404
Assistant Attorney General
carson.l.whitehead@doj.state.or.us

Attorney for Defendant-Appellee
Oregon Water Resources Department