# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

YUROK TRIBE; PACIFIC COAST FEDERATION OF FISHERMEN'S ASSOCIATIONS;
INSTITUTE FOR FISHERIES RESOURCES; HOOPA VALLEY TRIBE,
*Plaintiffs/Joined Cross-Claimants/Appellees,*

and

UNITED STATES OF AMERICA,
*Cross-Claimant/Counterclaim-*

*Defendant/Appellee*, and

KLAMATH TRIBES,
*Intervenor-Defendant-Appellee,*

v.

KLAMATH WATER USERS ASSOCIATION,
*Crossclaim-Defendant/Counter-*

*Claimant/Appellant*, and

KLAMATH IRRIGATION DISTRICT,
*Joined Crossclaim-Defendant/Appellant,*

and

OREGON WATER RESOURCES DEPARTMENT,
*Crossclaim-Defendant.*

On Appeal from the United States District
Court for the Northern District of California
No. 3:19-cv-04405-WHO
Hon. William H. Orrick

## KLAMATH TRIBES' ANSWERING BRIEF

JEREMIAH D. WEINER (Cal. Bar No. 226340)
ROSETTE, LLP
1415 L Street Suite 450
Sacramento, CA 95814
Telephone: (916) 353-1084
jweiner@rosettelaw.com
*Attorney for Intervenor-Defendant-Appellee THE KLAMATH TRIBES*

## TABLE OF CONTENTS

INDEX OF AUTHORITIES..................................................................................3

ISSUES PRESENTED FOR REVIEW ................................................................4

INTRODUCTION ................................................................................................4

BACKGROUND ..................................................................................................4

ARGUMENT ........................................................................................................7

CONCLUSION ...................................................................................................12

CERTIFICATE OF COMPLIANCE ..................................................................13

CERTIFICATE OF SERVICE ...........................................................................14

# INDEX OF AUTHORITIES

**Cases**

*Arizona v. San Carlos Apache Tribe*, 465 U.S. 545 (1983)....................................11

*Kimball v. Callahan*, 493 F.2d 564 (9th Cir. 1974)..................................................6

*Klamath Irrigation District v. United States Bureau of Reclamation* ("*KID*"), 48 F.4th 934 (9th Cir. 2022).................................................................... 5, 6, 8

*Klamath Water Users Protective Association v. Patterson*, 204 F.3d 1206 (9th Cir. 1999) ..............................................................................................................8

*United States v. Adair*, 723 F.2d 1394 (9th Cir. 1983).............................................5

*Yurok Tribe v. Bureau of Reclamation*, 654 F. Supp. 3d 941 (N.D. Cal. 2023)........7

**Other Authorities**

Treaty between the United States of America and the Klamath and Moadoc Tribes and Yahooskin Band of Snake Indians, October 14, 1864 ("1864 Treaty"), 16 Stat. 707 at Art. 1 .........................................................................................6

**Regulations**

53 Fed. Reg. 27130 (July 18, 1988)..........................................................................7

77 Fed. Reg. 73,740 (Dec. 11, 2012) ........................................................................7

87 Fed. Reg. 4636, 4638 (Jan. 28, 2022) ..................................................................6

## ISSUE PRESENTED FOR REVIEW

The Klamath Tribes adopt the statement of the issue set forth in the response brief filed by Federal Appellees. Dkt. 60 at 16.[1]

## INTRODUCTION

The Klamath Tribes ("Tribes") respectfully request this Court to affirm the district court's ruling finding that certain orders of the Oregon Water Resources Department ("OWRD") are preempted by the Supremacy Clause of the United States Constitution because they risk frustrating the federal objectives delineated in the Endangered Species Act ("ESA") and rejecting cross-motions for summary judgment filed by Appellants Klamath Water Users Association ("KWUA") and Klamath Irrigation District ("KID").

