No. 23-15499 and 23-15521 (Consolidated)

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

**KLAMATH IRRIGATION DISTRICT**,

*Intervenor-Cross-Defendant and Appellant,*

v.

**YUROK TRIBE, et al.**,

*Plaintiffs and Appellees.*

_____

On Appeal from the United States District Court for the Northern District
of California, San Francisco Division, Case No. 3:19-cv-04405-WHO

_____

**APPELLANT'S REPLY BRIEF**

_____

Nathan R. Rietmann #053630
RIETMANN & KIM, LLP
1270 Chemeketa Street NE
Salem, Oregon 97301
Phone: (503) 551-2740

*Attorneys for Intervenor-Cross-Defendant and Appellant,*
KLAMATH IRRIGATION DISTRICT

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......................................................................... iii

1. INTRODUCTION ................................................................................. 1

2. ARGUMENT ........................................................................................ 7

    A.    Preemption isn't the Issue: Reclamation Lacks Authority Under Federal Law to Use Stored Water in UKL .................. 7

    B.    State of California is Correct: The District Court Applied the Wrong Preemption Standard ...................................................... 11

    C.    Reclamation Fails to Satisfy Its Burden of Proof for Summary Judgment ............................................................. 13

        1.    Lack of Evidence: Reclamation's Failure to Prove Ineligibility for Emergency License under ORS 537.143(11) ................................................................. 13

        2.    Lack of Evidence: Reclamation's Failure to Show it Cannot Comply with ESA and Oregon Water Law on a Long Term Basis ............................................................. 14

        3.    Disputed Material Fact: ESA's Requirement for Reclamation to Augment Klamath River Flows with Stored Water ................................................................. 16

    D.    Court's Ruling Violates the Fifth Amendment ..................... 20

        1.    KID has Properly Asserted Its Judicial Takings Claim ......................................................................... 22

        2.    The Inapplicability of the Tucker Acts and the Merit of Equitable Relief in Judicial Takings ........................... 23

3.    Beyond Baley: Irrelevance of Prior Rulings to KID's Current Fifth Amendment Rights ............................. 24

E.    Reclamation's Paradox: Speciously Asserting State Law Compliance While Invoking Federal Preemption ............................................................. 26

F.    Legal and Factual Clarifications Important to Understanding Issues on Appeal ......................... 29

    1.    KID and KWUA's Separate Appeals are Focused on Different Claims and Issues .................................. 29

    2.    Use of Stored Water vs. Passage of Natural Flow. ...... 30

    3.    Rights vs. Obligations: Dissecting Reclamation's Conflation of Legal Principles ..................................... 32

    4.    ESA Limitations and Reclamation's Use of Stored Water in UKL: Clarifying the Misconception ............. 33

    5.    Reversing the Court's Decision: Restoring Balance to Water Rights and Environmental Obligations ........... 34

3.  CONCLUSION ..................................................................... 35

CERTIFICATE OF COMPLIANCE ......................................... 36

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

*American Forest and Paper Association v. U.S. EPA,*
137 F.3d 291 (5th Cir. 1998) .................................................................. 7

*Arizona v. Navajo Nation,*
599 U.S. 555 (2023) .......................................................................... 19

*Baley v. United States,*
942 F.3d 1312 (Fed. Cir. 2019) ...................................................... 24, 25

*Babbitt v. Youpee,*
519 U.S. 234 (1997) ............................................................................ 24

*California v. United States,*
438 U.S. 645 (1978) ...................................................... 2, 8, 11, 12, 13

*Duke Power Co. v. Carolina Envtl Study Grp.,*
438 U.S. 59 (1978) .............................................................................. 24

*Goshen Irr. Dist. V. Pathfinder Irr. Dist.,*
62 F.Supp.2d 1218 (D. Wyo. 1999) ...................................................... 10

*Hines v. Davidowitz,*
312 U.S. 52 (1941) .............................................................................. 12

*Hodel v. Irving,*
481 U.S. 704 (1987) ............................................................................ 24

*Ickes v. Fox,*
300 U.S. 82 (1937) .............................................................................. 22

*Kaass Law v. Wells Fargo Bank, N.A.,*
799 F.3d 1290 (9th Cir. 2015) ...................................................... 22, 23

## Federal Cases (Continued)

*Lopez v. Davis,*
   531 U.S. 230 (2001) .................................................. 8, 12, 13

*Nat'l Ass'n of Home Builders v. Defs. of Wildlife,*
   551 U.S. 644 (2007) ............................................................. 7

*Petro-Hunt, L.L.C., v. United States,*
   862 F.3d 1370 (Fed. Cir. 2017) ........................................ 24

*Platte River Whooping Crane Critical Habitat Maintenance Trust v. FERC,*
   962 F.2d 27 (D.C. Cir. 1992) ............................................... 7

*Sierra Club v. Babbitt,*
   65 F.3d 1502 (9th Cir. 1995) .......................................... 7, 10

*Stop the Beach Renourishment, Inc. v. Florida Dep't of Envtl. Prot.,*
   560 U.S. 702 (2010) ...................................................... 20, 22

*United States v. Echavarria-Escobar,*
   270 F.3d 1265 (9th Cir. 2001) ........................................... 23

*United States v. Gerlach Live Stock Co.,*
   339 U.S. 725 (1950) .......................................................... 21

*United States v. New Mexico,*
   438 U.S. 696 (1978) .......................................................... 12

*Wild Fish Conservancy v. Jewell,*
   730 F.3d 791 (9th Cir. 2013) ............................................. 21

## State Cases

*Bridge Creek Ranch, LLC v. Oregon Water Res. Dept,*
   32 Or. App. 568 (2023) ..................................................... 27

