No. 23-15499 and 23-15521
(Consolidated)

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

KLAMATH IRRIGATION DISTRICT,

*Intervenor-Cross-Defendant and Appellant,*

v.

YUROK TRIBE, et al.,

*Plaintiffs and Appellees.*

_____

On Appeal from the United States District Court for the Northern District of
California, San Francisco Division, Case No. 3:19-cv-04405-WHO

_____

APPELLANT'S CORRECTED MOTION TO CERTIFY
QUESTION'S TO THE OREGON SUPREME COURT

_____

Nathan R. Rietmann #053630
RIETMANN & KIM, LLP
1270 Chemeketa Street NE
Salem, Oregon 97301
Phone: (503) 551-2740

*Attorneys for Intervenor-Cross-Defendant and Appellant,*
KLAMATH IRRIGATION DISTRICT

# **TABLE OF CONTENTS**

**Page**

1. MOTION ..................................................................................................3

2. ARGUMENT............................................................................................8

    A.    Oregon Law and Water Rights Determine Reclamation's Authority to Use Stored Water in UKL for ESA Compliance. .............................8

    B.    Whether Reclamation Has Authority to Curtail Non-Federal Water Rights Requires Interpretation of Oregon Law Beyond Federal Contracts ................................................................................................14

    C.    The Fifth Amendment Claims Depend on Oregon's Definition of Property Rights in Water, Necessitating Certification to the Oregon Supreme Court ......................................................................18

    D.    Oregon Supreme Court Precedent Supports Certification of Questions Relating to Irrigators' Property Interests in Their UKL Water Rights ................................................................20

3. CONCLUSION ......................................................................................23

CERTIFICATE OF COMPLIANCE......................................................25

# MOTION TO CERTIFY

During oral argument, Klamath Irrigation District ("KID") urged the court to certify key questions to the Oregon Supreme Court regarding the United States Bureau of Reclamation's ("Reclamation") authority to use and control the use of water under Oregon law.[1] Authoritative guidance from Oregon's highest court is critical, as the federal issues involving the Endangered Species Act ("ESA") hinge on two essential questions: (1) whether Reclamation has the authority to divert stored water from Upper Klamath Lake (UKL) for instream use, and (2) whether Reclamation can decide how private water rights owned by KID landowners and other non-federal parties are exercised. Both questions are grounded in Oregon law, as all water in UKL is allocated based on state and federal rights established through Oregon's Klamath Adjudication. These rights determine who is legally entitled to use water from UKL and dictate how that water may be used under Oregon law.

---

[1] Under Or.Rev.Stat.§ 28.200, the Oregon Supreme Court "may answer questions of law certified to it by ...a Court of Appeals of the United States" if the question may be determinative of the cause then pending in the certifying court and if the question appears to the certifying court to be one for which no controlling precedent in the decisions of the Supreme Court and the intermediate appellate courts exists. *See also, Western Helicopter Services v. Rogerson Aircraft*, 3 11 Or. 361, 364- 65, 811 P.2d 6, 27 (1991) (discussing the statutory criteria).

Pursuant to Or.Rev.Stat.§ 28.210, a certification order shall set forth:
( 1) The questions of law to be answered; and
( 2) A statement of all facts relevant to the questions certified and showing fully the nature of the controversy in which the questions arose.

As explained in *Pacheco v. United States*, "[c]ertification is appropriate where a case presents complex issues of state law with significant policy implications." 21 F.4th 1183, 1187 (9th Cir. 2021). Similarly, in this case, the federal questions involving the ESA hinge on complex issues of Oregon property law, which courts have deemed appropriate for certification. *See, Klamath Irrigation Dist. v. U.S.*, 227 P.3d 1145, 1149, 348 Or. 15, 22 (Or. 2010). Resolving these questions regarding Reclamation's authority under its Oregon water rights is essential, as it will establish a critical precedent for water rights across Oregon, particularly in the Klamath Basin. This decision will also directly impact the livelihoods of thousands of Oregonians and shape how Reclamation achieves ESA compliance in the future.[2]

Certification is also necessary to ensure this Court's rulings on federal issues are grounded in authoritative interpretations of Oregon law. As noted in *Toner v. Lederle Laboratories*, "[c]ertification provides a means to obtain authoritative answers to unclear questions of state law." 779 F.2d 1429, 1432 (9th Cir. 1986). While this Court can interpret state law, its interpretations are not binding on state courts. See *Horton v. Oregon Health & Sci. Univ.*, 359 Or. 168, 184, 376 P.3d 998,

---

[2] Contrary to what Reclamation contends, the issue in this case is not whether the ESA applies to the Klamath Project. The issue is whether Reclamation has the discretion to comply with the ESA by using stored water in UKL for instream purposes in the Klamath River and by curtailing the exercise of water rights in UKL that are owned by KID, its landowners, and other non-federal third parties.

