# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

YUROK TRIBE; PACIFIC COAST FEDERATION OF FISHERMEN'S ASSOCIATIONS;
INSTITUTE FOR FISHERIES RESOURCES,
*Plaintiffs/Joined Cross-Claimants/Appellees*,

and

HOOPA VALLEY TRIBE,
*Joined Cross-Claimant/Appellee*,

and

UNITED STATES BUREAU OF RECLAMATION, ET AL.,
*Defendants-Cross-Claimants/Counterclaim-Defendants/Appellees*,

and

KLAMATH TRIBES,
*Intervenor-Defendant-Appellee,*

v.

KLAMATH WATER USERS ASSOCIATION,
*Intervenor-Crossclaim-Defendant/Counter-Claimant/Appellant*,

and

KLAMATH IRRIGATION DISTRICT,
*Intervenor Crossclaim-Defendant/Appellant*,

and

OREGON WATER RESOURCE DEPARTMENT,
*Crossclaim-Defendant-Appellee.*

On Appeal from the U.S. District Court for the Northern District of California
Case No. 3:19-cv-04405-WHO (Hon. William H. Orrick)

## RESPONSE OF APPELLEES YUROK TRIBE ET AL.
## IN OPPOSITION TO MOTION TO CERTIFY QUESTIONS TO THE
## OREGON SUPREME COURT

PATTI A. GOLDMAN (WSBA # 24426)
KRISTEN L. BOYLES (CSBA # 158450)
Earthjustice
810 Third Avenue, Suite 610
Seattle, WA 98104
Ph: (206) 343-7340

*Attorneys for Plaintiffs/Joined Cross-Claimants/Appellees
Yurok Tribe, Pacific Coast Federation of Fishermen's
Associations, and Institute for Fisheries Resources*

AMY CORDALIS (CSBA # 321257)
562 A St.
Ashland, OR 97520
Ph: (541) 915-3033

*Attorney for Plaintiff/Joined Cross-
Claimant/Appellee Yurok Tribe*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

I.     KID WAITED TOO LONG TO SEEK CERTIFICATION. ..........................1

II.    THE PROPOSED CERTIFICATION QUESTIONS FALL OUTSIDE
THE LIMITED WAIVER OF SOVEREIGN IMMUNITY AND
FIRST PHASE OF BIFURCATED PROCEEDINGS IN THIS CASE. ........3

III.   THE QUESTIONS PROPOSED FOR CERTIFICATION ARE NOT
DETERMINATIVE OF THE ISSUES PRESENTED ON THIS
APPEAL. ................................................................................................9

CONCLUSION ................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Baley v. United States*,
134 Fed. Cl. 619 (Ct. Cl. 2017) ........................................................17

*Baley v. United States*,
942 F.3d 1312 (Fed. Cir. 2019) .................................................6, 7, 18

*Balser v. Dep't of Justice*,
327 F.3d 903 (9th Cir. 2003) ...............................................................2

*California v. United States*,
438 U.S. 645 (1978).............................................................................13

*KID v. Bureau of Reclamation*,
48 F.4th 934 (9th Cir. 2022) .......................................................8, 18

*In re Klamath Irrigation Dist.*,
69 F.4th at 934 (9th Cir. 2023) ................................................6, 8, 14

*Klamath Irrigation Dist. v. Or. Water Res. Dep't*,
321 Or.App. 581, 518 P.3d 970 (2022) ..............................................7

*Klamath Irrigation Dist. v. Or. Water Res. Dep't*,
No. 21CV39570 (Marion Cnty. Cir. Ct. July 7, 2023)......................11

*Klamath Irrigation Dist. v. United States*,
345 Or. 638, 202 P.3d 159 (2009) ....................................................10

*Klamath Irrigation Dist. v. United States*,
348 Or. 15, 227 P.3d 1145 (2010) ................................................3, 10

*Klamath Water Users Protective Ass'n v. Patterson*,
204 F.3d 1206 (9th Cir. 1999) ....................................................12, 14

