UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

———————————

YUROK TRIBE, ET AL.,
*Plaintiffs – Appellees*,

v.

UNITED STATES OF AMERICA, ET AL.,
*Defendants - Cross-Claimants - Appellees*,

v.

KLAMATH WATER USERS ASSOCIATION,
*Intervenor – Defendant - Counter-Claimant - Appellant*,

KLAMATH IRRIGATION DISTRICT,
*Intervenor - Defendant - Appellant*,

———————————

Appeal from the United States District Court for the Northern District of California
No. 3:19-cv-4405-WHO (Hon. William H. Orrick)

———————————

**FEDERAL APPELLEES' RESPONSE OPPOSING
APPELLANT KID'S MOTION TO CERTIFY
QUESTIONS TO THE OREGON SUPREME COURT**

———————————

Of counsel:

LANCE C. WENGER
Solicitor's Office
U.S. Department of the Interior

MEGAN J. WALLINE
Office of General Counsel
National Oceanic and
  Atmospheric Administration

TODD KIM
*Assistant Attorney General*

THOMAS K. SNODGRASS
ROBERT P. WILLIAMS
KEVIN MCARDLE
JOHN L. SMELTZER
Environment & Natural Resources Division
U.S. Department of Justice
Post Office Box 7415
Washington, DC 20044
(202) 305-0343
john.smeltzer@usdoj.gov

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... ii

INTRODUCTION ................................................................................1

ARGUMENT ......................................................................................1

I.    This Court should summarily deny KID's motion as untimely. .....................1

II.    KID provides no basis for certifying any question in this case to the Oregon Supreme Court. .................................................................2

      A.    KID's first proposed certified question erroneously presumes that the nonuse of a storage right constitutes water "use." ...............................................................................2

      B.    KID's second proposed certified question misconstrues the source of Reclamation's /discretion. ..............................................10

      C.    KID'S third proposed certified question improperly raises questions not previously raised on appeal. ..............................16

      D.    KID's fourth proposed certified question concerns legal claims not in this case....................................................................20

CONCLUSION ..................................................................................22

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## Cases

*Arpin v. Santa Clara Valley Transp. Agency,*
  261 F.3d 912 (9th Cir. 2001) ............................................................2, 17

*Baley v. United States*, 134 Fed. Cl. 619 (Fed. Cl. 2017)...........................16, 18, 19

*Baley v. United States*, 942 F.3d 1312 (Fed. Cir. 2019) .....................................7, 18

*Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988) ................................................13

*Klamath Irrigation District v. United States,*
  227 P.3d 1145 (Or. 2010) ................................................................ 11-15

*Klamath Water Users Protective Association v. Patterson,*
  204 F.3d 1206 (9th Cir. 1999) ................................................................7, 13, 17

*Montana v. Wyoming*, 563 U.S. 368 (2011) ........................................................21

*National Association of Home Builders v. Defenders of*
  *Wildlife*, 551 U.S. 644 (2007)................................................................17

*O'Neill v. United States*, 50 F.3d 677 (9th Cir. 1995)............................................17

*Ramsey v. Kantor*, 96 F.3d 434 (9th Cir. 1996)......................................................9

*Ruckelshaus v. Monsanto Co.*, 467 U.S. 986 (1984) ................................................21

*San Luis & Delta-Mendota Water Authority v. Jewell,*
  747 F.3d 581 (9th Cir. 2014) ................................................................17

*Sherred v. City of Baker*, 63 Or. 28, 125 P. 826 (Or. 1912) ...................................20

*Stop the Beach Renourishment, Inc. v. Florida Dept. of*
  *Environmental Protection*, 560 U.S. 702 (2010)................................................21

*Sturgeon v. Frost*, 587 U.S. 28 (2019)................................................................20

**Cases (cont.)**

*United States Postal Service v. Ester*,
  836 F.3d 1189 (9th Cir. 2016) ..........................................................13, 14


**Federal Statutes**

Endangered Species Act

  16 U.S.C. § 1536(a)(2)............................................................6, 8

  16 U.S.C. § 1536(b)(4)(B) ......................................................6, 8

  16 U.S.C. § 1536(o)(2) .........................................................6, 8, 9

  16 U.S.C. § 1538................................................................6, 8

28 U.S.C. § 1346................................................................21

28 U.S.C. § 1491................................................................21

Reclamation Statutes

  43 U.S.C. § 383 ..............................................................4, 11, 12

  43 U.S.C. § 423d..............................................................13

  43 U.S.C. § 423e..............................................................13


**Federal Regulations**

50 C.F.R. § 402.01 ..............................................................6


**State Statutes**

Or. Rev. Stat. § 537.110..........................................................20

