**Nos. 23-15499 and 23-15521 (Consolidated)**

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

YUROK TRIBE; ET AL.,
*Plaintiffs - Appellees,*

and

UNITED STATES OF AMERICA, ET AL.,
*Defendants - Cross-Claimants - Appellees,*

v.

KLAMATH WATER USERS ASSOCIATION,
*Intervenor - Defendant - Counter-Claimant - Appellant,*

KLAMATH IRRIGATION DISTRICT,
*Intervenor - Defendant - Appellant,*

On Appeal from the United States District Court
for the Northern District of California
No. 3:19-cv-04405-WHO
Hon. William H. Orrick

**APPELLANT KLAMATH WATER USERS ASSOCIATION'S
MOTION TO DISMISS THE APPEAL AS MOOT AND
TO VACATE THE DISTRICT COURT JUDGMENT**

BRITTANY K. JOHNSON, ESQ. (Cal. Bar No. 282001)
MAXIMILIAN C. BRICKER, ESQ. (Cal. Bar No. 350150)
SOMACH SIMMONS & DUNN, P.C.
500 Capitol Mall, Suite 1000
Sacramento, CA 95814
Telephone: (916) 446-7979
bjohnson@somachlaw.com
mbricker@somachlaw.com
*Attorneys for Intervenor - Defendant - Counter-Claimant - Appellant*
*KLAMATH WATER USERS ASSOCIATION*

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION .......... 1

II. BACKGROUND .......... 2

A. KWUA'S Counterclaim .......... 2

B. 2025 Recission and Subsequent Updated Guidance .......... 5

III. ARGUMENT .......... 9

A. The Court Should Dismiss KWUA's Appeal Because It Is Moot, or Alternatively, Because the Issues Raised in the Appeal Are Not Ripe .......... 9

B. The Court Should Vacate the District Court's Judgment and Remand with Instructions to Dismiss the Crossclaim and Counterclaim .......... 11

C. If the Court Grants Federal Appellees' Alternative Motion, KWUA Will Seek Relief from the District Court .......... 14

IV. CONCLUSION .......... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*ACLU v. Masto*,
670 F.3d 1046 (9th Cir. 2012) ....................12

*Bishop Paiute Tribe v. Inyo Cty.*,
863 F.3d 1144 (9th Cir. 2017) ....................9

*Dilley v. Gunn*,
64 F.3d 1365 (9th Cir. 1995) ....................14

*Donovan v. Vance*,
70 F.4th 1167 (9th Cir. 2023) ....................11

*Forest Serv. Emples. v. United States Forest Serv.*,
408 F. Supp. 2d 916 (N.D. Cal. 2006) ....................13

*Innovation Law Lab v. Wolf*,
951 F.3d 1073 (9th Cir. 2020) ....................12

*Mayfield v. Dalton*,
109 F.3d 1423 (9th Cir. 1997) ....................15

*Mayorkas v. Innovation Law Lab*,
141 S. Ct. 2842 (2021) ....................12, 13

*NASD Dispute Resolution, Inc. v. Judicial Council*,
488 F.3d 1065 (9th Cir. 2007) ....................11, 12, 13, 14

*Natural Resources Defense Council v. Haaland*,
102 F.4th 1045 (9th Cir. 2024) ....................7

*Neighbors of Cuddy Mt. v. Alexander*,
303 F.3d 1059 (9th Cir. 2002) ....................10

*Nome Eskimo Cmty. v. Babbitt*,
67 F.3d 813 (9th Cir. 1995) ....................9

*PUC v. FERC*,
100 F.3d 1451 (9th Cir. 1996) ....................12

*Samma v. U.S. Dep't of Def.*,
No. 20-5320, 2025 U.S. App. LEXIS 11199,
_ F.4th _ (D.C. Cir. May 9, 2025) ....................................................... 13

*United States v. Munsingwear, Inc.*,
340 U.S. 36 (1950)................................................................................. 13

*United States Bancorp Mortg. Co. v. Bonner Mall P'ship*,
513 U.S. 18 (1994)..........................................................................12, 13

**Other Authorities**

Fed. R. Civ. P. 60(b)(6)............................................................................ 15

Appellant Klamath Water Users Association (KWUA) respectfully moves this Court to dismiss these appeals as moot, follow its established practice and vacate the district court judgment, and remand with instructions to dismiss the crossclaim and counterclaim. The grounds for the motion are set forth below.

