**Nos. 23-15499, 23-15521 (consolidated)**

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

YUROK TRIBE, ET AL.,
*Plaintiffs – Appellees*,

v.

UNITED STATES OF AMERICA, ET AL.,
*Defendants - Cross-Claimants - Appellees*,

v.

KLAMATH WATER USERS ASSOCIATION,
*Intervenor – Defendant - Counter-Claimant - Appellant*,

KLAMATH IRRIGATION DISTRICT,
*Intervenor - Defendant - Appellant*,

Appeal from the United States District Court for the Northern District of California
No. 3:19-cv-4405-WHO (Hon. William H. Orrick)

**FEDERAL APPELLEES' REPLY IN SUPPORT OF
MOTION TO DISMISS APPEALS DUE TO MOOTNESS, OR,
ALTERNATIVELY, TO REMAND TO ENABLE MOTION TO
VOLUNTARILY DISMISS CROSS-COMPLAINT**

Of counsel:

LANCE C. WENGER
Solicitor's Office
U.S. Department of the Interior

ADAM R.F. GUSTAFSON
*Acting Assistant Attorney General*

KEVIN MCARDLE
JOHN L. SMELTZER
Environment & Natural Resources Division
U.S. Department of Justice
Post Office Box 7415
Washington, DC  20044
(202) 305-0343
john.smeltzer@usdoj.gov

## INTRODUCTION

Federal Appellees, the United States, the United States Bureau of Reclamation ("Reclamation"), and the National Marine Fisheries Service ("NMFS"), respectfully file this reply in support of their motion to dismiss these appeals due to mootness, or alternatively, for a remand to enable Federal Appellees to move to voluntarily dismiss their cross-complaint. *See* DktEntry 142 (May 15, 2025) ("U.S. Motion"). The appeals arise from a judgment on a cross-complaint by the United States. The cross-complaint sought declaratory relief to confirm Reclamation's then-held view of its legal obligations under the Endangered Species Act § 7 with respect to Klamath Project operations, and injunctive relief to preclude the Oregon Water Resources Department ("OWRD") from enforcing an order that conflicted with such perceived obligations. But OWRD has since withdrawn the April 2021 order. And the Department of the Interior ("Interior") has since issued new legal guidance ("2025 Guidance")—based in part on the Klamath Basin Water Agreement Support Act, Pub. L. 118-246, § 2(g), 138 Stat. 2933 (2025)—that disavows the position asserted in the cross-complaint. *See* U.S. Motion, Ex. B. Consequently, there is no longer a concrete dispute between the parties for purposes of Article III or prudential standing.

The Yurok Tribe et al. (collectively, the "Tribes") and OWRD contend that this Court retains jurisdiction to grant declaratory relief on the United States' cross-

1

complaint and that declaratory relief remains appropriate under prudential principles because the parties continue to disagree over the applicability of the ESA to the Klamath Project. DktEntry 148 (Yurok Tribe's response); DktEntry 149 (Klamath Tribes' joinder); DktEntry 147 (OWRD response). But the Tribes and OWRD cannot properly prosecute the federal cross-complaint in the United States' absence and have no ripe claims of their own. Until Reclamation implements the 2025 Guidance in a manner that adversely impacts the Tribes or OWRD, judicial review of the agencies' ESA compliance is premature.

## ARGUMENT

### A. The relevant claims are moot.

#### 1. *There is no live controversy on the federal cross-complaint or KWUA's counterclaim.*

As previously explained, the United States filed the cross-complaint at issue here principally to obtain declaratory and injunctive relief against the enforcement of OWRD's April 2021 order. *See* U.S. Motion at 5-6. The United States alleged that the order was preempted by the ESA because it prohibited actions required by a Project operating plan that Reclamation had developed under ESA § 7 on the agency's then-held view that § 7 applies to all Project storage and delivery operations. *Id.* at 2, 5-6. OWRD's withdrawal of the April 2021 order during the pendency of the present appeals eliminated the United States' claimed injury and mooted its claim for injunctive relief. *Id.* at 10. But all parties then agreed that the

appeals were not moot, because a "genuine, live dispute" remained between Reclamation and the Klamath Water Users Association ("KWUA") and the Klamath Irrigation District ("KID") on their claims for declaratory relief concerning the extent of Reclamation's discretionary authority over Project operations and its associated obligations under ESA § 7. *Id*. (quoting *Carney v. Adams*, 520 U.S. 53, 58 (2020)); *see also* Tribes' Response at 3-4; OWRD Response at 4-5.