## BACKGROUND

The Klamath Tribes are a federally recognized Indian tribe possessing governmental authority over their members and Indian lands and consist of three peoples who traditionally inhabited the region that now comprises parts of Southern Oregon and Northern California: the Klamath, the Moadoc, and the Yahooskin Band of Snake Indians. *See* 87 Fed. Reg. 4636, 4638 (Jan. 28, 2022).

---

[1] All page number citations herein are to the ECF filing page numbers rather than to the internal pagination of the given document.

The Tribes' headquarters are in Chiloquin, Oregon, in the heart of the Upper Klamath Basin.

As this Court has recognized, the Tribes have relied for millennia on the natural resources of the Klamath Basin, including fish and water, for subsistence, cultural, ceremonial, religious, and commercial purposes. *Klamath Irrigation District v. United States Bureau of Reclamation* ("*KID*"), 48 F.4th 934, 939 (9th Cir. 2022). "Time and again, we have affirmed the critical importance of the Klamath Tribe's water and fishing rights in the Klamath Basin and its distributaries." *Id.* C'waam (Lost River sucker) and koptu (shortnose sucker) have played a particularly central role in the Tribes' cultural and spiritual practices, and were once the Tribes' most important food-fish. *See id.* A fundamental aspect of the 1864 Treaty between the United States of America and the Klamath and Moadoc Tribes and Yahooskin Band of Snake Indians ("1864 Treaty"), 16 Stat. 707, in which the Tribes ceded millions of acres of their aboriginal territory to the United States, was the Tribes' retention of their rights to trap, hunt, and gather within the 800,000 acres of land the Tribes reserved for themselves, and to fish in the lakes and streams found there. *KID*, 48 F.4th at 939. Indeed, "one of the very purposes of establishing the Klamath Reservation was to secure to the Tribe[s] a continuation of [their] traditional hunting and fishing lifestyle." *United States v. Adair*, 723 F.2d 1394, 1409 (9th Cir. 1983) (internal quotations omitted). These

treaty rights survived the termination of the Tribes' former reservation. *Kimball v. Callahan*, 493 F.2d 564, 569 (9th Cir. 1974).

The land cessions the United States extracted in the 1864 Treaty, however, opened the door to extensive non-Indian settlement in the Klamath Basin and the introduction of ever more intensive agricultural practices that have wrought havoc on the Basin's ecosystem, with c'waam and koptu paying the heaviest price. After bountifully sustaining the Tribes' material and spiritual needs for thousands of years, these fish dwindled precipitously over the second half of the 20th century, and they were listed as endangered by the United States Fish and Wildlife Service ("USFWS") in 1988. 53 Fed. Reg. 27130 (July 18, 1988). In 2012, USFWS designated Upper Klamath Lake ("UKL") and its tributaries as critical habitat for the c'waam and koptu. 77 Fed. Reg. 73,740 (Dec. 11, 2012). Despite these steps, these fish are now surviving at such a precariously low level that the species are verging on extinction. *See KID*, 48 F.4th at 939. The Tribes therefore rely on Reclamation's compliance with its ESA obligations in the operation of the Klamath Project ("Project") to stave off the existential catastrophe of the permanent loss of these fish, which exist nowhere on earth outside of the Klamath Basin.

## ARGUMENT

It is precisely the manner of Reclamation's ESA compliance that KWUA attacked in its cross-motion for summary judgment.[2] The district court was correct to deny that cross-motion (as well as KID's separate cross-motion) in a well-reasoned and modest decision that this Court should not disturb. *Yurok Tribe v. Bureau of Reclamation*, 654 F. Supp. 3d 941 (N.D. Cal. 2023). Pursuant to Federal Rule of Appellate Procedure 28(i) and to avoid duplicative briefing, the Klamath Tribes hereby join and adopt as though set forth herein the entire argument section of the brief filed by Appellees Yurok Tribe, Pacific Coast Federation of Fishermen's Associations, and Institute for Fisheries Resources (collectively "Yurok Appellees"), Dkt. 62 at 25-76, though with three important caveats.