## State Cases (Continued)

*Cookinham v. Lewis,*
58 Or. 484 (1911)..................................................................... 27

*Klamath Irrigation District v. United States,*
348 Or. 15, 227 P.3d 1145 (2010) ........................................ 25

## United States Constitution

Fifth Amendment ........................................................ 20, 23, 25

## Federal Statutes

16 United States Code ("U.S.C.") sections 1531-1544 ...................*passim*

16 U.S.C. section 1536.............................................................. 17

16 U.S.C. section 1538.............................................................. 17

32 Stat. 388........................................... 1, 8, 9, 10, 11, 12, 21

43 U.S.C. section 373................................................................. 9

43 U.S.C. section 383..................................................... 8, 9, 12

43 U.S.C. section 666................................................................. 4

## State Statutes

Or. Rev. Stat. section 537.110.................................................. 26

Or. Rev. Stat. section 537.130.................................................. 27

Or. Rev. Stat. section 537.137.................................................. 15

Or. Rev. Stat. section 537.143............................................. 13, 14

Or. Rev. Stat. sections 537.332 .............................................. 28

**State Statutes (Continued)**

Or. Rev. Stat. section 537.344 ................................................................. 28

Or. Rev. Stat. section 537.348 ................................................................. 15

Or. Rev. Stat. section 537.366 ................................................................. 28

Or. Rev. Stat. section 539.180 ................................................................. 16

Or. Rev. Stat. section 540.720 ................................................................. 27

**State Regulations**

Oregon Administrative Rules ("Or. Admin. R.")
section 690-250-0150 .......................................................................... 28, 34

**Other Authorities**

Op. Att'y Gen. OP-6423 (1992) ............................................................. 28

# 1.    INTRODUCTION

The surest path to the wrong conclusion is through a mistaken premise. Here, the district court assumed that the fundamental question this case presents is whether the Endangered Species Act ("ESA") preempts state water law. But this preemption question only arises if a more fundamental question is first answered. That question is whether the Reclamation Act of 1902, separate and apart from the ESA, authorizes the United States Bureau of Reclamation to appropriate water rights belonging to others in violation of state law. Since the answer to this fundamental question is properly "no," the court decided this case on the basis of an issue it does not properly present.

There are three central reasons why the court failed to recognize the threshold question in this case. First, it misinterpreted the Endangered Species Act (16 U.S.C §§1531-1544) as a fount of authority that expands the powers of federal agencies beyond their enabling acts. Second, it failed to recognize that Section 8 of the Reclamation Act is a Congressional mandate that circumscribes Reclamation's authority and requires it to comply with state law. Third, it refused to consider water

rights in its analysis even though it is impossible to analyze Reclamation's authority under the Reclamation Act without doing so.

The above errors not only prevented the court from properly identifying the legal issue on which this case turns, they also led the court to base summary judgment on the issue of preemption using the wrong legal standard. As California's amicus brief correctly explains, federal law only preempts state water law when there is a "direct conflict" and the agency cannot simultaneously comply with state and federal law. *California v. United States*, 438 U.S. 645, 668, fn. 21, 98 S. Ct. 2985, 2997, 57 L. Ed. 2d 1018 (1978). In this case, the court deviated from controlling Supreme Court precedent, applied a different standard, and granted summary judgment without requiring Reclamation to demonstrate it cannot simultaneously comply with both state and federal law because they directly conflict.

Reclamation's brief does not defend the merits of the district court's preemption ruling. Instead, it audaciously confuses and conflates the two separate appeals in this consolidated case to convince the court they rise and fall together. It then directs arguments at the issues involved in the other appeal, while ignoring those involved in this one; attempting to

prevail based on misunderstandings of the legal and factual issues involved Klamath Irrigation District's ("KID") appeal.

Reclamation's efforts to confuse the issues are unfortunate. This case directly impacts thousands of farming families who for generations have relied on their water rights in Oregon's Upper Klamath Lake ("UKL") to sustain their livelihoods and communities. Accordingly, this case deserves the most serious and careful consideration our justice system can provide – not legal gamesmanship.

Reclamation's approach is also perplexing. A ruling that Reclamation must meet its ESA obligations in a manner that complies with Oregon law would not negatively impact Reclamation's capacity to protect endangered species. It would simply recognize that Reclamation is capable of meeting its ESA obligations while also complying with Oregon law and respecting the constitutional rights of KID and the more than one-thousand farms it serves. Why Reclamation is adamant about fulfilling ESA obligations with other people's property in a way that destroys lives and communities, rather than protecting the environment in a manner that upholds the law and treats people fairly, is one of the most perplexing unanswered questions in this case.

The net result of the court's errors is a decision that judicially takes the constitutionally protected property interests that KID and others hold in their adjudicated water rights and transfers them to the federal government for public use without due process or payment of just compensation.

Over generations, people in the Klamath Basin have built their lives and planned their futures on the water rights this case concerns. Over the past fifty years, they have spent millions and millions of dollars participating in the Klamath Basin Adjudication to obtain a final judicial determination of their rights in accordance with the federal McCarran Amendment (43 U.S.C. §666). The purpose of this process was not only to have the attributes of their own rights determined, but also to obtain certainty as to how their rights interrelate with all other state and federal water rights in UKL. Yet if this decision is allowed to stand, the adjudicated water rights that people are basing their lives and futures upon will be rendered completely worthless. This would not only be a grave injustice, but it would also fundamentally disrupt Western water law and create complete chaos throughout the West.