1009 (2016) ("A federal court's interpretation of state law would not bind a state court faced with the same question."). If this Court were to resolve the state law issues underlying the federal claims, and the Oregon Supreme Court later reached a different conclusion, it could undermine this Court's rulings on the ESA and create uncertainty for all parties.

This is no minor issue. Historically, federal and state interpretations of Oregon water law have diverged significantly. Earlier federal court decisions interpreting the ESA - rendered before the completion of the Klamath Adjudication—were based on the incorrect assumption that Reclamation owned all water rights associated with the Klamath Project, and that irrigators' rights to water were derived from their contracts with Reclamation. For instance, in *Klamath Water Users Ass'n v. Patterson*, the court mistakenly assumed that "Reclamation must deliver water to project irrigators in accordance with *the rights held by the United States* in the project and the irrigators' individual repayment contracts, subject to the availability of water." 15 F. Supp. 2d 990, 995 (D. Or. 1998), aff'd, 204 F.3d 1206 (9th Cir. 1999), amended, 203 F.3d 1175 (9th Cir. 2000) (emphasis added). As a result, the court concluded that Reclamation had the authority to determine the extent to which its water rights in UKL could be exercised and whether water would be made available for irrigation under those contracts.

However, the Klamath Adjudication later determined that most of the water rights governing water distribution in UKL are owned by KID landowners and other non-federal parties—not Reclamation. See KBA_ACFFOD 07084. Furthermore, federal courts have since determined that KID's contract does not limit the water rights of landowners within KID. *Baley v. United States*, 134 Fed. Cl. 619, 655 (2017), aff'd, 942 F.3d 1312 (Fed. Cir. 2019). Despite these clarifications, Reclamation continues to rely on the outdated federal rulings, leading to ongoing uncertainty and undermining the stability of water rights administration, as it navigates compliance with the ESA.

The Oregon Supreme Court is best positioned to resolve the state law issues concerning Reclamation's authority to use water from UKL without being influenced by federal considerations related to Reclamation's compliance with the ESA. Oregon's water rights and laws, which govern the use and control of water in UKL, were established long before the ESA was enacted and apply uniformly across the state, even in areas where no listed species are present. Therefore, these state law questions should be addressed independently of Reclamation's ESA obligations in this case.

Certification to the Oregon Supreme Court ensures that these issues are resolved in their proper context—focusing solely on the interpretation of Oregon's water rights system under state law. This will enable this Court to decide the federal

ESA questions with confidence, knowing that its understanding of Reclamation's authority under Oregon law is based on an authoritative ruling by the Oregon Supreme Court.

Certification is also crucial for maintaining judicial efficiency and ensuring consistency in Oregon's water rights jurisprudence. Without it, there is a substantial risk of inconsistent rulings on pivotal state law issues that impact the Klamath Basin and other water basins throughout Oregon. By certifying these questions now, this Court will receive authoritative guidance from the Oregon Supreme Court, which will help ensure a uniform resolution of Reclamation's discretion under the ESA in distributing water from Upper Klamath Lake (UKL). It will also prevent prolonged litigation in the future, benefiting both the Court and the parties involved by providing a definitive resolution of the state law issues at hand.

For these reasons, KID respectfully moves to certify some or all of the following essential questions, or others like them, to the Oregon Supreme Court:

1. Under Oregon law, does the storage right determined for Reclamation in the Klamath Basin General Stream Adjudication authorize it to divert stored water from UKL for instream use in the Klamath River when: (1) Reclamation's storage right does not authorize it to store water for instream purposes, and (2) the secondary irrigation water rights of KID and others within the Klamath Project are in season?

2. When ownership of storage and usage rights to stored water are separately held, does the owner of the storage right have authority or discretion to decide how the usage rights will be exercised?

3. Under Oregon law, are water rights adjudicated to landowners located within Warren Act districts subject to the terms of contracts between their districts and Reclamation when the landowners are not party to those contracts?