*Nat. Res. Def. Council v. Jewell*,
749 F.3d 776 (9th Cir. 2014) (*en banc*)............................................12

*Nguyen v. Barr*,
983 F.3d 1099 (9th Cir. 2020) .............................................................3

*Ramsey v. Kantor*,
   96 F.3d 434 (9th Cir. 1996) ................................................................14

*Stop the Beach Renourishment, Inc. v. Fla. Dep't of Env't Prot.*,
   560 U.S. 702 (2010)............................................................................18

*Tibble v. Edison Int'l*,
   843 F.3d 1187 (9th Cir. 2016) (*en banc*) .............................................3

*United States v. Klamath Drainage Dist.*,
   No. 1:22-cv-00962-CL, 2023 WL 5899910 (D. Or. Sept. 11, 2023) ...........15, 17

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs. & Prods. Liab. Litig.*,
   959 F.3d 1201 (9th Cir. 2020) ...........................................................11

*W. Helicopter Servs., Inc. v. Rogerson Aircraft Corp.*,
   311 Or. 361 (1991)................................................................................9

*Yurok Tribe v. Bureau of Reclamation*,
   654 F.Supp.3d 941 (N.D. Cal. 2023).............................................*passim*

**Statutes**

28 U.S.C. § 1491 ........................................................................................18

43 U.S.C. § 373 ..........................................................................................13

1911 Warren Act, 43 U.S.C. §§ 523–25 .....................................................17

Act of Feb. 9, 1905, ch. 567, 33 Stat. 714 .................................................13

ORS 28.200 ..................................................................................................9

**Other Authorities**

Federal Rule of Appellate Procedure 28(a)(8)(A) .................................1, 2

Federal Rule of Civil Procedure Rule 19....................................................7

**INTRODUCTION**

Appellees Yurok Tribe, Pacific Coast Federation of Fishermen's Associations, and Institute for Fisheries Resources (hereinafter collectively referred to as "Yurok Tribe") file this response in opposition to the motion to certify questions to the Oregon Supreme Court filed by Appellant Klamath Irrigation District ("KID"). The motion should be denied because KID filed it too late, it seeks rulings on issues that far exceed the limited waiver of sovereign immunity in this case, and those issues will not be determinative of the outcome of this appeal. This case presents federal questions that will be decided based on the federal statutes that govern the Bureau of Reclamation's ("Reclamation's") operation of the Klamath Project and the federal contracts that lay out the conditions under which Reclamation delivers available water to irrigation districts for irrigation. Contrary to KID's view, the answers to these questions cannot be found in the administrative determinations in the Klamath Basin Adjudication ("KBA") because the KBA did not address Reclamation's obligations under the Endangered Species Act ("ESA") or its contractual obligations to deliver water to irrigation districts. The motion should be denied.

I.    KID WAITED TOO LONG TO SEEK CERTIFICATION.

KID failed to seek certification in a timely manner by filing its motion months after completion of briefing and oral argument. Federal Rule of Appellate

Procedure 28(a)(8)(A) requires that an appellant's opening brief present an argument that contains the "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." This Circuit has construed FRAP 28(a)(8)(A) to deem an issue to be waived if the appellant fails to present the issue in its opening brief or in its reply brief, when the issue first arises in an appellee's answering brief. *Balser v. Dep't of Justice*, 327 F.3d 903, 911 (9th Cir. 2003).

In January 2024, KID sent an email to all counsel in this case advising that it planned to file a motion asking the Ninth Circuit to certify state water law questions to the Oregon Supreme Court in response to arguments presented in appellee Oregon Water Resources Department's ("OWRD's") brief. Attached as Exhibit 1 to Declaration of Patti Goldman (Nov. 18, 2024). The Yurok Tribe, the other Tribal appellees, the federal appellees, and OWRD informed KID that they would oppose such a motion. Attached as Goldman Exhibit 2. KID thereafter appeared to abandon its question for certification. It filed no certification motion at that time and made no mention of certification in its reply brief. The certification issue remained dormant until the end of KID's rebuttal argument on June 12, 2024, when its counsel suggested that this Court should certify the question of Reclamation's authority under its Oregon-based water right to the Oregon Supreme Court. Oral argument beginning at 43:36. In response, counsel