Or. Rev. Stat. § 537.332..........................................................7

Or. Rev. Stat. § 537.348..........................................................7

Or. Rev. Stat. § 540.610..........................................................8

**INTRODUCTION**

More than four months after oral argument (on June 12, 2024) and more than seven months after the completion of briefing (on March 7, 2024), Appellant Klamath Irrigation District ("KID") moves this Court to certify questions of state law—which KID claims to be at issue on appeal—to the Oregon Supreme Court. KID had ample opportunity to seek certification of state law questions earlier in the case. Counsel for KID did not raise certification with this Court until oral argument, and then did so only belatedly, as the final comment of his rebuttal argument.[1] The present written motion is not timely, raises new issues and arguments not previously briefed on appeal, and lacks merit. As the Federal Appellees previously explained, there are no significant state-law issues properly before the Court. The new issues and briefing in KID's motion should be disregarded. And KID's motion should be denied.

**ARGUMENT**

**I. This Court should summarily deny KID's motion as untimely.**

KID had ample opportunity, during the briefing of this case, to move to certify questions to the Oregon Supreme Court. Arguments not "specifically and distinctly" raised in an appellant's opening brief are ordinarily forfeited. *See*

---

[1] See https://www.ca9.uscourts.gov/media/video/?20240612/23-15499/ (video recording) at 44:01.

1

*Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).

Here, KID failed to raise a certification request *either* in its opening brief or in its reply brief. And while KID belatedly suggested the possibility of certification in response to a question at oral argument, KID failed to follow up with a timely motion and provides no excuse for not doing so. On this record, KID's motion should be summarily denied.

## II.     KID provides no basis for certifying any question in this case to the Oregon Supreme Court.

In any event, KID's motion lacks merit. KID moves to certify four questions "or others like them" to the Oregon Supreme Court relating to water rights provisionally determined in the Klamath Basin Adjudication ("KBA"). Motion at 7. But none of the proffered questions raises a genuine issue of state law or is a genuine issue in this case.

### A.     KID's first proposed certified question erroneously presumes that the nonuse of a storage right constitutes water "use."

KID's first proposed question asks:

Under Oregon law, does the storage right determined for Reclamation in the [KBA] authorize[s] it to *divert* stored water from [Upper Klamath Lake] *for instream use* in the Klamath River when:
(1) Reclamation's storage right does not authorize it to store water for instream purposes, and (2) the secondary irrigation water rights of KID and others within the Klamath Project are in season?

Motion at 7 (emphasis added).  This is the only question that KID suggested for certification at oral argument.[2]

KID contends (Motion at 8-13) that this question is relevant to the district court's preemption ruling and to KID's appeal of that ruling.  But KID's focus on preemption is misguided.  In granting summary judgment on the United States' crossclaim for declaratory relief in relation to the ESA, the district court held: (1) that Reclamation "must comply" with Sections 7 and 9 of the Endangered Species Act ("ESA") "in operating the Klamath Project," including by releasing water from UKL as necessary to offset adverse effects of Project operations, 1-KID-ER_25-30; (2) that it would be "physically impossible" for Reclamation to comply with these obligations and the April 6, 2021 Order issued by the Oregon Water Resources Department ("OWRD"), which prohibited releases of stored water for non-Project purposes, 1-KID-ER_30; and, therefore, (3) that OWRD's order was preempted. 1-KID-ER_30-32.

But the district court did not hold that the ESA conflicted with any provision of Oregon water law.  *Id.*; *see also* Answer Brief for the Federal Appellees ("Fed.

---

[2] At argument, Counsel proposed the following question for certification: "Whether under Oregon law, Reclamation can divert stored water from Upper Klamath Lake . . . for instream use in the Klamath River without a water right." *See* https://www.ca9.uscourts.gov/media/video/?20240612/23-15499/ (video recording) at 44:01.