## I. INTRODUCTION

For years, KWUA advocated that the U.S. Bureau of Reclamation (Reclamation) review recent legal developments and update its legal guidance for the Klamath Project (Project). The legal landscape continued to evolve, including: seminal U.S. Supreme Court cases, district court decisions on similar Reclamation contracts, determinations of water rights claims in a decades-long adjudication, and revised regulations implementing the Endangered Species Act (ESA). Still, Reclamation's legal position remained stuck in the 1990s. Only in 2020 did Reclamation start to thoughtfully consider these legal updates, culminating in the "Reassessment of U.S. Bureau of Reclamation Klamath Project Operations to Facilitate Compliance with Section 7(a)(2) of the Endangered Species Act" issued in January 2021 (2021 Reassessment). But on April 8, 2021, the 2021 Reassessment was summarily revoked, without replacement.

KWUA filed its counterclaim against the United States—and subsequently this appeal—to seek a judicial determination based on these legal authorities that the storage, diversion, and delivery of water for irrigation are not subject to federal

discretion. Given the revocation of the 2021 Reassessment, the United States asserted the opposite position: that Reclamation had complete discretion to curtail irrigation deliveries for "ESA purposes."

Based on the May 14, 2025 filing by the United States, the United States has made substantially the same determinations requested by KWUA in this appeal, and the United States and KWUA "no longer stand in the same adversarial posture." U.S. Mot. 10, ECF No. 141. Accordingly, there is no longer a live case and controversy. KWUA's counterclaim is moot, and the Court now lacks jurisdiction over this appeal. If or to the extent the 2025 Guidance did not squarely resolve every issue raised on appeal, the issues can be presented for review in a future final agency action. They are not ripe at this time. Further, KWUA did not cause the mootness. It should not be left to suffer the consequences of the adverse district court judgment when it diligently pursued its appeal in this Court. This Court should follow the "established practice" of dismissing this appeal, vacating the district court's judgment, and remanding to the district court with instructions to dismiss the crossclaim and counterclaim.

## II. BACKGROUND

### A. KWUA's Counterclaim

The United States filed its crossclaim with the district court on October 1, 2021, naming Oregon Water Resources Department (OWRD) and KWUA as

crossclaim-defendants. 8-KWUA_ER-1725-66. After an unsuccessful motion to dismiss by OWRD, 7-KWUA_ER-1669-83, KWUA filed a counterclaim against the United States on December 14, 2021, 7-KWUA_ER-1685-1723.

In its crossclaim, the United States sought, in relevant part, a judicial declaration that "Reclamation's operation of the Klamath Project, including the exercise of its rights to store water in UKL for irrigation use, is subject to compliance with the ESA[.]" 8-KWUA_ER-1764. In the counterclaim, KWUA sought, in relevant part, a judicial declaration that "[t]he ESA neither authorizes nor requires Reclamation to curtail, or direct the curtailment of, storage, diversion, and delivery of water for irrigation in the Project to benefit ESA-listed species[.]" 7-KWUA_ER-1721. In support of its counterclaim, KWUA argued that "Section 7(a)(2) of the ESA applies only to actions in which there is discretionary federal involvement or control," and that "Reclamation does not have sufficient discretion or control under any source of its authority or the terms of the contracts with Project water users in order to implement measures that inure to the benefit of [ESA-listed species]." 7-KWUA_ER-1719.