Given the 2025 Guidance, however, that same dispute no longer exists. Interior, KWUA, and KID now largely agree that the Project water-supply contracts impose substantial nondiscretionary obligations that are not subject to ESA § 7. *See* U.S. Motion at 2, 8-12; KWUA Motion (DktEntry 145) at 2, 6-11; KID Response (DktEntry 146) at 5. This is not to say that all potential disputes between Reclamation and KWUA and KID over the ESA's applicability to the Klamath Project have been resolved. But Reclamation has committed to a "fundamental change" in how it operates the Klamath Project and conducts § 7 consultation. U.S. Motion at 10-11. Accordingly, there is no longer a "substantial controversy" of "sufficient immediacy and reality" between Reclamation and KWUA and KID to support their claims for declaratory relief against each other. *See Gator.com Corp v. L.L. Bean, Inc.*, 398 F.3d 1125, 1129 (9th Cir. 2005); *Medimmune, Inc. v. Genetch, Inc.*, 540 U.S. 118, 127 (2007).

The Tribes contend that a "live controversy . . . remains between Reclamation and KWUA and KID" because Reclamation has "not yet revamped" the 2024 operating plan based on the 2025 Guidance. Tribe's Motion at 14. It is true that a challenge to final agency action generally is not rendered moot merely by the notice of a proposed new action. *See, e.g.*, *Vanscoter v. Sullivan*, 920 F.2d 1440, 1448 (9th Cir. 1990). But the federal cross-complaint and KWUA's counterclaim did not challenge final agency action, and no party has challenged the 2024 operating plan.[1] *See* U.S. Motion at 12, n.5. Moreover, although the Tribes joined the federal cross-complaint, the Tribes concede that they lack an independent cause of action against KWUA or KID for a declaration of Reclamation's authorities over Project operations and Reclamation's ESA obligations. Tribes' Response at 10.

2. *Any claims by the Tribes against the federal agencies are premature.*

The Tribes principally contend that the appeals are not moot because they possess "standing" to defend the legal "position" that the United States asserted below and has now "abandoned." Tribe' Motion at 9-10. But the cases cited by the Tribes are inapposite. Specifically, this Court has held that an intervenor-defendant

---

[1] On November 19, 2024, the Klamath Tribes provided notice under 16 U.S.C. § 1540(g) of the tribes' intention to challenge the 2024 operating plan for alleged ESA violations. *See* DktEntry 149, Ex. A; Tribes' Response at 11 n.5. But the Klamath Tribes have not filed an action, and the alleged violations are not germane to the issues now on appeal.

4

may appeal a judgment setting aside a challenged agency regulation—even if the agency does not appeal—if the intervenor-defendant has standing to defend the regulation, i.e., if the intervenor-defendant can show that the judgment setting aside the regulation "causes [them] a concrete and particularized injury that is actual or imminent and is likely to be redressed by a favorable decision" upholding the regulation. *Western Watersheds Project v. Kraayenbrink,* 632 F.3d 472, 482-83 (9th Cir. 2011); *see also Didrickson v. U.S. Dep't of the Interior*, 982 F.2d 1332, 1339 (9th Cir.1992) (same); *Diamond v. Charles*, 476 U.S. 54, 65-66 (1986) (discussing private party's standing to defend the constitutionality of a challenged statute).

But as just noted, the present appeals do not involve a judgment vacating agency action favorable to the Tribes. The Tribes assert no concrete injury from such a judgment that can be remedied by a favorable decision on appeal. *Cf. Kraayenbrink,* 632 F.3d at 482-83. Nor is there a specific final agency action for this Court to review. Rather, the Tribes assert injury from a *prospective* change in Project operations relating to implementation of the 2025 Guidance, which has not yet occurred. As the Tribes concede (Motion at 12 n.6), a suit to challenge Reclamation's anticipated future action "obviously" is "not ripe."[2]

---

[2] As the Tribes note (Tribes' motion at 12, n. 6), the "ripeness question on appeal" "generally" focuses on the complaint when filed. *See Yniguez v. State of Arizona*, 939 F.2d 727, 734 (1991). But the claim the Tribes now assert *against* Reclamation

5

The Tribes argue that this Court should decide their claim now—notwithstanding ripeness concerns—because the issue of § 7's applicability to Klamath Project operations is a question of public importance that is likely to reoccur. But the Tribes will suffer no legal prejudice by waiting for the issue to crystalize in the ordinary setting, i.e., in a challenge to agency action. *See* U.S. Motion at 14-15, 20.