First, several of the Yurok Appellees' specific arguments speak only to Reclamation's authority and discretion to release water from UKL to benefit salmon in the Klamath River. This is logical since salmon releases are the Yurok

---

[2] The Tribes have taken issue with the adequacy of Reclamation's discharge of these obligations in regard to the c'waam and koptu, including in still active suits in federal district court in Oregon. *Klamath Tribes v. Reclamation*, Case No. 1:21-cv-00556-CL, and *Klamath Tribes v. Reclamation*, Case No. 1:22-cv-00680-CL (D. Or). But those disputes between the Tribes and Reclamation about the sufficiency of Reclamation's ESA compliance are not at issue in this case. KWUA's counterclaim, by contrast, seeks to define Reclamation's obligations downward, which would leave the c'waam and koptu yet more vulnerable, further threatening the Tribes' fundamental interest in the perpetuation of those species' very existence.

Appellees' primary concern, *id.* at 14-16, and since the OWRD orders that triggered this round of litigation focused exclusively on Reclamation's release of water from UKL for ESA purposes. Dkt. 16 at 34-35. KWUA's framing of the issue is broader, however, challenging "[w]hether Reclamation has discretionary authority to curtail, or direct the curtailment of, the storage, diversion, and delivery of water from the Project for irrigation to benefit threatened or endangered species." Dkt. 16 at 16. This attacks Reclamation's ability both to *release* water from UKL for the benefit of salmon in the Klamath River and Reclamation's ability to *retain* water in UKL for the benefit of c'waam and koptu.

Consistent with this Court's ruling in *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1213 (9th Cir. 1999)(recognizing that Reclamation possesses authority and discretion to operate the Link River Dam – which controls both when water stays in and when it leaves UKL – for the benefit of listed species), and *KID*, 48 F.4th at 941 (Reclamation's ESA obligations "include maintaining minimum lake levels in UKL and minimum stream flows in the Klamath River downstream from the lake to benefit the fish"), the district court did not differentiate between releasing and retaining UKL water to benefit listed species. To the extent this Court finds no error in the district court's ruling (as the Tribes believe it should not), there is no need or principled basis for the Court to

differentiate between Reclamation's authority and discretion to utilize water released from and water retained in UKL for ESA purposes.

To the extent the Court is disinclined to affirm the district court, however, the Tribes respectfully request the Court to recognize that the converse proposition is not necessarily true. That is, were this Court to conclude that Reclamation lacks the authority and discretion to *release* water from UKL for the benefit of listed species, it does not automatically follow that Reclamation also lacks the authority and discretion to *retain* water in UKL to benefit c'waam and koptu. Rather, there may be key analytical and legally-significant differences between the two activities, particularly if this Court is inclined to go where the district court did not and parse the terms of the various contracts entered into by Reclamation and Project irrigators. For example, when Reclamation releases water to provide Klamath River flows for salmon, that water is permanently lost to Project irrigators. But when Reclamation retains water in UKL to provide seasonally necessary elevations for critical c'waam and koptu lifecycle functions (such as the spawning and rearing of baby fish), there are circumstances in which the same water may subsequently be used for irrigation purposes. This alone is a potentially significant factor when considering the scope of Reclamation's authority and discretion to tailor Project irrigation deliveries that may differentiate the retention of water *in* UKL from the release of water *from* UKL.

Again, the Tribes underscore that there is no need for this Court to address these potential distinctions (or parse the terms of the various Project contracts) as the district court's ruling is legally sound. In the event this Court disagrees with the district court's ruling, however, the Tribes respectfully request that it forbear from issuing a substantive ruling of its own on the question of Reclamation's authority and discretion to retain water in UKL for the benefit of c'waam and koptu or, if necessary, remand the case to the district court where this issue can be better developed prior to further appellate review. The potential salience of the distinction between the release and retention of UKL water to benefit listed species is simply not a question squarely presented on the facts of this case and has not been developed in any of the briefing here or below.