Accordingly, KID respectfully requests the Court to identify and correct the significant mistakes and injustices in the district court's decision, setting a precedent that balances environmental conservation with adherence to legal principles. The lower court's broad interpretation of the ESA and narrow view of other federal laws and constitutional rights risk creating a precedent where decisions of agency officials outweigh legal and constitutional boundaries. Rather than a nation of laws, this precedent would establish a "nation of men."

Accordingly, KID asks the Court to:

**1. Reverse the district court's ruling** on the grounds of its misinterpretation of federal preemption principles and its unconstitutional application of the ESA, which has disregarded critical issues of material fact and the Fifth Amendment.

**2. Remand the case** with clear instructions for reevaluation under the correct legal standards, ensuring that Reclamation's actions are scrutinized within the framework of both the ESA and applicable state and federal laws.

**3. Issue a ruling** that clarifies the boundaries of federal agency power under the ESA, emphasizing that the imperative to protect

endangered species does not give agencies authorities to do what they otherwise cannot or exempt agencies from complying with other statutory and constitutional provisions. Such guidance is essential for preventing erosion of the rule of law and for ensuring that environmental protection efforts are conducted within the bounds of the law.

This case presents the Court with a unique opportunity to emphasize the importance of our government's environmental efforts to conserve endangered species while simultaneously emphasizing the importance of our constitutional rights. Effective environmental stewardship and the conservation of endangered species *can and must* coexist with the rule of law and respect for private property and other constitutional rights. By reversing and remanding the district court's decision, this Court will not only rectify the errors in this case and prevent thousands of people from being unjustly deprived of their fundamental rights by their own government, but it will also offer much-needed clarity for future agency actions, which will safeguard against government overreach and ensure that our environmental laws are implemented consistently with other federal laws and the guarantees of the United States Constitution.

## 2. ARGUMENT

### A. Preemption isn't the Issue: Reclamation Lacks Authority Under Federal Law to Use Stored Water in UKL

Preemption does not arise unless there is a conflict between state and federal law. This case does not involve any issue of preemption because Reclamation does not have authority under its enabling act to appropriate rights to use water in violation of Oregon law, and the ESA does not expand Reclamation's authorities under its enabling act.

It is blackletter law that while Section 7 of the ESA "directs agencies to 'utilize their authorities' to carry out the ESA's objectives; it does not *expand* the powers conferred on an agency by its enabling act." *Sierra Club v. Babbitt*, 65 F.3d 1502, 1510 (9th Cir. 1995); *See also, Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 657, 127 S. Ct. 2518, 2529, 168 L. Ed. 2d 467 (2007); *Platte River Whooping Crane Critical Habitat Maintenance Trust v. FERC,* 962 F.2d 27, 33–34 (C.A.D.C.1992); *Am. Forest & Paper Ass'n v. U.S. E.P.A.*, 137 F.3d 291, 299 (5th Cir. 1998).

Consequently, Reclamation only has authority to appropriate water in a manner that conflicts with Oregon law if the Reclamation Act grants it

authority to do so. But Section 8 of the Reclamation Act specifically mandates that Reclamation "**shall** proceed in conformity" with state water law and water rights "in carrying out the provisions of this Act." 43 U.S.C. § 383; *Lopez v. Davis,* 531 U.S. 230, 241, 121 S. Ct. 714, 148 L.Ed.2d 635 (2001) (noting Congress' "use of a mandatory 'shall' to impose discretionless obligation"). The strength of this mandate is evidenced not only by the text of Section 8, but the Congressional debates leading to their adoption and Supreme Court precedent. This is particularly true with respect to the appropriation and condemnation of water and water rights, which are precisely what this case is about. *California v. United States*, 438 U.S. at 668, fn. 20-21 ("[T]his Court has held that state water law does not control in the distribution of reclamation water *if* inconsistent with other congressional directives to the Secretary. * * * Whatever the intent of Congress with respect to state control over the distribution of water, however, Congress in the 1902 Act intended to follow state law as to appropriation of water and condemnation of water rights").

The upshot is that Reclamation may only use its existing authorities to comply with the ESA. Reclamation has no authority under Section 8 of the Reclamation Act to use water in violation of Oregon law

and the ESA does not grant it any new authority to do so. Therefore, the issue of whether Reclamation's authority to use water to comply with the ESA preempts Oregon law is not presented by this case. Federal law requires Reclamation to comply with Oregon law in meeting its ESA obligations.

Both the district court attempted to escape this conclusion by pointing to the "necessary and proper clause" of the Reclamation Act found in Section 10. The assertion is that Section 10's provisions stating the agency may "perform any and all acts…as may be necessary and proper" overrides Section 8's mandate that Reclamation "shall proceed in conformity with" state law and vested water rights. 43 U.S.C. §373; 383.

The contention is without merit. The plain language of Section 10 makes clear that it only authorizes acts that are "necessary and proper *for the purpose of carrying out <u>the provisions of this Act</u>* into full force and effect." 43 U.S.C.A. § 373 (emphasis added). The "provisions of this Act" include Section 8, which mandates Reclamation's compliance with state water law. Therefore, the authority provided by Section 10 is circumscribed by the other provisions of the Reclamation Act itself – including but not limited to Section 8.

There is no authority or cannon of statutory interpretation through which Section 10 may be read to override Section 8 or any other provision of the Reclamation Act. And while cases are scant, at least one court has held that Section 10 does not authorize Reclamation to take actions contrary to the terms of a Reclamation contract. *Goshen Irr. Dist. v. Pathfinder Irr. Dist.*, 62 F. Supp. 2d 1218, 1250 (D. Wyo. 1999). If Section 10 doesn't authorize Reclamation to override the terms of a Reclamation contract, it certainly doesn't override the terms of the Reclamation Act itself.