4. Does Reclamation's diversion of legally stored water from UKL, while secondary water rights owned by KID, its landowners, and other non-federal parties are in season, deprive these water rights owners of property interests?

## ARGUMENT

### I. Oregon Law and Water Rights Determine Reclamation's Authority to Use Stored Water in UKL for ESA Compliance

The district court held that the ESA preempts Oregon Water Resources Department (OWRD) orders prohibiting Reclamation from diverting stored water from UKL for instream use in the Klamath River. The court reasoned that preemption arises because the ESA applies to the Klamath Project and the OWRD orders allegedly hinder Reclamation's ability to comply with the ESA. *Yurok Tribe v. U.S. Bureau of Reclamation*, 654 F. Supp. 3d 941, 968 (N.D. Cal. 2023).

However, this analysis overlooks a critical threshold issue: under the Supremacy Clause, federal preemption requires a direct conflict between federal and state law. Therefore, preemption would apply only if Reclamation had the authority

to meet its ESA obligations by using water in a manner prohibited by Oregon law and could not comply with the ESA by other means.

The district court failed to conduct this necessary analysis, instead assuming—without considering the limits of Reclamation's water rights or the requirements of Oregon law—that Reclamation has authority under § 10 of the Reclamation Act to use stored water in UKL to comply with the ESA. *Yurok Tribe*, 654 F. Supp. 3d at 967.

This assumption contradicts the explicit mandate of § 8 of the Reclamation Act, which requires Reclamation to "comply with state law in the "control, appropriation, use, or distribution of water." *California v. United States*, 438 U.S. 645, 675, 98 S. Ct. 2985, 3001, 57 L. Ed. 2d 1018 (1978). Contrary to the district court's finding, any discretion Reclamation exercises under § 10 must adhere to the mandate to comply with state law in § 8. *United States v. Alpine Land & Reservoir Co.*, 887 F.2d 207, 212 (9th Cir. 1989) ("[S]ection 8 sets forth standards that DOI is to follow when its activities pursuant to section 10 affect the acquisition of water rights.").

A thorough examination reveals that Oregon law is the source of Reclamation's authority to use stored water. *S. Delta Water Agency v. U.S. Dep't of Interior, Bureau of Reclamation*, 767 F.2d 531, 536 (9th Cir. 1985) (holding that "the federal government must acquire water rights in accordance with state law").

The ESA itself does not grant federal agencies new powers beyond those conferred by their enabling acts. See *Sierra Club v. Babbitt*, 65 F.3d 1502, 1510 (9th Cir. 1995) ("The ESA directs agencies to 'utilize their authorities' to carry out the ESA's objectives; it does not expand the powers conferred on an agency by its enabling act") (citing *Platte River Whooping Crane Critical Habitat Maint. Tr. v. FERC*, 962 F.2d 27 (D.C. Cir. 1992)). Here, Reclamation's enabling statute, the Reclamation Act of 1902, mandates compliance with state law in "control, appropriation, use, or distribution of water." *California*, 438 U.S. at 674–75. Additionally, the McCarran Amendment requires Reclamation to adhere to state water rights adjudications, such as the Klamath Basin General Stream Adjudication. 43 U.S.C. § 666; *See also, United States v. State of Or.*, 44 F.3d 758, 770 (9th Cir. 1994) ("[T]he Klamath Basin adjudication is in fact the sort of adjudication Congress meant to require the United States to participate in when it passed the McCarran Amendment"). Thus, by virtue of federal law, Oregon law determines Reclamation's authority to use water in UKL.

Oregon has comprehensively adjudicated all state and federal water rights in UKL through the Klamath Basin General Stream Adjudication and the McCarran Amendment. See 9-KID_ER-001757. Oregon law mandates that water is to be distributed in accordance with these determinations. Or. Rev. Stat. § 539.170. Oregon law also prohibits Reclamation from using stored water in UKL without a water right authorizing the use. Or. Rev. Stat. § 537.130(2) ("[A] person may not

use, store or divert any waters until after the department issues a permit to appropriate the waters"); Or. Rev. Stat. § 537.990 ("The possession or use of water, except when a right of use is acquired in accordance with law, shall be prima facie evidence of the guilt of the person using it").