for Reclamation advised that the issue had been partially addressed by the Oregon Supreme Court in *Klamath Irrigation District v. United States*, 348 Or. 15, 227 P.3d 1145 (2010), and that it is not the water rights but the contracts between Reclamation and the irrigation districts that define their respective obligations, including Reclamation's discretion to release flows to benefit listed salmon in the river. After the case was submitted, the issue appeared to fade away.

Now, four months after oral argument, KID has filed a motion seeking certification of state water rights issues to the Oregon Supreme Court. By failing to make this request in a motion or brief before oral argument, KID has waived its right to seek certification. *See Nguyen v. Barr*, 983 F.3d 1099, 1102 (9th Cir. 2020) (issue waived if not presented in brief); *Tibble v. Edison Int'l*, 843 F.3d 1187, 1193–94, 1196 (9th Cir. 2016) (*en banc*) (argument forfeited when not raised in appellate brief). The Court should deny the motion and decide the federal questions that have been fully briefed and argued, which do not depend on the issues KID proposes for certification.

II.    THE PROPOSED CERTIFICATION QUESTIONS FALL OUTSIDE THE LIMITED WAIVER OF SOVEREIGN IMMUNITY AND FIRST PHASE OF BIFURCATED PROCEEDINGS IN THIS CASE.

KID's motion for certification seeks rulings from the Oregon Supreme Court on issues that are far outside the limited waiver of Tribal sovereign immunity in this case and the scope of phase 1 of this bifurcated proceeding. Neither the

3

federal government nor the sovereign Tribes have waived sovereign immunity to turn this case into a water rights adjudication.

This case began as the Yurok Tribe's challenge to Reclamation's 2019–2024 Klamath operations plan and the National Marine Fisheries Service's biological opinion for that plan. In March 2020, the district court stayed the litigation based on Reclamation's commitment to operate the Project under an Interim Operations Plan that increased spring flows in most years. *Yurok Tribe v. Bureau of Reclamation*, 654 F.Supp.3d 941, 956 (N.D. Cal. 2023). Subsequently, in September 2021, the district court lifted the stay for the sole purpose of litigating the federal crossclaim and associated counterclaims, but the court made lifting the stay subject to the parameters proposed by the United States and the Tribes. *Id.* Those parameters are set forth as follows:

> Neither the United States nor the Tribes have waived sovereign immunity in this forum for the purpose of adjudicating or quantifying water rights, including the sources from which such adjudicated or quantified rights may be satisfied . . . Accordingly, the lifting of the stay shall not allow or result in an adjudication or quantification of the Tribes' water rights, including the sources from which such adjudicated or quantified rights may be satisfied.

8-KWUA_ER-1776 ¶ 7; *see also* 8-KWUA_ER-1737 ¶ 26; SER-270–71 ¶ 21. The court also bifurcated litigation of the crossclaim so "ESA-related questions were litigated prior to any discussion of water rights." 654 F.Supp.3d at 956. Phase 1 would address ESA-based preemption arguments and phase 2 would, if

necessary, address Reclamation's authority to operate the Klamath Project consistent with senior Tribal water rights. 8-KWUA_ER-1772; 8-KWUWA_ER-1781–82 ¶ 9.[1]

In deciding phase I, the district court held that the ESA applies to Reclamation's operation of the Klamath Project and the ESA preempts OWRD's Order precluding Reclamation from releasing flows to comply with the ESA without an Oregon-based water right. That is the ruling on appeal to this Court. In the course of its ruling, the district court made clear, "No matter how KID attempts to cast the crossclaim, it does not seek an adjudication or quantification of water rights." 654 F.Supp.3d at 961. Moreover, the district court denied KID's motion for a stay until judicial review of the KBA has been completed because the KBA will not determine the federal questions in this case. *Id.* at 960.