Br.") (Jan. 16, 2024) (Dkt Entry 60) at 59. And OWRD has since withdrawn the April 2021 order. *See* 1-KWUA-ER_5 (n.3). Accordingly, the preemption ruling is no longer directly at issue. The declaratory relief that remains squarely before the Court is the district court's determination that Project operations must comply with ESA Section 7.

Regardless, KID's preemption argument and motion to certify the above question to the Oregon Supreme Court are meritless. KID contends that there is no "direct conflict" between the ESA's prescriptions and OWRD's order: (1) because Reclamation may not "meet its ESA obligations by using water in a manner prohibited by Oregon law," and (2) because Reclamation can comply with the ESA "by other means." Motion at 8-10, 13.

This reasoning is fundamentally flawed. As to the first point, KID relies on Section 8 of the Reclamation Act, *see* Motion at 9, which directs Reclamation to comply with state water law with respect to the "control, appropriation, use, [and] distribution of water used in irrigation." *See* 43 U.S.C. § 383. Under the provisional decree of water rights in the KBA—known as the "ACFFOD" ("Amended and Corrected Findings of Fact and Order of Determination")— Klamath Project water rights are bifurcated. Reclamation owns the right to store water for Project irrigation, while the Project irrigators own the right to put Project water to beneficial use. *See* 9-KID-ER_1884-1894. Under Oregon law, once

water is "legally stored" (i.e., stored under the Project storage right), it may only be used for the beneficial uses ("secondary" usage rights) associated with the storage rights. *See* Motion at 11-12. From these points, KID concludes that, once Reclamation has stored water in UKL, Reclamation may not "divert" the water for "instream uses" in the Klamath River, because "instream use" is not an adjudicated "secondary usage" of the stored water. *Id.*; *see also* Fed. Br. at 41-42 (explaining argument). KID argues that if the Oregon Supreme Court confirms this view of Oregon law, the district court's preemption holding must be reversed, and Reclamation would need to "satisfy the ESA by other means," i.e., by "acquir[ing] the necessary rights in UKL." Motion at 13.

But as we have already explained, this argument proceeds from a false premise. *See* Fed. Br. at 42. Contrary to KID's repeated assertions (Motion at 7, 8, 11, 12), releasing stored water to comply with the ESA does not constitute a "diversion" of stored water for "instream use." Rather, when making such releases, Reclamation is limiting the exercise of the state-law storage right to meet its obligations under federal law. *See* Fed. Br. at 29-30, 41-44.

To elaborate, the exercise of Klamath Project water rights—storing water in Upper Klamath Lake ("UKL") and diverting stored water for irrigation—are actions that affect endangered and threatened species, including endangered suckers in UKL and threatened salmon species that spawn and rear in the Klamath

River downstream from the Project.  *See* Fed. Br. at 17-21.  When exercising its right to store Project water for irrigation, Reclamation must avoid the unlawful taking of listed suckers or salmon, 16 U.S.C. § 1538, and must ensure that its Project operations will not destroy or adversely modify critical habitat or jeopardize the continued existence of the listed species, *id*. § 1536(a)(2).  Reclamation meets these obligations, in part, through consultation with the National Marine Fisheries Service and the Fish and Wildlife Service.  16 U.S.C. § 1536(a)(2); 50 C.F.R. § 402.01(b); Fed. Br. at 14.  The operating plans and prescriptions that emerge from such consultation—including planned releases of stored water—ensure that Project water rights are exercised in accordance with ESA Section 7, and that incidental take caused by Project operations does not violate ESA Section 9.  *See* 16 U.S.C. §§ 1536(a)(2), (b)(4)(B), (o)(2), 1538(a)(1)(B).  Thus, when conducting such releases, Reclamation is complying with federal regulatory restrictions on the exercise of Project storage rights; Reclamation is not diverting water to instream uses.

Moreover, KID identifies nothing in Oregon law that requires Reclamation or any private reservoir owner to possess instream water rights as a condition precedent for not fully exercising a storage right, including by releasing stored water back to the natural river channel.  As OWRD has explained, "the release of stored water by Reclamation with the express intent to not deliver it to project

6

irrigators does not convert its storage right to an unlawful instream use." *See*
Appellee's Brief of Oregon Water Resources Department (Jan. 16, 2024) (Dkt
Entry 59) at 23.  Here, KID simply contends that Reclamation could "acquire the
necessary water rights in UKL," by which KID presumably means that
Reclamation could obtain a state-law water right to "divert[]" stored water to
"instream use."  *See* Motion at 13.  This is not the case and beside the point.