KWUA filed a cross-motion for summary judgment on July 29, 2022, wherein it argued that the United States' "conclusory statements that Reclamation's operation of the Project is subject to ESA Section 7 miss the point . . . KWUA does not dispute that generally Reclamation must comply with

the ESA, at the Klamath Project and elsewhere." 7-KWUA_ER-1511. KWUA's more specific argument is that there are "aspects of Project operations [that] are non-discretionary to which ESA Section 7(a)(2) does not apply, " *id.*, such as the "storage, diversion, and delivery of water for irrigation in the Project[.]" 7-KWUA_ER-1492; *see also* 7-KWUA_ER-1534 ("KWUA is not challenging the adequacy of an ESA consultation, but is seeking a judicial declaration of what are the nondiscretionary components of Project operations."); 7-KWUA_ER-1535 ("Storage, diversion, and delivery of water are nondiscretionary, and Reclamation therefore does not have authority under federal reclamation law to take actions that could benefit species."); 7-KWUA_ER-1492 (while arguing certain aspects of Project operations are nondiscretionary, noting that the 2021 Reassessment found that there are "at least 11 operational activities in connection with the Project" that <u>are</u> discretionary and "subject to Section 7(a)(2) consultation"); 8-KWUA_ER-1932 (listing the 11 operational actions). KWUA further explained that, subsequent to the withdrawal of the 2021 Reassessment, "Reclamation has performed no analysis (that is still in effect) of which operational actions are discretionary or nondiscretionary under contemporary legal authorities for the court to review." 7-KWUA_ER-1533-34.

The district court ruled in favor of the United States, concluding that Reclamation has broad discretion under the Reclamation Act of 1902, and thus

every aspect of Project operations is subject to ESA Section 7's substantive and procedural obligations. 1-KWUA_ER-0036-37. In other words, the district court rejected KWUA's argument that most aspects of Project operations are nondiscretionary or non-federal and not subject to ESA Section 7(a)(2). Critically, the district court did not address at all KWUA's arguments that Reclamation's delivery of water under Project contracts is nondiscretionary. 1-KWUA_ER-0034 ("Because I find that the Bureau has discretion under the Reclamation Act, I need not address the other potential sources of discretionary authority that the United States and plaintiffs assert.").

KWUA appealed the judgment below because the "district court did not answer [the question of "*what* does Section 7(a)(2) require with respect to Klamath Project operations"], which requires careful analysis of what actions are and are not discretionary"; rather, the district court "ignored the perpetual contracts with Project beneficiaries that affect the scope of Reclamation's discretion." Opening Br. 2, ECF No. 20.

**B. 2025 Recission and Subsequent Updated Guidance**

A controversy existed when KWUA filed its counterclaim and this appeal because, at that time, the United States had determined and maintained that it has broad discretion to operate the Project for "ESA purposes" and to curtail water deliveries for irrigation to comply with the ESA. This position was based, at least

in part, on memoranda issued in 1995 and 1997 by Regional Solicitors from the Office of the Solicitor (Solicitor). KWUA argued that the old Regional Solicitor memoranda were a function of then-existing circumstances (such as the pending water rights adjudication and the state of ESA jurisprudence), and that the guidance had become outdated and did not reflect current legal authorities. 7-KWUA_ER-1463, 1484-86, 1500, 1511, 1537. The 2021 Reassessment supplanted these old memoranda, 8-KWUA_ER-1953-54. Then, the 2021 Reassessment was withdrawn, 8-KWUA_ER-1882-83, returning the United States to an "entrenched legal position" that was adverse to KWUA and that prompted the next four years of litigation on the same issues that were the subject of the 2021 Reassessment. 7-KWUA_ER-1463.

On February 10, 2025, Secretary Burgum rescinded former Secretary Haaland's withdrawal of the 2021 Reassessment and directed the Solicitor to examine recent legal developments and issue an updated reassessment. *See* U.S. Mot., Attach. A, ECF No. 141. The Solicitor issued a "Briefing Memorandum for the Secretary" on May 14, 2025 (2025 Guidance). *See* U.S. Mot., Attach. B, ECF No. 141. Key conclusions from the 2025 Guidance include:

1. The Klamath Basin Water Agreement Support Act of 2025 "shows a clear and specific mandate from Congress to Reclamation to (1) operate the Project

for the purposes of providing water for irrigation and conducting flood control and (2) provide water for the Project in accordance with the contracts between Reclamation and the irrigators." U.S. Mot., Attach. B at 3, ECF No. 141. The "unequivocal language" of the statute "does not provide Reclamation the discretion to divert water for other uses if to the detriment of the Klamath Reclamation Project contractors." *Id.* "Under *Home Builders,* those statutory provisions deprive Reclamation of the discretion needed to trigger ESA Section 7." *Id.* at 4.