The Tribes and OWRD argue that prior challenges to Reclamation's operating plans have been dismissed on sovereign immunity grounds. Tribes' Motion at 20; OWRD Motion at 8-9. But those cases involved challenges by KID that were dismissed due to an inability to join the Tribes due to tribal sovereign immunity, *see Klamath Irrigation District v. U.S. Bureau of Reclamation*, 48 F.4th 934, 942 (9th Cir. 2022), or an inability to join the United States (in State court) due to federal sovereign immunity, *see Klamath Irrigation District v. Oregon Water Resources Department*, 518 P.3d 970, 975 (Or. App. 2022); *see also* United States' Brief (DktEntry 60) at 23-25, 27-28. The Tribes identify no barrier to a suit by them against the federal agencies in federal court for alleged ESA violations. *See* U.S. Motion at 16.

---

is different from the claim initiated *by* Reclamation, which was then "ripe" in part due to the now-withdrawn OWRD order.

### 3. There is no live controversy on claims by or against OWRD.

In opposing Reclamation's motion, OWRD does not identify any ongoing legal dispute with Reclamation. Unlike the other non-federal parties, OWRD does not claim water rights impacted by Klamath Project operations. OWRD's role is limited to administering water rights provisionally determined in the KBA. *See* Or. Rev. Stat. § 539.170; Or. Admin. R. 690-025-0025(1). The United States brought a cross-complaint against OWRD—thereby joining OWRD in this suit—because OWRD's April 2021 Order conflicted with Reclamation's obligations under ESA § 7 (as then understood).

In response, OWRD filed a counterclaim for injunctive relief pertinent to its administrative duties. OWRD asked the court to enjoin Reclamation from releasing stored water from UKL, but only if the court agreed with KWUA that the ESA did not apply to Project storage operations, an issue on which OWRD took no position. *See* 1-KWUA-ER_42-43. Alternatively, OWRD asked the court to require Reclamation to provide OWRD with information about UKL releases made for ESA purposes. *Id.* The district court denied both requests, 1-KWUA-ER_43, and OWRD did not appeal. Once OWRD withdrew the April 2021 order, there was no remaining dispute between OWRD and Reclamation.

OWRD "notes" that a decision by this Court on the extent to which ESA § 7 applies to the Klamath Project would help resolve other pending suits in which

OWRD is a party. *See* OWRD Response at 9-11. But the potential relevance of the § 7 issue to other cases does not show that the issue is properly resolved here, where the circumstances giving rise to the federal cross-complaint no longer exist.

OWRD also is mistaken in its assertion (OWRD Response at 14) that Reclamation has "changed its view" on state law regarding the intersection of state-law water rights and the ESA, creating a new disagreement with OWRD. The United States concurs with OWRD that "federal law controls" in the event of a "direct conflict with Oregon law," e.g., where the exercise of a state-law water right would conflict with a duty imposed under the ESA. The issue addressed by the 2025 Guidance is the extent to which Klamath Project operations are subject to ESA § 7, an issue on which OWRD has never taken a position. *See* OWRD Brief (DktEntry 59) at 18-26.

OWRD also takes issue with a statement from the 2021 Guidance reinstated by the 2025 Guidance addressing whether water stored in UKL may be released to satisfy the senior water rights of the Yurok and Hoopa Valley Tribes in California. *See* OWRD Response at 13-14. This is an issue pertinent to phase two of the present ligation, which has not yet occurred and is not before this Court on appeal. *See* United States Br. at 25-26.

### B. The district court's judgment must be vacated upon a finding of mootness.

As previously explained (U.S. Motion at 15), when a cause of action becomes moot on appeal, the "normal practice" is to vacate the district court judgment, *Teter v. Lopez*, 125 F.4th 1301, 1309 (9th Cir. 2025), unless the appellant has forfeited this equitable remedy through voluntary action, *American Civil Liberties Union of Nevada v. Masto*, 670 F.3d 1046, 1065-66 (9th Cir. 2012). Here, the federal cross-complaint became moot due to OWRD's withdrawal of the April 2021 order and Interior's issuance of the 2025 Guidance. The appellants (KWUA and KID) were not responsible for these events.