Second, the Tribes specifically decline to join footnote 13 in Section III.D of the Yurok Appellees' brief. Dkt. 62 at 49 n.13. The district court did not rely on the interstate clause of Section 8 of the Reclamation Act in determining that the OWRD order was preempted, and there is no need or basis (as the last clause of the last sentence of that footnote explains) for this Court to address that specific question either.

Third, the Yurok Appellees makes certain statements in Section III.D and Section V.A of their brief regarding the relationship between Oregon water rights and the ESA. Dkt. 62 at 47 ("Applying Oregon water rights to constrain

Reclamation's ability [to release water for salmon flows] clashes with the ESA…" (internal quotations omitted)); *id.* at 66 ("By focusing myopically on Oregon water law, KID begs the question—whether the ESA or Oregon water rights are controlling in the event of conflict."); *id.* at 69 ("The ACFFOD, therefore, cannot be administered to constrain Reclamation's ESA compliance." (Internal quotations omitted)). As they pertain to the relationship between the ESA and KID's water rights determined in the Amended and Corrected Findings of Fact and Order of Determination ("ACFFOD") entered by OWRD in the Klamath Basin Adjudication, the Tribes have no disagreement with these statements. But the Tribes also possess water rights determined in the ACFFOD, including instream and in-lake water rights that are predicated at least in part on the need to sustain vital treaty-protected resources such as the critically endangered c'waam and koptu. These water rights, though adjudicated in a state court proceeding, are nonetheless grounded in federal rather than state law under the *Winters* doctrine, as they are federally-reserved water rights. *See Arizona v. San Carlos Apache Tribe*, 465 U.S. 545, 571 (1983). The relationship among the Klamath Tribes' ACFFOD-determined claims, the ESA, and the United States' authority and discretion to manage water in and from UKL for the benefit of listed species thus potentially implicates issues distinct from those presented by KID's arguments regarding its own state-law based water rights. These issues are beyond the scope of the case

presently before the Court. The Tribes therefore respectfully request the Court to avoid opining on them in its resolution of the instant appeal.

## CONCLUSION

The district court's ruling should be affirmed.

Respectfully submitted this 16th day of January, 2024.

> ROSETTE, LLP
> s/ Jeremiah D. Weiner
> Jeremiah D. Weiner
> 1415 L St. Suite 450
> Sacramento, California 95814
> Telephone: (916) 353-1084
> jweiner@rosettelaw.com
> *Attorney for Intervenor-Defendant-Appellee THE KLAMATH TRIBES*

# CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 1,903 words, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f).

2. This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

3. This document complies with the word limit of Cir. R. 32-1.

Respectfully submitted this 16th day of January, 2024.

ROSETTE, LLP
*s/ Jeremiah D. Weiner*
Jeremiah D. Weiner
1415 L St. Suite 450
Sacramento, California 95814
Telephone: (916) 353-1084
jweiner@rosettelaw.com
*Attorney for Intervenor-Defendant-Appellee THE KLAMATH TRIBES*

# CERTIFICATE OF SERVICE

On January 16, 2024, I electronically filed **THE KLAMATH TRIBES' ANSWERING BRIEF** with the United States Court of Appeals for the Ninth Circuit by using the Court's CM/ECF system.

Upon the filing of the foregoing document with the Clerk of the Court using the CM/ECF system, a notification of such filing (NEF) will be transmitted to counsel of record, all of whom appear to be subscribed to receive notice from the ECF system.

> ROSETTE, LLP
> *s/ Jeremiah D. Weiner*
> Jeremiah D. Weiner
> 1415 L St. Suite 450
> Sacramento, California 95814
> Telephone: (916) 353-1084
> jweiner@rosettelaw.com
> *Attorney for Intervenor-Defendant-Appellee THE KLAMATH TRIBES*