By its plain terms, the Reclamation Act denies Reclamation authority to appropriate water others own the right to use in violation of state law. Therefore, the only way to find that Reclamation has such authority is to conclude the ESA imbues it with such authority, as the court did here. But such a reading flies in the face of the many controlling authorities holding that while the ESA "directs agencies to 'utilize their authorities' to carry out the ESA's objectives; it does not *expand* the powers conferred on an agency by its enabling act." *Sierra Club v. Babbitt*, 65 F.3d 1502, 1510 (9th Cir. 1995).

Although Reclamation and the district court believe this case is about federal preemption, it simply is not. The question of preemption only arises if Reclamation has authority under its enabling act to appropriate water to which others hold rights, and use it in violation of state law. Because Section 8 plainly provides Reclamation has no such authority, there is simply no issue of federal preemption involved in this case.

**B.    State of California is Correct: The District Court Applied the Wrong Preemption Standard**

Assuming *arguendo* that the issue of preemption arises in this case, the district court's decision should still be reversed. Controlling Supreme Court precedent holds that Section 8 of the Reclamation Act requires Reclamation to comply with state law in the appropriation, control, use, and distribution of water unless it is "directly inconsistent" with "clear congressional directives respecting the project." *California,* 438 U.S. at 672. Here, the district court didn't even consider whether the OWRD order enforcing Oregon water law and water rights was directly inconsistent with the ESA. 1-KID_ER-000035 ("[M]y decision is based on obstacle preemption which does not require a determination of KID's arguments about whether it is physically impossible for the Bureau to

comply with the ESA and OWRD order"). Instead, the court based its ruling on a broad freewheeling analysis of whether "the Order poses an obstacle to the accomplishment and execution of Congress's purpose and objective in enacting the ESA." 1-KID_ER-000031.

The district court rejected application of a direct conflict preemption analysis without even addressing the controlling precedent set forth *California v. United States,* 438 U.S. 645 (1978). And in basing its decision on obstacle preemption analysis, it predominately relied on cases involving immigration where, unlike here, the supremacy of federal law over state law is well-established. *Hines v. Davidowitz*, 312 U.S. 52, 62, 61 S. Ct. 399, 401–02, 85 L. Ed. 581 (1941). ("[T]he supremacy of the national power in…immigration…is made clear by the Constitution…and… been given continuous recognition by [the Supreme Court]").

Unlike immigration law, there is a longstanding history of Congressional deference to state water law. *United States v. New Mexico*, 438 U.S. 696, 702 (1978). In fact, Section 8 of the Reclamation Act mandates that Reclamation "**shall** proceed in conformity with" state water law and water rights. 43 U.S.C. § 383; Cf. *Lopez v. Davis,* 531 U.S. 230, 241, 121 S.Ct. 714, 148 L.Ed.2d 635 (2001) (noting Congress' "use of

a mandatory 'shall' ... to impose discretionless obligations"). Nevertheless, the district court largely relied on immigration cases to determine what preemption analysis should be applied, while ignoring the preemption standard articulated in the Supreme Court's controlling decision in *California v. United States*, 438 U.S. 645 (1978). This error permeated all of the court's material rulings in this case.

## C. Reclamation Fails to Satisfy Its Burden of Proof for Summary Judgment

Again, assuming *arguendo* that preemption is the relevant issue, the district court erred in granting summary judgment because it failed to recognize genuine issues of material fact necessary to determine whether state and federal law directly conflict.

### 1. Lack of Evidence: Reclamation's Failure to Prove Ineligibility for Emergency License under ORS 537.143(11)

When OWRD issued its order to Reclamation, it had authority to *immediately* issue Reclamation an emergency limited license authorizing its continued use of stored water to provide instream flows.

ORS 537.143(4) provides:

> The Water Resources Director may issue a limited license in conjunction with an enforcement order to address an illegal water use.

Similarly, ORS 537.143(11) provides:

> The director may issue a limited license authorizing immediate use of water if the director finds that an emergency exists and the water is needed to protect the public health, safety, and welfare.

Reclamation has not demonstrated that OWRD refused to issue it an emergency license. Nor has it shown that it requested one. Given the absence of evidence in the record, and the court's refusal to allow KID to conduct discovery, there is no basis on which it may be concluded that Reclamation could not have simultaneously complied with the federal ESA and the OWRD order enforcing state water law. 1-KID_ER-000055; 2-KID-ER-000104-000147

### 2. Lack of Evidence: Reclamation's Failure to Show It Cannot Comply with ESA and Oregon Water Law on a Long Term Basis

Reclamation failed to demonstrate that it could not simultaneously comply with state and federal law on a long-term basis by, for example, obtaining a longer-term limited license pursuant to ORS 537.143. Given Reclamation's use of limited licenses to comply with federal and state law in the past (i.e., using a limited license to use stored water without a water right, which was prohibited by state law), the absence of such

evidence is glaring. The record shows that when the Klamath Adjudication determined Reclamation did *not* to have a right to use stored water in UKL for instream purposes, Reclamation simultaneously met its ESA obligations and complied with Oregon laws prohibiting use of water without a water right by obtaining limited licenses pursuant to ORS 537.137 in 2013, 2014, and 2015. 2-KID-ER-000310; 6-KID_ER-001133-001144; 12KID_ER 002831-002844; 12-KID_ER-002877-002883. Given this undisputed evidence, the lack of any countervailing evidence, and the court's refusal to allow discovery on this issue, this is a genuine issue of material fact that remains for trial. 2-KID-ER-000270.