None of the water rights determined in this adjudication authorize Reclamation to divert stored water from UKL for instream use in the Klamath River. Instead, the adjudication concluded that Reclamation has the right to store water in UKL for the benefit of separate irrigation water rights owned by KID and other non-federal parties. See 9-KID_ER-001871. Notably, this storage right does not include the right to store water for the purpose of providing instream flows. In fact, Reclamation's right to store water in UKL does not include the right to use the stored water at all. See 9-KID_ER-001894 ("[T]he right to store water is distinct from the right to use stored water"); *Cookinham v. Lewis*, 58 Or. 484, 491–92, 114 P. 88, 90–91 (1911) ("The Water Code makes a distinction between a permit for diversion of water and one to construct a reservoir and store surplus water. The latter does not include the right to divert and use such stored water, which must be the subject of the secondary permit"); *See also, Bridge Creek Ranch, LLC v. Oregon Water Res. Dep't*, 329 Or. App. 568, 582 (2023).

In the Klamath Adjudication, KID landowners and other non-federal parties were found to be the owners of the secondary rights to use the water legally stored

in UKL under Reclamation's storage right. See 9-KID_ER-001885 to 9-KID_ER-001893. These secondary usage rights govern the distribution of water stored under Reclamation's storage right. Oregon Administrative Rule 690-250-0150(4) confirms that "[u]se of legally stored water is governed by the water rights, if any, which call on that source of water." Similarly, *Tudor v. Jaca*, 178 Or. 126, 147–48, 165 P.2d 770 (1946), holds that stored water may only be used to satisfy secondary rights. Thus, KID and other non-federal parties owning secondary rights to use stored water in UKL, not Reclamation, control the distribution of stored water in UKL.

Application of these principles clearly leads to the conclusion that Reclamation lacks authority under Oregon law to divert stored water from UKL for instream use in the Klamath River while the secondary usage rights of KID landowners and others are in effect. *See, e.g.*, 3-KID_ER-000519; Or. Op. Att'y Gen. OP-6423 (1992), 1992 WL 526810, at *3 ("When the water is stored, the bureau has appropriated the water as authorized by its certificate. Use of the stored water is then subject to the terms of the secondary permits and certificates issued to irrigators"). Therefore, KID would ordinarily argue that this Court should resolve the state law questions on which the federal ESA questions turn.

However, both Reclamation and OWRD have consistently opposed KID's position for years, preventing courts from reaching a substantive resolution on the issue through procedural means. For instance, while KID previously obtained a state

court ruling supporting its interpretation, OWRD ultimately avoided an authoritative ruling from the Oregon Supreme Court by securing the case's dismissal on procedural grounds. See *Klamath Irrigation Dist. v. Oregon Water Res. Dep't*, 321 Or. App. 581, 583, 518 P.3d 970, 973 (2022), review denied, 371 Or. 21, 527 P.3d 999 (2023).

Given the longstanding controversy and the significant implications of these state law issues for water distribution in reservoirs across Oregon, as well as for the constitutional rights of thousands of Oregonians, certification is necessary to definitively resolve the dispositive state law questions. Certification would secure an authoritative interpretation of Oregon law from the state's highest court, ensuring that this Court's decision on the federal issues rests on a solid foundation and has enduring effect.

The Oregon Supreme Court's resolution of these questions is critical for this Court to address the ESA preemption and discretion issues properly. Depending on the resolution of these certified questions, it may become clear that Reclamation lacks the authority—and therefore the discretion—to meet ESA requirements by diverting stored water from UKL for instream use. If this is the case, the district court's decision must be reversed, and Reclamation would either need to satisfy the ESA by other means or acquire the necessary water rights in UKL.

Even if this Court chooses not to address the preemption issue and instead focuses on Reclamation's "discretion" under the ESA, certification remains necessary. Contracts between Reclamation and irrigation districts—contracts to which the State of Oregon is not a party—cannot grant Reclamation the authority to use stored water without a water right in violation of Oregon law. If Oregon law does not authorize Reclamation to use stored water for instream purposes, no contractual agreement can provide such discretion. Additionally, none of the contracts between Reclamation and the irrigation districts even purport to grant Reclamation authority to use stored water in UKL for instream purposes. Thus, the Court cannot determine whether Reclamation has the discretion it claims based on contracts between Reclamation and various irrigation districts. Instead, § 8 of the Reclamation Act mandates that the Court look to state law.