Flouting the limitations on the waiver of sovereign immunity and the bifurcation order, KID persists in characterizing this case as turning "solely" on "Oregon's water rights system under state law." Motion at 6. It contends that: "Certification to the Oregon Supreme Court ensures that these issues are resolved

---

[1] Phase 2 would, if necessary, address Reclamation's authority to operate the Klamath Project consistent with senior Tribal water rights. The Hoopa Valley Tribe joined in the first claim in the federal crossclaim addressing ESA preemption, but not the second claim addressing water rights as another source of discretion. Dkt. No. 963 at 34–40; Dkt. No. 1094. Arguments herein regarding the Yurok Tribe's senior Tribal water rights apply to Hoopa Valley Tribe as well.

in their proper context—focusing solely on the interpretation of Oregon's water rights system under state law."  Motion at 6.  Not only does KID sidestep the federal laws, contracts, and preemption doctrine that govern Reclamation's authority, but it is seeking certification of issues that would purport to determine Reclamation's authority to release flows for salmon in the Klamath River without regard to the ESA and the senior Tribal water rights of California-based Tribes.

Resolving the competing claims to Klamath Basin water based solely on state law would offend the Tribal sovereignty of the Yurok Tribe, which has senior Tribal water rights to sustain salmon in the river.  The Yurok Tribe did not participate in the KBA because Oregon lacks jurisdiction to adjudicate downstream water rights in California.  *In re Klamath Irrigation Dist.* ("*In re KID*"), 69 F.4th 934, 943 (9th Cir. 2023), *cert. denied*, 144 S.Ct. 552 (Jan. 8, 2024) (state water rights adjudications are limited to the state's borders).  As the Federal Circuit held in *Baley v. United States*, 942 F.3d 1312, 1341 (Fed. Cir. 2019), a Fifth Amendment takings case brought by KID based on Reclamation's 2001 ESA-based limitations on irrigation deliveries, the Tribes did not waive their water rights by not participating.  Moreover, Klamath Basin water rights holders failed to prove an unconstitutional taking because: "[a]t the bare minimum, the Tribes' rights entitle them to the government's compliance with the ESA in order to avoid placing the existence of their important tribal resources in jeopardy."  *Id.* at 1337.

6

*Baley* demonstrates that KID's attempt to have this case turn solely on Oregon's water rights law infringes the Yurok Tribe's sovereign interests inherent in its Tribal water rights. In fact, the Oregon Court of Appeals reversed the state court decision that precipitated the OWRD Order on sovereign immunity grounds. The Oregon Court of Appeals determined that the state trial court's injunction directly conflicts with Reclamation's federal obligations to comply with the ESA and protect Tribal water rights: "An order to the Bureau to cease the release of stored waters from Upper Klamath Lake would impair the Bureau's obligations under the ESA and to the tribes and would be but a pyrrhic victory for plaintiff that would likely be overturned in federal court." *Klamath Irrigation Dist. v. Or. Water Res. Dep't*, 321 Or.App. 581, 592, 518 P.3d 970 (2022). The Oregon Supreme Court declined to take the case, 371 Or. 21 (Apr. 20, 2023), belying KID's surmise that "the court would be receptive to questions about the actual rights determined through the Klamath Adjudication" to constrain Reclamation's ESA compliance. Motion at 22.

Even more on point, this Court upheld the dismissal on sovereign immunity grounds of KID's federal court challenge to Reclamation's 2019 operations plan predicated on KID's view that Reclamation has no right to use water stored in Upper Klamath Lake for river flows to sustain salmon. This Court upheld dismissal of the case under Rule 19 of the Federal Rules of Civil Procedure