As we previously explained, Oregon law provides for instream water rights
only in special circumstances.  Fed. Br. at 42-43.  State agencies may initiate
processes to establish instream water rights to be held in trust by OWRD for the
"people of . . . Oregon."  *See* Or. Rev. Stat. §§ 537.332(2), (3), 537.336.  And
persons holding water rights may voluntarily relinquish and transfer such rights to
OWRD to be held in trust for instream use.  *Id.* §§ 537.332(3), 537.348.  But there
is no state-law mechanism for Reclamation or any private party to add a new
secondary "instream use" to an existing storage right.[3]  *Id.*  Nor is there anything in
Oregon law that would compel the holder of a water right to *relinquish* that right

---

[3] Reclamation also releases water from UKL to ensure that the Project is operated
consistently with the senior instream federal reserved water rights of the Yurok and
Hoopa Valley Tribes. *See Klamath Water Users Protective Association v.
Patterson,* 204 F.3d 1206, 1213-14 (9th Cir. 1999); *Baley v. United States*, 942
F.3d 1312, 1335-41 (Fed. Cir. 2019).  But this is a separate rationale not at issue in
phase one of this litigation.  *See* Fed. Br. at 25-26, 43 n.4.

(in whole or part) as a condition precedent to not fully exercising it, including when necessary to comply with the ESA.[4]

Indeed, KID concedes that Project water users themselves may not lawfully "exercise their water rights in a manner that causes unpermitted take of listed species in violation of [Section] 9 of the ESA" and thus must curtail the exercise of their rights to avoid Section 9 liability. *See* Motion at 14 n.3. As we previously explained, if KID owned and operated the entire Klamath Project as a private venture without any federal agency involvement, ESA Section 7 would not apply, but KID would face liability under Section 9 for any takings caused by its storage and diversion of water for irrigation, unless such takings were authorized under an incidental take permit issued under ESA Section 10. *See* Fed. Br. at 57-58. To avoid such liability and/or to comply with the terms of an incidental take permit, KID could release stored water without violating Oregon law. *Id.*; *see also* 16 U.S.C. §§ 1536(a)(2), (b)(4)(B), (o)(2), 1538(a)(1)(B). This is so because the release of stored water is simply a nonuse of the storage right for the specified secondary use, and because no law *mandates* the use of water rights. This principle is no less applicable where, as here, Reclamation (not KID or other

_____

[4] Under Oregon law, the nonuse of water for a period of five years can lead to the forfeiture of water rights. Or. Rev. Stat. § 540.610(1). But if water is unavailable or if water use is prohibited by law, the nonuse is excused, and no forfeiture will occur. *Id.* §§ 540.610(2)(j)-(k), 540.610(3).

Project irrigators) is responsible for Project water storage and supply and thus has the obligation to ensure that Project operations comply with the ESA.[5]

To be sure, KID also argues that Project water users have the right to control stored water and that Reclamation lacks "authority or discretion" over the exercise of the storage right. *See* Motion at 8 (second proposed certified question). But this is a different question, which we address in the next section of this response. As for KID's first proposed certified question, Reclamation claims no state-law right to "divert" stored water for "instream use." Instead, Reclamation claims that it has authority over the exercise of the state-law storage right for purposes of supplying water for irrigation, and thus has a duty to ensure that such agency action complies with the ESA. For this reason, KID's primary proposed certified question is not an issue before the Court.

---

[5] When Reclamation operates the Klamath Project in accordance with the terms and conditions of incidental take statements developed through Section 7 consultation, any incidental takings are exempt from takings liability, 16 U.S.C. § 1536(o)(2), including incidental takings resulting from the actions of Project irrigators, where such actions are "contemplated by [the] incidental take statement[s]" and "conducted in compliance with [their] requirements." *Ramsey v. Kantor*, 96 F.3d 434, 440-42 (9th Cir. 1996).

## B. KID's second proposed certified question misconstrues the source of Reclamation's discretion.

KID's proposed second certified question asks:

> When ownership of storage and usage rights to stored water are separately held, does the owner of the storage right have authority or discretion to decide how the usage rights will be exercised?