2. This Court's decision in *Natural Resources Defense Council v. Haaland*, 102 F.4th 1045 (9th Cir. 2024) (*NRDC v. Haaland*), examined contract provisions (from Sacramento River Settlement Contracts) that are "especially relevant" to the Klamath Project contracts considered in the 2021 Reassessment and supporting memoranda. "The analyses of liability waivers in Klamath Project contracts in the 2020 Analysis and Discretion Analysis comport with the analysis in *NRDC v. Haaland*: the Klamath Project liability waivers have similar terms and must, therefore, be read as force majeure clauses which do not impart sufficient discretion to allow Reclamation to take action to benefit ESA-listed species." U.S. Mot., Attach. B at 5, ECF No. 141. The Ninth Circuit's conclusion on the third relevant contract provision, which ties the quantity and timing of water delivered to beneficial use "do not provide Reclamation with discretionary

authority to take actions that could benefit listed species and therefore do not trigger a requirement to consult." *Id.*

The determinations on the 2025 Guidance are directly on point to the issues argued in this appeal and subsequently raised by KWUA in supplemental notices of authority. *See* ECF Nos. 132-1, 104.

As explained in the U.S. Motion, the 2025 Guidance "reaffirms the [2021 Reassessment], [and] rejects Reclamation's prior understanding that it has discretionary authority over Project operations as a whole[.]" U.S. Mot. 8, ECF No. 141. Accordingly, the United States and KWUA again share the same legal position on the core issue that was the subject of the crossclaim, the counterclaim, the district court's judgment, and this appeal. *Id.* at 10 ("As a result of the 2025 Guidance, however, Reclamation and the Project water users no longer stand in the same adversarial posture. Interior has now rejected its prior approach to ESA consultation for the Klamath Project (the approach challenged by KWUA and KID) and has committed to a new 'legal and operational paradigm in the Klamath Basin' that could eliminate or substantially narrow any dispute with Project users.").

///

///

///

## III. ARGUMENT

### A. The Court Should Dismiss KWUA's Appeal Because It Is Moot, or Alternatively, Because the Issues Raised in the Appeal Are Not Ripe

"A federal court lacks jurisdiction to hear a case that is moot. A case is moot where no actual or live controversy exists. If there is no longer a possibility that an appellant can obtain relief for his claim, that claim is moot and must be dismissed for lack of jurisdiction." *See Bishop Paiute Tribe v. Inyo Cty.*, 863 F.3d 1144, 1155 (9th Cir. 2017) (citations and quotations omitted). Further, "[i]f there is no 'case' in the Constitutional sense of the word, then a federal court lacks the power to issue a declaratory judgment. . . . [a] declaratory judgment may not be used to secure judicial determination of moot questions." *Nome Eskimo Cmty. v. Babbitt*, 67 F.3d 813, 816 (9th Cir. 1995) (citations omitted).

Upon review of the 2025 Guidance and the U.S. Motion, KWUA agrees with the United States that KWUA's appeal is now moot. Because the United States has now determined that Reclamation does not have "discretionary authority over Project operations as a whole," and that Reclamation must "alter its ESA consultation and associated operating plans to account for nondiscretionary contractual duties to store and deliver water for irrigation," there is no longer a live controversy. *See* U.S. Mot. 3, 8, 11, ECF No. 141. As discussed above, KWUA's counterclaim sought "a judicial declaration of what are the nondiscretionary components of Project operations" because the United States had determined that

*all* components of Project operations were discretionary. 7-KWUA_ER-1534. Because the United States no longer holds or defends this position and now takes the same position as KWUA, there is no longer a live controversy.