Nonetheless, the Tribes and OWRD argue that, if this court dismisses KWUA and KID's appeals as moot, it should remand the vacatur decision to the district court for the district court to consider the United States' role (as appellee) in causing the mootness and the alleged unfairness that would result to the Tribes from the vacatur of the judgment. This request should be denied. If the above factors are relevant to the motions to dismiss, they are relevant only to the determination whether this Court appropriately may grant declaratory relief on the federal cross-complaint (via de novo review and affirmance of the district court's judgment) despite OWRD's withdrawal of the April 2021 order and Interior's issuance of the 2025 Guidance. *See In re Coleman*, 560 F.3d 1000, 1006 (9th Cir. 2009) ("problems of prematurity and abstractness" can present "insuperable obstacles" to judicial review, "even when

[Article III] jurisdiction is technically present") (cleaned up); *see also Snodgrass v. Provident Life and Accidental Ins. Co.*, 147 F.3d 1163, 1166-67 (9th Cir. 1998) (grants of declaratory relief are discretionary with the court). Because the appellants bear no responsibility for the mootness, there is no equitable basis for denying them the default remedy of vacatur upon the dismissal of their appeals. *See Masto,* 760 F.3d at 1065.

> C. **Alternatively, this Court should remand to allow the United States to move to voluntarily dismiss the cross-complaint.**

As explained (U.S. Motion at 18-20), a plaintiff ordinarily may voluntarily dismiss its complaint at any stage of a proceeding—without a judgment on the merits—subject to conditions to protect the interests of other parties. The Tribes and OWRD oppose the United States' alternative motion on the view that voluntary dismissal is categorically inappropriate after the issuance of a final judgment, and because such relief here would prejudice the Tribes. *See* Tribes' Response at 18-20; OWRD Response at 18-19.

But neither the Tribes nor OWRD cite any authority or grounds for a categorical rule. Under Fed. R. Civ. P. 60(b)(6), a district court may reopen a judgment for "any reason that justifies relief," including where (as here) voluntary dismissal is appropriate and can be granted without legal prejudice to any of the parties. The judgment here did not resolve the entire cross-complaint or all the claims in the case. See U.S. Brief at 22, 25-28. It is subject to appeal only because the district court

certified it as final under Fed. R. Civ. P. 54(b).  *Id.* at 27-28.  But because the judgment remains on direct appeal and subject to de novo review by this Court, the cross-complaint for declaratory relief remains unresolved, and the case is not fundamentally different from a case where dismissal is sought before a final judgment.

Nor have the Tribes or OWRD identified any legal prejudice (loss of "legal interest, legal claim, or legal argument") that would result from reopening the judgment for voluntary dismissal of the underlying complaint.  *See Westlands Water Dist. v. U.S.*, 100 F.3d 94, 97 (9th Cir. 1996).  Any nonmoving party may ask the district court to impose conditions on voluntary dismissal to protect the party's interests.  See Fed. R. App. 41(a)(2).  Although the Yurok Tribe's original complaint (challenging the 2019 operations plan) itself "faces mootness issues," *see* Tribes' Response at 20 n.7, it remains pending.  And the Tribes may seek to amend or to file a new complaint as warranted.

## CONCLUSION

For the foregoing reasons and those previously stated, this Court should dismiss the appeals and vacate the district court's judgment due to the mootness of the underlying claims; or, alternatively, it should remand to the district court to enable the United States to move to reopen the judgment and to voluntarily dismiss the federal cross-complaint.

|  | Respectfully submitted, |
|---|---|
|  | ADAM R.F. GUFSTASON<br>*Acting Assistant Attorney General* |
| Of counsel: |  |
|  | /s/ *John L. Smeltzer* |
| LANCE C. WENGER<br>Solicitor's Office<br>U.S. Department of the Interior | KEVIN MCARDLE<br>JOHN L. SMELTZER<br>Environment & Natural Resources Division<br>U.S. Department of Justice<br>Post Office Box 7415<br>Washington, DC  20044<br>(202) 305-0343<br>john.smeltzer@usdoj.gov |

June 25, 2025
D.J. No. 90-8-6-08304/1

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(C) because it contains **2,599** words, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f).

2. This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

/s/ *John L. Smeltzer*

JOHN L. SMELTZER
Counsel for Federal Appellees