Additionally, Oregon law allows water rights holders to lease their rights instream. ORS 537.348. Reclamation failed to show that it could not comply with state and federal law by entering into an instream lease with KID or another water right holder in UKL. This is particularly true given the evidence in the record indicating that KID was willing to enter into an instream lease with Reclamation. 2-KID-ER-000308; ("Even now, despite the history of litigation regarding these matters, KID is willing to negotiate with Reclamation to lease or license its water rights to the extent necessary"); 13-KID_ER-002940.

Additionally, while KID and Reclamation's water rights determined in the Klamath Adjudication are presently enforceable, they are capable of being stayed pending completion of judicial review. ORS 539.180. If Reclamation obtained a stay of the water rights determinations, it would be able to use stored water in UKL for instream purposes in full compliance with Oregon law. However, there is no evidence that Reclamation has requested a stay, let alone been denied one.

There are numerous avenues for Reclamation to appropriate the water rights necessary to use stored water in UKL for instream ESA purposes while respect the Reclamation Act's mandate to comply with state law. Reclamation has not shown that any of these avenues are unavailing.

3. **Disputed Material Fact: ESA's Requirement for Reclamation to Augment Klamath River Flows with Stored Water**

A slew of other genuine issues of material fact remain for trial. Reclamation asserts *ad nauseum* that the ESA obligates it to use stored water in UKL for instream purposes. However, no such obligation appears in the text of the ESA or the administrative rules interpreting it. Rather, the text of the ESA and rules implementing it make clear that Reclamation's ESA obligation is not to jeopardize the existence of a listed

species, adversely impact their critical habitat, or cause unauthorized take of listed species. *See e.g.,* 16 U.S.C. §1536(a);16 U.S.C. §1538(a)(B).

Reclamation has failed to show that diverting stored water from UKL into the Klamath River to increase flows beyond their naturally occurring level is the only way to comply with the ESA. While Reclamation's current biological opinion and other ESA compliance documents show that its current use of stored water is consistent with its ESA obligations, these documents by their very nature merely identify one possible way Reclamation can comply with its ESA obligations. They fail to show that there are no other ways for Reclamation to meet its ESA obligations. For example:

- There is no evidence in the record showing that river flows less than those set forth in the current compliance documents would jeopardize listed species or adversely impact their critical habitat.

- There is no evidence in the record showing Reclamation cannot meet its ESA obligations by using water from other sources to augment river flows.

- There is no evidence in the record that acquiring the necessary water rights in UKL to provide the flows Reclamation believes

are required under the ESA in compliance with Oregon law would violate the ESA.

Reclamation's response that it has received jeopardy opinions in the past before the water rights in UKL were determined in the Klamath Adjudication proves nothing. The jeopardy opinions it references did not pertain to proposed actions that attempted to meet ESA obligations without using stored water or, alternatively, contemplated the use of stored water consistent with Oregon law.

Likewise, Reclamation's wholly unsubstantiated assertion that it isn't releasing more water for instream flows than is required by the ESA is both meaningless and untrue. Reclamation has produced no evidence establishing the minimum amount of stored water Reclamation must divert from UKL for instream purposes, if any, to meet its obligations under the ESA. Moreover, Reclamation's current Biological Opinion provides for stored water to be diverted from UKL to provide flows for a "boat dance ceremony." 7-KID_ER-001194-001195; 13-KID_ER-003066-003067; 15-KID_ER-003560; 15-KID_ER-003619; 15-KID_ER-003643. These diversions of stored water are not required by the ESA and are not being provided pursuant to any state or federal water right in UKL

determined in the Klamath Adjudication. Reclamation is invading KID's water rights to provide water for this ceremony even though it is not required by the ESA and its general trust obligations to Tribes do "not impose a duty on the United States to take affirmative steps to secure water for the Tribe. *Arizona v. Navajo Nation*, 599 U.S. 555, 566, 143 S. Ct. 1804, 1814, 216 L. Ed. 2d 540 (2023)

Additionally, the fundamental assumption in this case presents a genuine issue of disputed fact for trial. The assumption is that Reclamation will *cause* take, jeopardy or adversely modify critical habitat in violation of Section 7 or 9 of the ESA by *not* diverting stored water from UKL into the Klamath River. Yet this *assumption* overlooks a critical fact: this water would have already flowed down the river and be long gone if Reclamation hadn't artificially captured and stored it earlier in the year *in full compliance with the ESA*. How can failing to release water, which would not naturally be available to the river at that time without human intervention *cause* take, jeopardy, or adverse modification of critical habitat in violation of the ESA? As a matter of logic, it can't. After water has been stored, the effect of not releasing it into the river at some point in the future is exactly the same as if the water had never been stored and it had

naturally flowed down the river in the past. In either scenario, the water wouldn't be there at the time Reclamation claims the ESA requires it to be released.

Significantly, Reclamation's current biological opinion and other ESA compliance documents only tend to show that injecting stored water into the Klamath River *does not* violate the ESA. They fail to demonstrate that *not* diverting stored water from UKL will cause take, jeopardy, or adverse modification of critical habitat in violation of the ESA. Consequently, the issue of whether the ESA requires Reclamation to use stored water to artificially augment natural river flows presents a genuine issue of material fact for trial.

Since the court applied the wrong preemption standard, it did not consider any of the above issues and others like them, or even allow KID to conduct discovery in relation to these issues. 1-KID_ER-000022; 19-KID_ED-004664-004692. Accordingly, the district court erred in granting summary judgment.

## D. Court's Ruling Violates the Fifth Amendment

The Fifth Amendment prohibits the government "from taking private property without paying for it, no matter which branch is the

instrument of the taking." *Stop the Beach Renourishment, Inc. v. Florida Dep't of Envtl. Prot.,* 560 U.S. 702, 715 (2010). The district court's ruling constitutes a judicial taking for the reasons stated in KID's opening brief.