## II. Whether Reclamation Has Authority to Curtail Non-Federal Water Rights Requires Interpretation of Oregon Law Beyond Federal Contracts

Certification is also necessary to resolve whether Reclamation has the authority under Oregon law to curtail the water rights of certain non-federal water rights holders within the Klamath Project.[3]

_____

[3] To be clear, no one contends that KID landowners or other non-federal water rights holders are entitled to exercise their water rights in a manner that causes unpermitted take of listed species in violation of § 9 of the ESA. Instead, the issue is whether Reclamation has authority to decide how non-federal water rights owners choose to exercise their rights in the first instance. KID acknowledges private water right

Federal courts have already rejected Reclamation's argument that KID landowners' water rights are subject to or limited by their repayment contract with Reclamation. In *Baley v. United States*, the court held that "[the United States] has failed to meet its burden of demonstrating that plaintiffs' rights have been altered by the [contracts]." 134 Fed. Cl. 619, 655 (2017), aff'd, 942 F.3d 1312 (Fed. Cir. 2019). The court recognized that water rights within KID predate both KID and its contract with Reclamation, finding that the contracts do not modify or affect the water rights of KID landowners. *Id.* ("Nowhere do the contracts purport to alter or otherwise impact any landowner's water rights, which defendant admits were already appurtenant to the lands within the Klamath Irrigation District and the Tulelake Irrigation District prior to the creation of these Irrigation Districts").

The court also clarified that the KID-Reclamation contract is not a water supply contract but a repayment contract for the operation and maintenance of the Klamath Project. *Baley*, 134 Fed. Cl. at 655 ("[T]he only purposes of the contracts appear to have been to have the Irrigation Districts assume the costs of repaying the

---

owners may be held liable if they exercise their rights in violation of § 9. However, whether a § 9 violation has occurred is determined after the fact—not preemptively before it is even known how the private water rights owners may choose to exercise their rights—and must be proven through proper legal processes. Additionally, Reclamation is not the arbitrator or enforcer of § 9 violations. Therefore, any preemptive action by Reclamation to control the exercise of water rights exceeds its legal authority and undermines the due process rights of private water rights owners.

United States for the construction of the Klamath Project and to transfer to the Irrigation Districts the operation of the Klamath Project works delivering the water to the lands within the Irrigation Districts"). Since KID's contract with Reclamation does not alter or affect the water rights of KID landowners, it cannot serve as the basis for Reclamation's discretion to curtail those rights.[4]

By contrast, the *Baley* court held that Warren Act contracts between Reclamation and the other districts to whom KID owes water delivery obligations are water supply contracts. *Baley*, 134 Fed. Cl. at 652. Despite this, the court prohibited the parties from making "any claims or seeking any relief in this case based on rights, titles, or interests that are or may be subject to determination in the Adjudication." Id. As a result, the *Baley* court's analysis focused solely on whether landowners within Warren Act districts held beneficial interests in water rights *that were assumed to belong to the United States*. From this assumption, the court concluded that landowners in Warren Act districts could not hold a legal right to more water than Reclamation contractually agreed to supply them. *Id.*

---

[4] The decision in *Baley* is unsurprising. KID's contract imposes a mandatory duty on KID to take water from UKL and deliver it to landowners within KID who are entitled to it. 3-KID_ER-000488 ("The District shall take the water supply for the lands within the limits of the District…and shall distribute the same to the water users entitled thereto") (emphasis added). The water rights adjudicated to KID landowners in the Klamath Adjudication, not KID's contract with Reclamation, dictate the water supply to which KID landowners are entitled and control when KID landowners are entitled to use water, the sources of water they are entitled to use, and the purposes for which they are entitled to use water.

However, the Klamath Adjudication determined that landowners within Warren Act districts, not Reclamation, own the irrigation water rights appurtenant to their land, and that these rights exceed the quantities of water that Reclamation contractually agreed to supply under Reclamation's Warren Act contracts with certain districts. 9-KID_ER-001917; 9-KID_ER-001885 to 9-KID_ER-001893. This raises significant state law questions, including whether water rights adjudicated to landowners within Warren Act districts are even subject to the terms of Warren Act contracts to which the landowners themselves are not parties, as a matter of state property law. *See*, Baley, 134 Fed. Cl. at 656 (discussing how landowners within Warren Act districts are not parties to the Warren Act contracts).