because the Tribes were indispensable parties whose water rights entitle them, at a minimum, to water required for Reclamation's ESA compliance, and they could not be joined due to their sovereign immunity. *KID v. Bureau of Reclamation*, 48 F.4th 934, 943–48 (9th Cir. 2022), *cert. denied*, 144 S.Ct. 342 (Oct. 30, 2023). This Court rejected KID's argument (repeated in its certification motion at 10) that the McCarran Amendment directs Reclamation to use water based solely on the KBA's administrative determinations embodied in the Amended and Corrected Findings of Fact and Order of Determination ("ACFFOD") and state water law, without regard to federal legal obligations. Instead, this Court held that the McCarran Amendment was inapplicable to the irrigators' claims because the KBA did not determine Reclamation's ESA compliance or adjudicate the senior water rights of California-based Tribes. *KID v. Bureau of Reclamation*, 48 F.4th at 947; *see also In re KID*, 69 F.4th at 941.

This Court upheld the dismissal of KID's previous challenge to Klamath Project operations because the Tribes had not waived sovereign immunity. Here, the Tribes have waived sovereign immunity for the crossclaim but subject to limitations designed to prevent this case from ruling on attributes of their water rights. And they asked the court to bifurcate the proceedings to guard against unnecessary rulings implicating their water rights, which the district court did.

KID is seizing on the presence of the Tribes in this case to seek rulings on the issues it tried to present in its state court case that led to the OWRD Order and in its federal challenge to Reclamation's operations plan. This Court should not allow KID to turn this case into a free-floating vehicle for KID to seek wholesale rulings on its pet issues that fall far outside the limited waiver of Tribal sovereign immunity and the district court's bifurcation order.

III.  THE QUESTIONS PROPOSED FOR CERTIFICATION ARE NOT DETERMINATIVE OF THE ISSUES PRESENTED ON THIS APPEAL.

KID's motion fails to meet the criteria for certification. The proposed certification questions are not determinative of the federal questions presented on this appeal and resolution of those federal questions depends on no unsettled Oregon law issues. *See* Dkt. No. 59 at 6, 19, 22–23 (OWRD brief explaining that it is not a violation of Oregon law for Reclamation to release stored water for ESA purposes).

Oregon's certification law authorizes the Oregon Supreme Court to decide questions certified by a federal court "if there are involved in any proceedings before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court and the intermediate appellate courts of this state." ORS 28.200. The pivotal case construing Oregon's certification law, *Western Helicopter Services, Inc. v.*

*Rogerson Aircraft Corp.*, 311 Or. 361, 365 (1991), makes it clear that a certified

question must be a question of Oregon law that may determine the outcome of the

pending case and that lacks controlling Oregon precedent.  KID's motion fails to

satisfy these prerequisites for certification.  Moreover, whether state law questions

must be resolved to decide the claims presented in federal court is a question for

the federal courts to decide.  *See Klamath Irrigation Dist. v. United States*, 345 Or.

638, 648–49, 202 P.3d 159 (2009) (Oregon Supreme Court refused to second-

guess federal appellate court's determination that state law questions are

potentially dispositive).

This appeal presents federal questions concerning federal preemption and

the applicability of the ESA to Reclamation's operation of the Klamath Project.

The Court will answer these questions by parsing the language of applicable

federal statutes and federal contracts.[2]

As to preemption, this proceeding began as a challenge to OWRD's Order

prohibiting Reclamation's release of water for ESA flows for salmon in the

Klamath River without an Oregon water right.  Preemption is a quintessential

---

[2] Contrary to KID's assertion, the federal contracts partially determine the
reciprocal obligations of Reclamation and the irrigation districts.  As the Oregon
Supreme Court stated in *Klamath Irrigation District v. United States*, 348 Or. 15,
50–52, 227 P.3d 1145, 1165–66 (2010), the United States and the irrigation
districts remained free to enter into agreements that clarified, redefined, or even
altered their relationship and even their water rights.