In asking this question, KID evidently is not referring to the *use* of stored water after it is delivered to Project irrigators. Reclamation does not assert authority over Project water use on private lands. Rather, Reclamation asserts authority over Project storage and supply, i.e. authority to impound water in UKL, to retain stored water for irrigation use, and to release stored water prior to beneficial use as necessary to ensure that Project storage and diversion for irrigation does not violate the substantive requirements of ESA Sections 7 and 9. *See* Fed. Br. at 10-13, 30, 32-33.

Accordingly, KID's second proposed certified question seems to be directed (again) at Reclamation's authority to release stored water. As just noted, KID concedes that Project irrigators may decline to exercise Project water rights to avoid unpermitted takings under ESA Section 9. Motion at 14 n.3. But KID insists that Reclamation may not make that choice for them. *Id.* In so arguing, KID appears to contend that Oregon law gives Project irrigators exclusive control over stored water, and that Reclamation lacks sufficient "authority or discretion"

over water storage and supply to trigger any federal duty to ensure that Project operations comply with ESA Sections 7 and 9. *See* Fed. Br. at 41-45.

But this argument—like KID's argument with respect to the first proposed certified question—fails at the outset. KID provides no support for the proposition that Oregon law establishes Reclamation's *obligations* to store and supply water for irrigation, as distinguished from Reclamation's *rights* to do so. To be sure, because Project water rights were appropriated under Oregon law, state law defines the extent to which Reclamation may store and supply water for irrigation, as well as the extent of irrigation use. *See* 43 U.S.C. § 383. But as already explained, Oregon law does not mandate the use of water rights.

Nor does state law dictate Reclamation's obligations to Project water users. In the present case, Reclamation and Project irrigators jointly acquired the Project water rights by engaging in coordinated actions (diverting and storing water for beneficial use) necessary to perfect such rights under Oregon law. *See Klamath Irr. Dist. v. United States*, 227 P.3d 1145, 1160-65 (Or. 2010). Because Reclamation (for the most part) did not beneficially use the water, but instead delivered water to Project irrigators for beneficial use on private land, the ACFFOD determined that the landowners hold a legal interest in the use of the

water that Reclamation has a right to store and supply.  *See* 9-KID-ER_1884-1891.[6]

But as the Oregon Supreme Court has already explained—in a case involving certified questions from the Federal Circuit with respect to the Klamath Project—state law does not dictate the terms of the relationship between a water supplier and water users.  *See Klamath Irr. Dist.*, 227 P.3d at 1160-65.  Rather, when there is a joint appropriation of water in Oregon, i.e., when the owner of the storage and diversion works and the beneficial users are different, the parties are "free within statutory and constitutional limits to enter into agreements that clarify[y], redefine[], or . . . alter[]" their relationship, including their respective interests in the water rights acquired jointly by them.  *Id.* at 1165.

In the present case, Reclamation entered water supply and repayment contracts with all Project water users.  *See* Fed. Br. at 10-13.  As KID observes, Motion at 14, these contracts could not and did not "grant" Reclamation "authority to use stored water . . . in violation of Oregon law."  *See* 43 U.S.C. § 383.  But Reclamation claims no authority, contractual or otherwise, to "use" stored water in

---

[6] The United States filed an exception to this administrative determination, which remains pending before the Klamath County Circuit Court in the judicial-review phase of the KBA.  *See* Fed. Br. at 9-10.  The dispute over the nature of the irrigators' water rights (legal or equitable) is not relevant to the present appeal.  *See* pp. 14-15, *infra*.

violation of Oregon law.  Rather, pursuant to the Reclamation Act, 43 U.S.C. §§ 423d-423e, and consistent with Oregon water law, *Klamath Irr. Dist.*, 227 P.3d at 1165, Reclamation entered contracts with Project irrigators to govern the parties' relative rights and responsibilities with respect to the Project water rights that they jointly appropriated and must exercise together.  *See* Fed. Br. at 63.

As relevant here, under the Project contracts, Reclamation reserved authority to operate Link River Dam and to use UKL as a storage reservoir for Project irrigation, and Reclamation committed to storing and supplying water for irrigation subject to water availability (physical and legal).  *See* Fed. Br. at 10-13, 32-34, 49-53.  Given its contractual authority over Project water storage and supply—as well as its declared ownership of the Project storage right—Reclamation is responsible for ensuring that Project water rights are exercised in compliance with the ESA. *Id.*; *see also Klamath Water Users Protective Association v. Patterson*, 204 F.3d 1206, 1213 (9th Cir. 1999).