To the extent that the 2025 Guidance, considered with the 2021 Reassessment, may not yet define the full scope of nondiscretionary versus discretionary aspects of Project operations, a judicial determination of those issues should wait until Reclamation completes the process of updating and potentially narrowing the scope of its ESA consultation. *See* U.S. Mot. 11-12, ECF No. 141. Accordingly, issues regarding "which aspects of Project operations are non-discretionary," 7-KWUA_ER-1511, will not be ripe until there is a final agency action (e.g., the adoption of a new operating plan by Reclamation). *See Neighbors of Cuddy Mt. v. Alexander*, 303 F.3d 1059, 1067 (9th Cir. 2002) ("Courts are generally precluded, under the ripeness doctrine, from prematurely adjudicating administrative matters until the proper agency has formalized its decision.").

With respect to the crossclaim, the United States advises in its motion that "Federal Appellees no longer seek the declaratory relief sought in the federal cross-complaint and move to voluntarily dismiss the [crossclaim]." *See* U.S. Mot. 10-11, ECF No. 141. Given the withdrawal of the OWRD order that the United States originally challenged in the crossclaim, and the representation of the

United States that it no longer seeks the declaratory relief remaining in the crossclaim, KWUA agrees that the crossclaim is now moot as well.

In sum, this Court lacks jurisdiction over these appeals because the issuance of the 2025 Guidance rendered the issues on which KWUA sought relief in KWUA's counterclaim moot. This Court should dismiss the appeals as moot and vacate the district court's judgment in accordance with the Court's established practice.

**B. The Court Should Vacate the District Court's Judgment and Remand with Instructions to Dismiss the Crossclaim and Counterclaim**

This Court has articulated the rule for vacatur of a district court's judgment when an appeal is dismissed due to mootness:

> When a case becomes moot on appeal, the "established practice" is to reverse or vacate the decision below with a direction to dismiss. Vacatur in such a situation "eliminat[es] a judgment the loser was stopped from opposing on direct review." Without vacatur, the lower court's judgment . . . would escape meaningful appellate review thanks to the "happenstance" of mootness. Under the "*Munsingwear* rule," vacatur is generally "automatic" in the Ninth Circuit when a case becomes moot on appeal.

*NASD Dispute Resolution, Inc. v. Judicial Council*, 488 F.3d 1065, 1068 (9th Cir. 2007) (citations omitted); *see also Donovan v. Vance*, 70 F.4th 1167, 1173 (9th Cir. 2023) ("We decline to apply *Munsingwear* vacatur only when 'the *party seeking appellate relief* fails to protect itself or is the cause of subsequent mootness.' But 'mootness by happenstance provides sufficient reason to

vacate.' ") (citations omitted); *ACLU v. Masto*, 670 F.3d 1046, 1065 (9th Cir. 2012) ("The 'normal rule' when a case is mooted is that vacatur of the lower court decision is appropriate . . . That is the default approach because it 'prevent[s] a judgment, unreviewable because of mootness, from spawning any legal consequences.' ") (citations omitted).

If the Court dismisses these appeals based on mootness for the reasons above, then it must follow the "normal rule" and "established practice" of also vacating the district court's judgment. *See ACLU*, 670 F.3d at 1065; *NASD*, 488 F.3d at 1068. Here, the case became moot during the pendency of the appeal, and the mootness resulted "from happenstance or from the 'unilateral action of the party who prevailed below,' " not from any action of the appellants. *See PUC v. FERC*, 100 F.3d 1451, 1461 (9th Cir. 1996) (quoting *United States Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 25 (1994)). The United States, the prevailing party in the district court below, admits as much: this case was mooted by "Interior's issuance of the 2025 Guidance, not from any voluntary action by appellants KWUA and KID." U.S. Mot. 16, ECF No. 141.