One reason Congress included Section 8 in the Reclamation Act was "to avoid serious constitutional questions regarding its authority to override the States' regulation of waters within their borders." *Wild Fish Conservancy v. Jewell*, 730 F.3d 791, 797 (9th Cir. 2013) (internal citations and quotations omitted). Through Section 8, Congress sought to ensure "that the operation of federal reclamation projects within state borders will not affect or interfere with the States' sovereign authority to regulate the appropriation and use of state waters <u>or the protected property interests of parties with vested water rights under state law.</u>" *Id.* Just as the Supreme Court has previously held that "[w]e cannot twist [Section 8] into an election on the part of Congress under its navigation power to take such water rights without compensation," the Court should not allow Section 8 to be twisted to allow Reclamation to take KID's water rights under the power of the ESA without just compensation. *United States v. Gerlach Live Stock Co.*, 339 U.S. 725, 739, 70 S. Ct. 955, 962–63, 94 L. Ed. 1231 (1950).

It has long been established that "[u]nder the Reclamation Act the United States…stands in the same position with relation to the state as a private individual. The waters belong to the state, and the United States never acquires any title therein any more than a private appropriator." *Ickes v. Fox*, 85 F.2d 294, 298 (D.C. Cir. 1936), *aff'd*, 300 U.S. 82, 57 S. Ct. 412, 81 L. Ed. 525 (1937). The decision here turns this fundamental understanding of the Reclamation Act on its head by taking KID's water rights and giving Reclamation an "super right" to control Oregon's water that no private appropriator could ever obtain.

## 1. KID Has Properly Asserted Its Judicial Takings Claim

Contrary to what Reclamation argues, a motion for reconsideration or an appeal are appropriate procedures for raising a judicial takings claim arising from a district court's ruling. *Stop the Beach Renourishment, Inc. v. Florida Dep't of Envtl. Prot.*, 560 U.S. 702, 712, 130 S. Ct. 2592, 2601, 177 L. Ed. 2d 184 (2010) ("We ordinarily do not consider an issue first presented to a state court in a petition for rehearing if the state court did not address it. But where the state-court decision itself is claimed to constitute a violation of federal law, the state court's refusal to address that claim put forward in a petition for

rehearing will not bar our review") *Kaass Law v. Wells Fargo Bank, N.A.*, 799 F.3d 1290, 1293 (9th Cir. 2015) (Court may consider arguments raised for the first time on appeal when there are "exceptional circumstances" or "the issue presented is purely one of law and the opposing party will suffer no prejudice" or "plain error has occurred and injustice might otherwise result") (quoting *United States v. Echavarria-Escobar*, 270 F.3d 1265, 1267–68 (9th Cir. 2001).

Here, KID timely sought leave to file a motion for reconsideration following the district court's summary judgment ruling. 1-KID_ER-000002. Even if it had not, the fact that the judicial takings claim arises from the district court's ruling constitutes an exceptional circumstance that would warrant consideration of the issue for the first time on appeal. This is particularly true where, as here, the issue is a legal one, the opposing party will suffer no prejudice, and the violation of the Fifth Amendment represents plain error and will result in substantial injustice if not remedied.

### 2. The Inapplicability of the Tucker Acts and the Merit of Equitable Relief in Judicial Takings

Reclamation is wrong in its contention that KID may seek compensation under the Tucker or Little Tucker Act in the Court of

Federal Claims to remedy the judicial taking it is asserting here. It is well-established that claims of judicial takings cannot be heard in the Court of Federal Claims when they require the court to review the decision of another tribunal. *Petro-Hunt, L.L.C. v. United States*, 126 Fed. Cl. 367, 380 (2016), *aff'd,* 862 F.3d 1370 (Fed. Cir. 2017).

Reclamation is also wrong in categorically asserting "[t]here is no right to enjoin a taking where a suit for just compensation is available." (Brief Pg. 61). The Court has ordered equitable relief in a variety of other settings in which it apparently believed that monetary damages were not contemplated by the regulatory statute or would not adequately redress the plaintiff's injury. *Babbitt v. Youpee*, 519 U.S. 234, 243-45 (1997); *Hodel v. Irving*, 481 U.S. 704, 716-18 (1987); *See also Duke Power Co. v. Carolina Envtl. Study Grp.*, 438 U.S. 59, 71 n.15 (1978). An alleged judicial taking bears enough similarity to these situations that equitable relief is merited.

### 3. Beyond Baley: Irrelevance of Prior Rulings to KID's Current Fifth Amendment Rights

Reclamation asserts KID's Fifth Amendment arguments here are baseless in light of *Baley v. United States*, 942 F.3d 1312, 1318 (Fed. Cir. 2019). This is wrong because *Baley* did not even involve deprivation of the

same property interest KID is asserting here. *Baley* was a taking case about a physical deprivation of water that occurred in 2021 before state and federal water rights were determined in the Klamath Adjudication. In that litigation, the plaintiffs were expressly "barred from making any claims or seeking any relief in this case based on rights, titles, or interests that are or may be subject to determination in the Adjudication." *Baley v. United States*, 134 Fed. Cl. 619, 642 (2017), *aff'd,* 942 F.3d 1312 (Fed. Cir. 2019).

The reason such claims were barred is the property interest involved in the adjudication had not yet been determined but were assumed to be owned by Reclamation for the purposes of the case. Thus, in *Baley,* irrigators were only claiming an equitable interest in water rights Reclamation presumably owned and controlled. *Klamath Irrigation Dist v. United States*, 348 Or. 15, 20, 227 P.3d 1145, 1148 (2010) ("[W]e assume that the United States holds legal title to the water and that plaintiffs claim only an equitable or beneficial interest in the water.") However, the Klamath Adjudication subsequently determined that KID owns and controls the water rights Reclamation was assumed to own in *Baley*.