Moreover, the Reclamation Act mandates that "beneficial use shall be the basis, the measure, and the limit" of water rights within Reclamation projects. 43 U.S.C.A. § 372. If landowners have adjudicated water rights to beneficially use more water than Reclamation has contractually agreed to supply in a Warren Act contract which the landowner is not party to, it raises federal questions regarding Reclamation's authority to even enter contracts limiting the amount of water Reclamation will supply to less than beneficial use. *See, e.g.,* To the Secretary of the Interior: B-125866 (Sept. 4, 1956), 1956 WL 1894.

In short, *Baley* firmly establishes that water rights within KID and the Tulelake Irrigation District are not limited by or subject to the irrigation districts'

contracts with Reclamation. However, in other irrigation districts with Warren Act contracts, there are unresolved state law questions regarding the effect, if any, these contracts have on the landowners' adjudicated water rights. Therefore, an authoritative decision from Oregon's highest court is needed to determine whether the adjudicated water rights of non-federal landowners within Warren Act districts are subject to the terms of Warren Act contracts to which they are not parties - given that there was no such determination to this effect in the Klamath Adjudication.

### III. The Fifth Amendment Issues Depend on Oregon's Definition of Property Rights in Water, Necessitating Certification to the Oregon Supreme Court

KID argues that the district court's decision judicially takes its water rights and gives them to the federal government without just compensation or due process, violating the Fifth Amendment. There is no dispute that KID's water rights are property rights protected by the Fifth Amendment. *See, Skinner v. Jordan Valley Irr. Dist.*, 137 Or. 480, 491 (1931), opinion modified on denial of reh'g, 137 Or. 480 (1931) ("The right to the use of water constitutes a vested property interest"); *Hansen v. United States*, 65 Fed. Cl. 76, 123 (2005) ("Water rights are property rights protected by the Fifth Amendment"). However, the crux of KID's Fifth Amendment argument centers on the specific attributes of these property rights, not merely their existence.

Whether a government action constitutes a "taking" in violation of the Fifth Amendment depends on the specific property interests involved, which are defined by state, not federal, law. *Stop the Beach Renourishment, Inc. v. Fla. Dep't of Env't Prot.*, 560 U.S. 702, 707 (2010). Therefore, the Court cannot determine whether a constitutional violation occurred without clearly understanding KID's property interests under Oregon law.

The Klamath Adjudication has determined the water rights of KID landowners, Reclamation, and all other water right holders in UKL. These adjudicated rights form the basis of KID's claim to the use and control of water stored in UKL. By virtue of the Klamath Adjudication's determination of the Klamath Tribes' federal reserved water rights in UKL, KID's water rights in UKL are not currently subject to call by the senior water rights of the Klamath Tribes or any other water right holder. 12-KID_ER-002741.

Given the complexity of the water rights involved and the significant implications for both state and federal law, this Court should seek authoritative guidance from the Oregon Supreme Court on the nature of the property interests at stake. Certifying questions to the Oregon Supreme Court concerning Reclamation's use of stored water in UKL deprives KID of property interests is crucial to determining whether the district court's decision constitutes an unconstitutional taking of KID's property.

In sum, the resolution of KID's Fifth Amendment claim fundamentally depends on how Oregon state law defines property interests. Without clear guidance from the Oregon Supreme Court, this Court cannot properly evaluate whether the district court's decision judicially takes KID's water rights. Therefore, certifying these questions to the Oregon Supreme Court is not only appropriate but essential for determining whether the district court's decision violates the Fifth Amendment by making an uncompensated transfer of KID's property rights to the federal government.

## IV. Oregon Supreme Court Precedent Supports Certification of Questions Relating to Irrigators' Property Interests in Their UKL Water Rights

The Oregon Supreme Court accepts certified questions when they are presented by an appropriate federal court, involve issues of Oregon law, and have the potential to resolve the federal claims at hand. Certification is particularly warranted when no controlling Oregon precedent exists. *See, W. Helicopter Servs., Inc. v. Rogerson Aircraft Corp.*, 311 Or. 361, 365, 811 P.2d 627, 631 (1991). Each of these criteria is satisfied in this case.