federal question. *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs. & Prods. Liab. Litig.*, 959 F.3d 1201, 1211 (9th Cir. 2020) (the purpose of Congress as evidenced by statute's text and structure is the ultimate touchstone of federal preemption). The district court held that the OWRD Order is preempted because, "[b]y preventing the Bureau from releasing the stored water, the OWRD Order stands as an obstacle to the accomplishment and execution of Congress's purpose and objective in enacting the ESA." 654 F.Supp.3d at 968. "If the Bureau complies with the Order, it cannot release downstream flows, jeopardizing the coho salmon and Southern Resident Killer Whale and violating either section 7(a)(2) or section (9) of the ESA. If the Bureau carries out its obligations under the ESA, then it violates the Order." *Id.* It is fair to say that OWRD's Order embodies KID's view that its water rights take precedence over Reclamation's ESA obligations and yet the district court held that the ESA preempts the OWRD Order as a matter of law under obstacle preemption principles.

After the district court held that the ESA preempts the OWRD Order, the Oregon Court of Appeals reversed the underlying state court injunction that precipitated the OWRD Order. OWRD then withdrew its Order, thereby rendering the preemption challenge to the order moot.[3]

---

[3] While KID challenged OWRD's withdrawal of the challenged orders in state court, it has stayed that challenge pending the outcome of this case. *Klamath Irrigation Dist. v. Or. Water Res. Dep't*, No. 21CV39570 (Marion Cnty. Cir. Ct.

This appeal has accordingly focused on the applicability of the ESA to Reclamation's operation of the federal Klamath Project, an issue presented in both the crossclaim and appellant Klamath Water Users Association's ("KWUA's") counterclaim.[4]  The district court held that the ESA applies, adhering to this Court's holding over 20 years ago that Reclamation has the authority to operate the Klamath Project to comply with the ESA and that its ESA responsibilities override the water rights of the irrigators.  654 F.Supp.3d at 965–66 (citing and quoting *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1213 (9th Cir. 1999)).

This federal question turns on whether Reclamation has "some discretion" to release water for ESA flows for threatened salmon in the Klamath River.  *See Nat. Res. Def. Council v. Jewell*, 749 F.3d 776, 779, 783 (9th Cir. 2014) (en banc) (ESA Section 7(a)(2) applies whenever an agency has "some discretion" to benefit protected species).  To determine whether Reclamation has such discretion hinges on whether the federal statutes applicable to the Klamath Project strip the agency of all discretion to benefit the listed species.  *Id.* at 785.

---

July 7, 2023).
[4] KID presented no counterclaim.  In fact, it never filed an answer to the crossclaim.

The Reclamation Act of 1902 is the governing statute. It gives Reclamation authority "to perform any and all acts and to make such rules and regulations as may be necessary and proper for the purpose of carrying out the provisions of this Act into full force and effect." 43 U.S.C. § 373. The district court construed the Reclamation Act to give the agency broad authority without mandating specific actions that preclude ESA compliance. 654 F.Supp.3d at 966–67.

While Section 8 of the Reclamation Act generally directs Reclamation to act in conformity with state water law with respect to water used in irrigation, that directive gives way when there is a preemptive federal law. *California v. United States*, 438 U.S. 645, 676 (1978) (Section 8's direction to act in conformity with state water law as to water used in irrigation applies only when the state law is not "inconsistent with congressional directive"). KID fails to acknowledge Section 8's incorporation of federal preemption principles, asserting instead that this appeal can be determined solely based on Oregon water law. Motion at 9–10. In skipping over the reach of Section 8, KID puts the cart before the horse. Under *California,* the Court must first determine whether the ESA preempts the application of Oregon water law to preclude Reclamation's release of water needed to meet its ESA obligations.