More to the point for purposes of KID's motion, any dispute over Reclamation's authority and discretion under the Project contracts is exclusively a question of federal law.  *United States Postal Service v. Ester*, 836 F.3d 1189, 1195 (9th Cir. 2016) (citing *Boyle v. United Techs. Corp.*, 487 U.S. 500, 504 (1988)). There is no basis for this Court to ask the Oregon Supreme Court to opine on the relative rights and duties that arise "when [the] ownership of storage and usage

rights to stored water are separately held." *See* Motion at 8. As the Oregon Supreme Court's prior decision demonstrates, the answer depends on the agreements between the parties. *Klamath Irr. Dist.*, 227 P.3d at 1165. And the contracts at issue here are Reclamation Act contracts governed by federal law. *Ester*, 836 F.3d at 1195.

There is no merit to KID's suggestion (Motion at 21-23) that changed circumstances provide cause for revisiting the Oregon Supreme Court's 2010 ruling on Klamath Project water rights. The 2010 decision arose from a case in the Court of Federal Claims ("CFC") in which Project irrigators alleged that Reclamation's curtailment of Project water supply in 2001, pursuant to operating plans developed through ESA Section 7 consultation, constituted an uncompensated taking of the irrigators' water rights in violation of the Fifth Amendment. *See Klamath Irr. Dist.*, 227 P.3d at 1148. To avoid a potential stay of their takings suit pending a final resolution of Project water rights in the KBA, the Project irrigators stipulated that their water rights (allegedly taken by the United States) were "beneficial" interests in the United States water rights and thus not subject to determination in the KBA. *Id.* As KID observes (Motion at 21), the ACFFOD has since determined that Project irrigators hold a "legal interest" in the Project water right as opposed to a "beneficial" interest. *See* 9-KID-ER_1891.

Nonetheless, the Project irrigators' "legal interests" remain dependent on Reclamation's storage rights. The Project irrigators' rights cannot be exercised without the federal storage and diversion facilities and without Reclamation's storage and supply of Project water. These circumstances call out for an agreement between Reclamation and Project irrigators over the terms of their relationship (i.e., the Project contracts). The Oregon Supreme Court's observation about the parties' freedom of contract applies to property rights generally, not simply to "beneficial" interests. *See Klamath Irr. Dist.*, 227 P.3d at 1165.

At bottom, the ACFFOD's declaration of the storage and usage rights held by Reclamation and Project irrigators (water rights jointly exercised against other appropriators) does not resolve the parties' duties to each other. *See* 9-KID-ER_1884-1895. Indeed, the ACFFOD declares that the "determination of the relative rights" of Project water users and of the United States to "control or operate diversion and distribution works, including headgates, pumps, canals, and other structures, is *not within the scope of the Adjudication*." See 9-KID-ER_1894-95 (emphasis added). This is so precisely because the relative rights, duties, and authorities of the parties with respect to the joint exercise of Project water rights are set out by the Project contracts and not Oregon water law. *See* Fed. Br. at 10-13, 49-53, 56-59. There is no basis for certifying these issues to the Oregon Supreme Court.

## C. KID'S third proposed certified question improperly raises questions not previously raised on appeal.

KID's proposed third certified question asks:

Under Oregon law, are water rights adjudicated to landowners located within Warren Act districts subject to the terms of contracts between their districts and Reclamation when the landowners are not party to those contracts?

KID seeks certification of this question in a further effort to show that Reclamation's water supply duties are not "subject to or limited by" the Project contracts. *See* Motion at 15. Specifically, KID relies on the CFC's 2019 judgment in the Project irrigators' takings case (*supra*) for the proposition that the water rights of KID's members are not subject to the 1954 contract that KID made with Reclamation. Motion at 15 (citing *Baley v. United States*, 134 Fed. Cl. 619, 655 (2017)). And KID argues that the same rule should govern Warren Act contracts, even though the CFC held otherwise. Motion at 16-18 (citing *Baley*, 134 Fed. Cl. at 652).