Further, the rescission of a challenged government policy or decision, due to a change in administration, is a "happenstance" that requires vacatur. *See Mayorkas v. Innovation Law Lab*, 141 S. Ct. 2842 (2021) (vacating the judgment in *Innovation Law Lab v. Wolf*, 951 F.3d 1073 (9th Cir. 2020), and remanding the

case with instructions to vacate the preliminary injunction order based on *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950)); *Samma v. U.S. Dep't of Def.*, No. 20-5320, 2025 U.S. App. LEXIS 11199, _ F.4th _, at *13-14 (D.C. Cir. May 9, 2025) (explaining that, in *Mayorkas*, "the change in policy was also due to a change in administrations. The policies in question were implemented by the first Trump administration and subsequently terminated by the Biden administration, causing mootness"); *Forest Serv. Emples. v. United States Forest Serv.*, 408 F. Supp. 2d 916, 921 (N.D. Cal. 2006) (finding that USFS' withdrawal of its underlying decision was a "happenstance" that mooted the case, thus vacatur was appropriate, even though USFS "may strategically benefit" therefrom, because USFS was not "driven entirely by a desire to 'dodge the bullet' of this Court's prior order"); *accord* U.S. Mot. 16, ECF No. 141 (stating that "Interior did not adopt the 2025 Guidance to evade judicial review of Klamath Project operations"; rather, vacatur of the district court's judgment would remove "the cloud of an adverse judgment restricting agency options").

In response to the adverse district court decision, KWUA protected its interests; it timely appealed the district court judgment. KWUA did not cause the mootness through a settlement or otherwise. *See NASD*, 488 F.3d at 1069 ("The appellants in *Bonner Mall*, by settling, had forfeited the right to appeal and therefore lost their equitable entitlement to vacatur. Similarly, the Supreme Court

has also denied vacatur when a case is moot only because the losing party failed to pursue appeal.") (citations omitted). Further, because KWUA's members, as the Project beneficiaries, bear the risk of water supply shortages due to the erroneous legal determinations in the now unreviewable district court judgment, equity favors vacatur. *Dilley v. Gunn*, 64 F.3d 1365, 1370 (9th Cir. 1995) ("[t]he touchstone of vacatur is equity").

In sum, because this case became moot while on appeal, and KWUA did not cause the mootness, the Court should vacate the district court's judgment and remand to the district court with instructions to dismiss the crossclaim and counterclaim. *See, e.g.*, *NASD*, 488 F.3d at 1070 ("We vacate the district court's judgment and remand with instructions to dismiss the case.").

### C. If the Court Grants Federal Appellees' Alternative Motion, KWUA Will Seek Relief from the District Court

Based on the conclusions in the 2025 Guidance, Reclamation presumably will complete a new ESA consultation and adopt a new agency action. *See* U.S. Mot., Attach. B at 9, ECF No. 141 ("This shift requires Reclamation, in coordination with the Office of the Solicitor, to reassess its approach to Project operations and align those operations with the requirements of the 2025 Act."). That agency action will be subject to judicial review in a much less complicated procedural posture than currently exists in this appeal. There is no continuing case or controversy. The Court should follow established practice and dismiss the

appeals as moot, vacate the district court judgment, and remand with instructions to dismiss the crossclaim and counterclaim.

If the Court denies this relief, then the United States alternatively moves the Court to further stay this appeal so that the United States can ask the district court to reopen the judgment to dismiss the crossclaim. *See* U.S. Mot. 18-20, ECF No. 141. KWUA submits that it would be far more efficient for this Court to follow its established jurisprudence and grant dismissal and vacatur. However, if the Court denies this motion and the United States' motion, then KWUA will similarly seek relief from the district court with regard to the counterclaim. *See* Fed. R. Civ. P. 60(b)(6); *Mayfield v. Dalton*, 109 F.3d 1423, 1427 (9th Cir. 1997).

///

///

///

///

///

///

///

///

///

///

## IV. CONCLUSION

KWUA respectfully requests that the Court grant this motion, dismiss the appeals as moot and vacate the district court judgment, and remand with instructions to dismiss the crossclaim and counterclaim. If the Court grants the United States' alternative motion, KWUA will seek similar relief from the judgment in the district court.

Date: May 28, 2025

SOMACH SIMMONS & DUNN, PC

*s/ Brittany K. Johnson*
Brittany K. Johnson
*Attorneys for Crossclaim-Defendant/*
*Counter-Claimant/Appellant*
*Klamath Water Users Association*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 3,362 words, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f).

This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

*s/ Brittany K. Johnson*
Brittany K. Johnson
*Attorneys for Crossclaim-Defendant/*
*Counter-Claimant/Appellant*
*Klamath Water Users Association*