Beyond this, *Baley* determined that a taking did not occur in 2001 because the Klamath Tribes had prior right to the water as Reclamation

asserts in its brief. However, in the adjudication, the Klamath Tribes water rights were modified through a stipulated agreement and now do not curtail the water rights of KID. 13-KID_ER-003019. Thus, the rational upon which *Baley* was decided is no longer applicable due to changed legal and factual circumstances.

**E.    Reclamation's Paradox: Speciously Asserting State Law Compliance While Invoking Federal Preemption**

Reclamation made no attempt to defend the district court's preemption ruling. Instead, its answering brief attempts to argue that its diversion and use of stored water in UKL for instream purposes at times when KID's water rights govern the use of that water is consistent with Oregon law. What is more, OWRD submitted briefing designed to leave the court with the impression that this is true, when it is not. After all, if this were true, OWRD never would have issued the order that prompted Reclamation to bring its preemption claim. Instead, it would have issued an order providing that Reclamation's storage right grants it authority to release stored water when it so chooses.

All water within the state of Oregon from all sources belongs to the public. ORS 537.110. With limited exceptions not pertinent here, Oregon law prohibits the diversion and use of water without a water right. ORS

537.130. Oregon law also prohibits the diversion or use of water that another owns the rights to use. ORS 540.720.

Water rights associated with stored water are different from other rights in that one water right, referred to as the primary storage right, is needed to take water from the natural stream and place it into storage. A separate water right, known as the secondary use right, is needed to divert and use the water that is stored. *Bridge Creek Ranch, LLC v. Oregon Water Res. Dep't*, 329 Or. App. 568, 541 P.3d 920, 583 (2023) ("A permit for storage, *in and of itself*, the court held, does not constitute or include the right to use stored water; it is the secondary permit that applies the water to beneficial use"); *See also, Cookinham v. Lewis*, 58 Or. 484, 491–92, 114 P. 88, 90–91 (1911)("The Water Code makes a distinction between a permit for diversion of water and one to construct a reservoir and store surplus water. *The latter does not include the* right to *divert and* use *such* stored water*, which must be the subject of the secondary permit.*")(emphasis added). In Oregon, diversion of stored water for instream use is a beneficial use of water requiring a water right. ORS 537.344 ("Public uses are beneficial uses"); ORS 537.332(5)("Public use includes… (b) Conservation, maintenance and enhancement of

aquatic and fish life, wildlife, fish and wildlife habitat and any other ecological values"); ORS 537.366(4) ("Any request for an in-stream water right to be supplied from stored water shall refer to the reservoir for a supply of water").

Once water is placed into storage through the exercise of the primary storage right the secondary water rights to the stored water govern its subsequent distribution during their season of use in which they call upon the water. OAR 690-250-0150(4)("Use of legally stored water is governed by the water rights, if any, which call on that source of water."); Or. Op. Att'y Gen. OP-6423 (1992) ("When the water is stored, the bureau has appropriated the water as authorized by its certificate. Use of the stored water is then subject to the terms of the secondary permits and certificates issued to irrigators").

There is simply no statute, no case, no authority whatsoever to support the proposition Reclamation may appropriate stored water in UKL and use it for instream purposes in the Klamath River during KID's irrigation season when KID's water rights call upon and govern the distribution of stored water in UKL – and none are cited.

### F. Legal and Factual Clarifications Important to Understanding Issues on Appeal

This section highlights and clarifies several issues that appear to be confused and conflated in the briefing.

#### 1. KID and KWUA's Separate Appeals are Focused on Different Claims and Issues

Although the appeals filed by KID and KWUA arise from the same judgment, each focuses on different claims for relief resolved through that judgment. KID is appealing the district court's ruling on Reclamation's crossclaim asserting the ESA preempts enforcement of state water laws that restrict Reclamation's own water use. KWUA is appealing the court's ruling denying summary judgment on its separate counterclaim concerning how the ESA applies to the Klamath Project more generally and limits Reclamation's discretion over irrigators water use.

Recognizing this distinction is important because KID and KWUA's appeals do not rise or fall together and the discrete issues they present need to be separately analyzed. Reclamation cannot establish its authority to appropriate and use water based on arguments about its discretion to control the water use of others.

## 2. Use of Stored Water vs. Passage of Natural Flow

There is no dispute that Reclamation has discretion not to exercise its storage rights, allowing incoming water to flow through UKL into the Klamath River unimpeded. However, that is not what this case is about. The issue in this case is whether Reclamation has authority to divert water that has already been stored in UKL and use it for instream purposes in the Klamath River without a water right as Oregon law requires.

Understanding this distinction is critical. The briefing submitted by Reclamation and others is filled with statements that seem to support Reclamation's position and are technically correct – but only in reference to the passage of natural flow, which is not the issue at hand. To take but one example, OWRD's brief at one point states:

> Under Oregon law, Reclamation's right to store water pursuant to determined claim KA 294 does not prohibit Reclamation from releasing water from Upper Klamath Lake. To the extent that appellants' construe Oregon water law as imposing such a prohibition, appellants arguments fail.

(OWRD Brief, Pg. 4)

This statement is technically correct, but also misleading. It is true Reclamation has a right to store water in UKL. It is also true that after

water has been placed into storage, Reclamation may cease adding additional storage and allow incoming water to naturally pass through UKL into the Klamath River, without releasing any of the water previously stored. However, in the context of this case, OWRD's statement above (and others similar to it) are likely to leave the court with the impression that Reclamation can release stored water from UKL during the irrigation season of secondary water right holders when their rights governing the use of the water. This is simply not accurate. If it were, OWRD would never have issued the order Reclamation is challenging in this case.