First, the Ninth Circuit, as a court described in Article III of the United States Constitution, is an appropriate federal court to certify questions to the Oregon Supreme Court. Second, the legal questions KID seeks to certify directly concern issues of Oregon law, including the scope of Reclamation's authority to use and

control water in UKL under Oregon law. Third, resolving these questions may be dispositive of the federal claims raised in this appeal. Finally, Oregon's well-established principles of water law and longstanding guidance from the Oregon Attorney General make clear Reclamation cannot do what it is doing here. *See,* Or. Op. Att'y Gen. OP-6423 (1992); 1992 WL 526810. Lower Oregon courts have substantively ruled in KID's favor on certain of these issues. *Kid v. Oregon Water Resources Dept.*, No. 20CV17922, 2020 WL 13526340, at *1 (Or.Cir. Oct. 02, 2020). However, OWRD was subsequently successful in preventing an authoritative ruling by Oregon's highest court. Therefore, an authoritative ruling from Oregon's highest court squarely resolving the specific state law issues on which the federal issues in this case turn is needed.

Moreover, the Oregon Supreme Court has previously accepted certified questions concerning the property interests of irrigators within the Klamath Project. See *Klamath Irr. Dist. v. United States*, 345 Or. 638, 647, 202 P.3d 159, 163 (2009). In that case, which preceded the water rights determinations in the Klamath Adjudication, the court operated under the assumption that all water rights associated with the Klamath Project were owned by the United States. The court addressed whether irrigators held equitable property interests in these federal water rights. Importantly, the court noted that it was leaving the question of legal title to these water rights for the state water rights adjudication.

Given that the Oregon Supreme Court has previously ruled on the rights of irrigators within the Klamath Project based on assumptions about the federal ownership of water rights, it stands to reason that the court would be receptive to questions about the actual rights determined through the Klamath Adjudication. This case presents an opportunity for the court to clarify the respective rights of Reclamation and private irrigators based not on assumptions but on adjudicated water rights.

Reclamation has argued that the Oregon Supreme Court's previous ruling in *Klamath Irrigation District* resolves the state law issues relevant to this case. However, this is incorrect. The Oregon Supreme Court in *Klamath Irrigation District* explicitly declined to rule on the legal title to the water rights, noting that this issue was reserved for the state water rights adjudication. The court stated:

> [W]e assume that the United States holds legal title to the water and that plaintiffs claim only an equitable or beneficial interest in the water. We express no opinion on plaintiffs' claims that they obtained and hold legal title to water from the Klamath Project. We leave that question for the state water rights adjudication." *Klamath Irr. Dist.*, 348 Or. at 20.

Thus, the previous ruling did not resolve the critical state law issues raised in this case, which directly concern the legal title and rights to the water in UKL as determined in the Klamath Adjudication. The Oregon Supreme Court's earlier decision was based on assumptions rendered obsolete by the adjudication's findings,

which confirm that KID and other non-federal parties, not Reclamation, hold legal title to the water rights – contrary to what the federal circuit asked the Oregon Supreme Court to assume in *Klamath Irr. Dist.*

## V.     Conclusion

For decades, Reclamation's authority to control water in UKL and its compliance with the ESA have been subjects of intense legal dispute. At the heart of this issue are complex unresolved questions of state law that fundamentally determine the scope of Reclamation's authority under both Oregon law and federal law. Without authoritative guidance from the Oregon Supreme Court, there is a significant risk of inconsistent rulings that could undermine property rights, disrupt water distribution across Oregon, and create long-term uncertainty for thousands of water rights holders in the Klamath Basin.

This Court's rulings on the federal ESA issues will only be lasting if it is grounded in authoritative interpretation of Oregon law, which governs the water rights that define Reclamation's discretion. Certifying the key state law questions to the Oregon Supreme Court ensures that the resolution of this case will rest on a solid foundation of state law, providing clarity for all parties involved, maintaining consistency in Oregon's water rights jurisprudence, and preventing further litigation and confusion.

Given the profound implications for water rights owners, the public interest in consistent legal standards, and the complexity of the state law issues at stake, KID respectfully moves this Court to certify the proposed questions to the Oregon Supreme Court.

DATED this 18th day of October, 2024

Respectfully submitted,

**RIETMANN & KIM, LLP**

*s/Nathan R. Rietmann*
_____
Nathan R. Rietmann, OSB #053630
1270 Chemeketa St. NE
Salem, Oregon 97301
503-551-2740
nathan@rietmannlaw.com
Attorneys for Appellant KID

**Certificate of Compliance**

**9th Cir. Case Number(s) 23-15499 and 23-15521**

I am the attorney or self-represented party.

**This motion contains 5,165 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief:

[X] complies with the word limit of Fed. R. App 27(2)(a).

**Signature:** *s/ Nathan R. Rietmann*     **Date:** 10/18/2024