As noted above, the district court held that the ESA preempted the OWRD Order, which prohibited Reclamation's release of water for ESA flows without an

13

Oregon-based water right. KID has disagreed with this ruling throughout its merits briefing, arguing that its water rights take precedence. Its motion to certify presupposes that this Court will agree with its legal arguments, but that is a question for this Court to resolve as a matter of federal law.[5]

The legal landscape begins with *Patterson*'s holding that Reclamation must ensure that its Klamath Project operations comply with the ESA and that these obligations override the water rights of irrigators. Several recent appellate decisions confirm the holding in *Patterson* that the ESA affects how much water is available for irrigation under state law-based Oregon water rights. This Court summarized the legal landscape in *In re KID*, 69 F.4th at 939:

> Under the ACFFOD, Reclamation has the right to store water in Upper Klamath Lake, and KID has the right to use a specific amount of water for irrigation. However, KID's rights are subservient to the Tribes' rights and Reclamation's ESA responsibilities. *Patterson*, 204 F.3d at 1213 (the Tribes' senior rights "carry a priority date of time immemorial"); *Baley*, 942 F.3d at 1340 . . . Because "Reclamation cannot distribute water that it does not have[,]" water may not be

---

[5] KID concedes that ESA Section 9 applies to Klamath Project irrigation and imposes limits on the exercise of state law-based water rights. Motion at 11–15 n.3. KID, therefore, acknowledges the ESA's preemptive effect on Oregon water rights. Section 9's take prohibition applies both to the irrigators and to Reclamation's operation of the Klamath Project. Indeed, the 2019 biological opinion includes an incidental take statement authorizing the incidental take of listed salmon by both Reclamation and the irrigators, provided Reclamation meets the biological opinion's river flow requirements. SER 234–45, 248–49; *see Ramsey v. Kantor*, 96 F.3d 434, 440–42 (9th Cir. 1996). This intersection between Section 7 biological opinions and Section 9 take liability undermines KID's assertion that Oregon water law alone can determine the outcome of this appeal.

available to KID, "for example, due to drought, a need to forego diversions to satisfy prior existing rights, or compliance with other federal laws such as the Endangered Species Act." *KID II*, 48 F.4th at 940 (citation omitted).

KWUA argues that Reclamation's authority is constrained by the terms of the federal contracts between Reclamation and the irrigation districts. In their answering briefs, the Yurok Tribe and Reclamation explained that the contracts obligate irrigation districts to follow Reclamation's directives and limit irrigation deliveries to the amount of water that is available after Reclamation meets its ESA obligations. Dkt. No. 62 at 39–44; Dkt. No. 60 at 11–12, 50–53. When water is available for irrigation, Reclamation can apportion deliveries to give priority to contracts that have seniority. *Id.*; *see United States v. Klamath Drainage Dist.*, No. 1:22-cv-00962-CL, 2023 WL 5899910 (D. Or. Sept. 11, 2023), *appeal filed*, No. 23-3404 (9th Cir. Nov. 9, 2023) (irrigation district breached contract by acting contrary to Reclamation's direction not to divert water when ESA compliance made water available only to more senior contract holders). It is federal law and the contracts, not the KBA, that set the controlling terms for the relationship between Reclamation and the irrigation districts and Reclamation's obligations to deliver water for irrigation. *Id.*; *see* 7-KWUA_ER-1636–37 (ACFFOD states that it did not determine relative rights of irrigators and Reclamation regarding diversions of water as part of Klamath Project operations).

For these reasons, none of the proposed certified questions is determinative of federal preemption or the threshold applicability of the ESA.  The meaning of Section 8, federal preemption, and the interpretation of federal contracts are all federal questions that must be decided before any Oregon water rights principles come into play.  Accordingly, KID's motion seeks certification of hypothetical questions on peripheral issues that far exceed the scope of this appeal.  This is evident in a review of each proposed certification question.

The first proposed question will not be determinative for the reasons already discussed.  At its core, this question is based on the faulty premise that the district court granted Reclamation an Oregon water right for its ESA compliance and the KBA and state water law accordingly controls the outcome of this appeal.  As the district court stated emphatically: "No matter how KID attempts to cast the crossclaim, it does not seek an adjudication or quantification of water rights. Instead, it raises constitutional questions about the OWRD Order."  654 F.Supp.3d at 961.  It is the province of this Court to decide the federal questions presented in this appeal based on federal law, which, in turn, will dictate the relevance of the state water rights adjudicated in the KBA.