For context, most Project contracts, including KID's contract and the Tule Lake Irrigation District's contract, contain shortage clauses that limit Reclamation's water supply duties to water that is physically and legally available. *See* Fed. Br. at 11-12; 43-53. In addition, all Warren Act contracts are secondary contracts that provide water only if there is excess supply beyond the water needed for KID and TID. *Id.* at 12-13. Because the Reclamation Act imposes no specific

mandate on Reclamation that conflicts with the ESA, *see San Luis & Delta-Mendota Water Authority v. Jewell*, 747 F.3d 581, 640 (9th Cir. 2014) (construing *National Association of Home Builders v. Defenders of Wildlife*, 551 U.S. 644 (2007)), and because Reclamation's water supply duties under the Project contracts are subject to water availability, Reclamation's operation of the Project is "discretionary" for purposes of ESA compliance, *see* Fed. Br. at 49-53; *see also Patterson*, 204 F.3d at 1213; *O'Neill v. United States*, 50 F.3d 677, 682-84 (9th Cir. 1995). To avoid the implication of the shortage clauses, KID now argues that the Project irrigators' water rights are not subject to the Project contracts.

But these are new arguments that KID did not previously make in its briefs to this Court or below. KID does not explain why it could not have raised these arguments earlier. Nor does KID seek leave of this Court to raise new issues now. Even if KID's motion for certification is not too late as to issues that KID timely raised during briefing, KID cannot properly use its certification request to introduce new substantive arguments that have been forfeited. *See Arpin*, 261 F.3d at 919.

In any event, KID's reliance on the CFC's 2019 decision in *Baley* is misplaced. In *Baley*, the United States argued, among other things, that curtailing Project water supply to ensure ESA compliance cannot constitute a taking of water rights because the Project contracts, in accordance with the shortage clauses, are

contingent on water availability. *See id.* at 652-59. The CFC accepted this defense as to Project irrigators within some of the Warren Act districts, but not as to Project irrigators within KID and TID. *Id.* The CFC then proceeded to reject all the Project irrigators takings claims for unrelated reasons, i.e., on the grounds that the water withheld from Project irrigators was lawfully withheld to satisfy the senior water rights of Klamath Basin tribes. *Id.* at 668-80. The Federal Circuit affirmed on this latter ground, without reaching the United States' contract-related defenses (which the United States again raised on appeal as to all claims). *See Baley v. United States,* 942 F.3d 1312, 1331-1341 (Fed. Cir. 2019). This means that the CFC's unreviewed contract interpretations in *Baley* are dicta and without any binding effect.

In addition*,* the CFC's rationale in *Baley* does not translate to the present case. Citing various reasons, including the fact that individual landowners are not signatories to the KID and TID contracts, the CFC reasoned that those contracts do not "run with the land" and therefore do not define the water rights appurtenant to district lands. *See* 134 Fed. Cl. at 653-56. In contrast, although the Warren Act contracts also are not signed by the relevant district landowners, the CFC determined that these contracts do "run with the land" and do define the scope of water rights in those districts. *Id.* at 657. Even if this reasoning holds as a matter of property law for purposes of takings analysis (matters we do not concede), it

does not follow that the KID and TID contracts do not govern Project operations, or that Project operations are not subject to the ESA. These are different questions.

Finally, none of the issues KID raises in relation to its proposed third certified question are genuine issues of Oregon law. KID contends that "significant state law questions" arise because the rights of Project irrigators within Warren Act districts, as determined in the ACFFOD, "exceed the quantities of water that Reclamation contractually agreed to supply." Motion at 17. But this assertion merely reflects a further misunderstanding of the Project water rights and Reclamation's contractual obligations.

The ACFFOD specifies the maximum amounts of water that may be stored and diverted for the Klamath Project under state water law (subject to physical and legal availability), not the amount of Project water that may be diverted for each district. *See* Fed. Br. at 9; 9-KID-ER_1869-72, 1892-93. Under the Project contracts, Reclamation must distribute available water among the districts based on contractual priority and equitable proration. *See* Fed. Br. at 10-13, 49-53. There is no conflict between the declared water rights and the contractual obligations.

Nor does KID identify any associated issues of state law. Indeed, although KID references state law in its third proposed certified question, the issue specified in that question is one that the CFC decided against Project irrigators as a matter of *federal* contract interpretation. *See Baley*, 134 Fed. Cl. at 657 (Warren Act

contracts "make clear that their terms run with the land").  KID's request to certify this issue to the Oregon Supreme Court amounts to a request to have the State court review (and reverse) the CFC on a matter of *federal* law.  This is plainly inappropriate.  And it is plainly too late for KID to raise new arguments about the Project contracts that it did not make in its briefs.