To take another example, OWRD states in its briefing:

> A storage right consists of a primary right to store water coupled with a secondary right to put the stored water to beneficial use. Or. Rev. Stat. §§ 537.400–.409. Under those statutes, the right to store water is not an obligation or requirement to do so.

This above statement is also technically correct, but misleading. Reclamation does not have any obligation under Oregon water law to exercise its storage right and may allow natural flow entering UKL to pass through without impounding it. However, in the context of this case, the statement implies that Reclamation may release water that it has

previously stored in UKL in full compliance with the ESA to the detriment of secondary right holders, rather than continuing to stored it. This is simply not accurate. Once again, if this were true, OWRD would never have issued the order that prompted Reclamation to bring this case.

### 3. Rights vs. Obligations: Dissecting Reclamation's Conflation of Legal Principles

Reclamation's fundamental argument is that its "obligation" to comply with the ESA gives it the "right" to divert stored water from UKL to fulfill this obligation. This argument conflates two distinct legal concepts. KID agrees Reclamation has an "obligation" to comply with the ESA. But the existence of this *obligation* does not mean Reclamation has the *right* to meet this obligation by using water to which others hold title.

Suppose for example that a person has an obligation to pay the federal government $1,000 in taxes but is completely broke. Is stealing $1,000 from a bank one way the person could fulfill their tax obligation to the federal government? Sure. But does a person's undisputed *obligation* to pay the federal government $1,000 in taxes give them the *right* to steal the $1,000 from the bank? Of course not.

"Obligations" are different than "rights." If it were otherwise, federal agencies would have the *right* to take any action that satisfies the

agency's ESA *obligations* – irrespective of other federal laws, vested property rights, or the guarantees of the U.S. Constitution. Nevertheless, this is fundamentally what Reclamation is arguing here.

> **4.  ESA Limitations and Reclamation's Use of Stored Water in UKL: Clarifying the Misconception**

Reclamation's brief sidesteps the core question of its legal authority to divert and use stored water by misrepresenting the situation. It does so by repeatedly suggesting that its releases of stored water from UKL are a function of a "limitation" the ESA is placing on the exercise of its storage right. (Brief 42). However, Reclamation's primary storage right is fully exercised once it captures and stores natural flow in UKL. Although the ESA might at times limit Reclamation's ability to place additional water into storage, that is not issue in this case."

This case is about how water that has already been artificially impounded in UKL in full compliance with the ESA. Once water is stored, the distribution of that water is governed by the secondary water rights of KID and others. OAR 690-250-0150(4)("Use of legally stored water is governed by the water rights, if any, which call on that source of water.") As a result, ESA limitations on Reclamation's storage rights do

not lead to the release of stored water from UKL, since these rights no longer determine how the water is distributed post-storage."

Reclamation's diversion and use of stored water is also not a response to an ESA imposed limitation on the exercise of KID's secondary rights. If the ESA restricts the exercise of KID's secondary right, KID is prohibited from diverting water from UKL and must close its headgate. Closing KID's headgate does not open Link River Dam and cause stored water to come out. To the contrary, the water stays in UKL for later use by KID during the irrigation season and supports the Klamath Tribe's rights to maintain lake level for the protection of endangered sucker fish.

### 5. Reversing the Court's Decision: Restoring Balance to Water Rights and Environmental Obligations

The court's ruling has unsettlingly granted the Reclamation an undefined, boundless right to use water from UKL—a right that tramples over KID's established water rights. This decision introduces chaos into a previously organized system of water rights, leaving crucial questions unanswered: How much water can Reclamation divert each year? What criteria determine this amount, and how does this impact the careful balance of water rights in the region? The stark reality is that under this

new precedent, there seems to be no limit to Reclamation's water use until it threatens the very survival of listed species, allowing unelected officials unprecedented discretion to prioritize environmental concerns over constitutional rights and established legal frameworks. This upends a delicate balance where federal laws, including the ESA and Reclamation Act, have long coexisted with state water laws and constitutional guarantees. The implications for KID's farmers and ranchers are dire, and the broader consequences for the Western United States are profound. Meanwhile, the decision does nothing for species as there is no evidence Reclamation cannot comply with the ESA and its other legal obligations at the same time.

## 3.   Conclusion

For the reasons above, the case should be reversed and remanded.

Dated: March 7, 2024                RIETMANN & KIM, LLP


*s/ Nathan R. Rietmann*
_____
Nathan R. Rietmann, OSB #053630
Daemie M. Kim, OSB #123624
1270 Chemeketa St. NE
Salem, Oregon 97301

# CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation set forth in Rule 40-1(a) of the Ninth Circuit Rules of Appellate Procedure.  This brief uses a proportional typeface and 14-point font and contains 6,982 words.

Dated: March 7, 2024   RIETMANN & KIM, LLP

          *s/ Nathan R. Rietmann*
          _____
          Nathan R. Rietmann, OSB #053630
          Daemie M. Kim, OSB #123624
          1270 Chemeketa St. NE
          Salem, Oregon 97301

**Form 15. Certificate of Service for Electronic Filing**

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form15instructions.pdf*

**9th Cir. Case Number(s)** | 23-15499 and 23-15521 (Consolidated)

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

☒ I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are NOT Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

**Description of Document(s)** *(required for all documents)*:

**Signature** | s/ Nathan R. Rietmann | **Date** | March 7, 2024

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 15**            *Rev. 12/01/2018*