The second proposed question mirrors the first and is not determinative for the same reasons.  It also mischaracterizes what Reclamation is doing when it releases ESA-mandated flows.  Reclamation is not exercising state water rights but

16

is instead complying with its ESA obligations which limit the exercise of those state-law rights.

The third proposed question strays far from the justiciable controversy before the Court. It seeks a ruling on the effect on adjudicated water rights of irrigation contracts entered into under the 1911 Warren Act, 43 U.S.C. §§ 523–25. The Warren Act authorizes Reclamation to enter into contracts for excess water. Such contracts are subordinate to more senior contracts with the principal Klamath Project beneficiaries, like KID's contract. Dkt. No. 62 at 53 (contract terms make Warren Act contracts subordinate); see *Baley v. United States*, 134 Fed. Cl. 619, 630–31 (Ct. Cl. 2017), *aff'd*, 942 F.3d (Fed. Cir. 2019); *Klamath Drainage Dist.*, 2023 WL 5899910, *3, 15. KID lacks standing to assert the rights of beneficiaries of the Warren Act contracts, and its motion fails to show how this question is relevant to the issues in this appeal.

KID's fourth proposed question strays even further by seeking a ruling on whether Reclamation's potential diversions might be considered a Fifth Amendment taking of the state law-based water rights of KID and other unnamed entities. This question plainly seeks a ruling that will affect senior Tribal water rights, which far exceeds the limited waiver of sovereign immunity. Even if KID did not face this sovereign immunity barrier, this Court would need to decide weighty issues before entertaining its takings claim. First, the Court would need to

decide whether it has jurisdiction over such a claim. It does not because KID's opening brief seeks compensation for an alleged taking, Dkt. No. 22-1 at 81, and the Tucker Act gives the Court of Federal Claims exclusive jurisdiction over such claims in excess of $10,000. 28 U.S.C. § 1491. Second, KID's judicial takings claim relies on statements in a Supreme Court plurality opinion that lacks precedential value and have not been adopted in subsequent appellate or Supreme Court decisions. *See Stop the Beach Renourishment, Inc. v. Fla. Dep't of Env't Prot.*, 560 U.S. 702, 715 (2010) (plurality). This Court would need to decide whether to plough new ground and become the first appellate court to adopt the judicial takings theory. Third, in *Baley*, the Federal Circuit rejected the takings claim made by Klamath water rights holders (and originally by KID) because: "[a]t the bare minimum, the Tribes' rights entitle them to the government's compliance with the ESA in order to avoid placing the existence of their important tribal resources in jeopardy." 942 F.3d at 1337. This Court recently agreed with this holding. *KID v. Bureau of Reclamation*, 48 F.4th at 943–44. This Court would need to reach the opposite conclusion on this issue of federal law in order to entertain KID's judicial takings claim. KID's proposed takings question, like the others, is not determinative of the issues presented in this appeal.

**CONCLUSION**

For the above reasons, the Court should deny KID's motion to certify

questions to the Oregon Supreme Court.


Dated: November 18, 2024.

<div style="margin-left:40%">

*s/ Patti Goldman* _____

PATTI A. GOLDMAN (WSBA # 24426)
KRISTEN L. BOYLES (CSBA # 158450)
Earthjustice
810 Third Avenue, Suite 610
Seattle, WA 98104
Ph: (206) 343-7340
pgoldman@earthjustice.org
kboyles@earthjustice.org

*Attorneys for Appellees Yurok Tribe, Pacific
Coast Federation of Fishermen's
Associations, and Institute for Fisheries
Resources*

AMY CORDALIS (CSBA # 321257)
562 A St.
Ashland, OR 97520
Ph: (541) 915-3033
acordalis@ridgestoriffles.org

*Attorney for Yurok Tribe*

</div>

# CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains **4,466** words, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f).

2. This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Time New Roman font.

*s/ Patti Goldman*
Patti A. Goldman

*Attorney for Appellees Yurok Tribe, Pacific Coast Federation of Fishermen's Associations, and Institute for Fisheries Resources*