### D. KID's fourth proposed certified question concerns legal claims not in this case.

KID's fourth proposed certified question asks:

> Does Reclamation's diversion of legally stored water from UKL, while secondary rights owned by KID, its landowners, and other non-federal parties are in season, deprive these water rights owners of property interests?

As a threshold matter, this question erroneously presumes that Project irrigators own the water physically stored in UKL as opposed to the right to use stored water supplied by Reclamation.  Water rights are usufructuary.  *See Sturgeon v. Frost*, 587 U.S. 28, 43-44 (2019).  They provide a right to store and use water, not ownership of "the water itself."  *Sherred v. City of Baker*, 63 Or. 28, 39, 125 P. 826, 830 (Or. 1912); Or. Rev. Stat. § 537.110.  Until it is diverted for beneficial use, any water impounded and held in UKL for Project irrigation is being stored under the Project storage right.  It is undisputed that Reclamation, not the Project irrigators, holds the storage right.  *See* 9-KID-ER_1891-94.  When Reclamation releases stored water to ensure that Project operations comply with ESA Sections 7

and 9, Reclamation is not taking water physically owned by Project irrigators.  It is limiting the use of the Project storage right to comply with federal law.

Regardless, in asking this Court to certify the above question, KID would have the Oregon Supreme Court determine a Fifth Amendment takings claim that KID *did not plead in this case.*[7]  Indeed, KID did not plead any claims in this case. KID appeared only as an intervenor defendant on the United States' cross complaint.  *See* Fed. Br. at 26; 1-KID-ER_54.  It is true that KID raised the prospect of "judicial taking" in its opening brief.  *See* KID Opening Brief at 45. But the proposed certified question above does not relate to an alleged *judicial* taking.[8]  It asks whether *Reclamation* takes private property when releasing stored

---

[7] KID's exclusive remedy for an alleged taking caused by the application of the ESA is a suit for just compensation under the Tucker Act or Little Tucker Act.  *See Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1017 (1984).  The CFC has exclusive jurisdiction over any claim for just compensation exceeding $10,000 in amount. 28 U.S.C. §§ 1346(a)(2), 1491(a)(1).

[8] A judicial taking can only arise when a federal court (e.g., the United States Supreme Court) reviews a state supreme court decision that "declares . . . what was once an established right of private property no longer exists." *See Stop the Beach Renourishment, Inc. v. Florida Dept. of Environmental Protection*, 560 U.S. 702, 715 (2010) (plurality).  In that context, the federal court cannot review the merits of the decision, because the state supreme court is the final arbiter of state law.  *See Montana v. Wyoming*, 563 U.S. 368, 377 n.5 (2011).  But a state supreme court decision that "transform[s] private property into public property" by "ipse dixit," might be reviewable as a violation of the Fifth Amendment takings clause.  *Stop the Beach Renourishment*, 560 U.S. at 715 (quoting *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 164 (1980)).  This doctrine has no application in the present case.  *See* Fed. Br. at 60.

water.  *See* Motion at 8.  Because that claim is not before this Court, there is no proper basis for certifying the above question to the Oregon Supreme Court, even if it raises questions of State law (which it does not).

## CONCLUSION

For the foregoing reasons, KID's motion to certify questions to the Oregon Supreme Court should be denied.

Respectfully submitted,

TODD KIM
*Assistant Attorney General*

Of counsel:

/s/ *John L. Smeltzer*

LANCE C. WENGER
Solicitor's Office
U.S. Department of the Interior

THOMAS K. SNODGRASS
ROBERT P. WILLIAMS
KEVIN MCARDLE
JOHN L. SMELTZER

MEGAN J. WALLINE
Office of General Counsel
National Oceanic and
  Atmospheric Administration

Environment & Natural Resources Division
U.S. Department of Justice
Post Office Box 7415
Washington, DC  20044
(202) 305-0343
john.smeltzer@usdoj.gov

November 18, 2024
D.J. No. 90-8-6-08304/1

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains **5,187** words, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f).

2.      This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

/s/ *John L. Smeltzer*

JOHN L. SMELTZER
Counsel for Federal Appellees